# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Marcus Andrade and NAC Foundation, LLC,

    Plaintiffs

v.

Japheth Dillman, et al.,

    Defendants

Case No.: 2:20-cv-01021-JAD-NJK

**Order Granting Motion to Dismiss and Denying Request for Judicial Notice**

[ECF Nos. 4, 5]

When defendant Japheth Dillman and some companies that he manages failed to pay for bitcoin tokens that defendant Benjamin Boyer sold and transferred to them, Boyer sued them in California to recover what he was owed. Neither Dillman nor his companies appeared in that case, which allowed Boyer to obtain a default judgment for more than $3 million against them. Enter Marcus Andrade and his company, NAC Foundation LLC—the plaintiffs in this action, and the creators of the digital currency underlying the California lawsuit between the defendants. Fearing he and his company would be on the hook for the judgment, Andrade sues for declarations that Andrade and his company owe nothing to the Boyer defendants and the plaintiffs' relationship with the Dillman defendants does not mean that they owe a duty to the Dillman defendants.

The Boyer defendants move to dismiss, arguing that this court lacks jurisdiction over them or, alternatively, that the plaintiffs' claim for relief is not ripe. The plaintiffs leverage a forum-selection clause in a separate contract to argue that the Boyer defendants consented to this court's jurisdiction. I grant the Boyer defendants' motion to dismiss because I find that this case

doesn't fall into the forum-selection clause's territory and that Boyer's limited transactions with the foundation are too attenuated to exercise jurisdiction over him.[1]

### Background[2]

Before launching its digital currency—AML Bitcoin—NAC Foundation began offering AML Bitcoin tokens, which gave the token holder a right to convert the tokens into AML bitcoin once the currency was up and running.[3]  Boyer, individually and as a trustee of the Benjamin Boyer Trust and the Boyer Family Trust, acquired and traded hundreds of thousands of those tokens—once directly from the foundation's website[4] and several times through intermediaries or an investment company.[5]  To purchase the tokens, a buyer must agree to the terms and conditions that are listed on the foundation's website.[6]  The plaintiffs contend that they never spoke to Boyer about the trades.[7]

In late 2018, the plaintiffs learned that Boyer transferred more than 100,000 tokens to Dillman and various companies that he manages.[8]  The plaintiffs claim that "unrelated to [them]," Dillman signed four separate agreements to purchase tokens from Boyer's trusts and the bitcoin-investment company that Boyer was a member of.[9]  Under the contracts, Dillman was

---

[1] Because I find that this court lacks personal jurisdiction over the Boyer defendants, I need not and do not consider their dismissal arguments under Rule 12(b)(6).

[2] This is merely a summary of the facts alleged in the plaintiffs' complaint and not findings of fact.

[3] ECF No. 1-1 at ¶¶ 13–14.

[4] *Id.* at ¶ 24.

[5] *E.g.*, *id.* at ¶¶ 25, 28, 30.

[6] *Id.* at ¶ 23.

[7] *Id.* at ¶¶ 27, 32–33.

[8] *Id.* at ¶ 32.

[9] *Id.* at ¶ 35.

required to pay Boyer nearly $3 million by New Year's Eve.[10]  But by 2019, Dillman still hadn't met his commitment to pay for the tokens, which Boyer had already transferred to him.[11]  So Boyer sued Dillman in California for breaching those four contracts.[12]  And when Dillman defaulted, Boyer obtained a judgment for more than $3 million against him.[13]  Boyer then threatened to sue Andrade and the foundation because, according to Boyer, they were responsible for Dillman's actions—"despite acknowledging that [the] agreements were only [between] Dillman and his companies" and Boyer.[14]

Andrade and the foundation sued the parties to the California litigation in Nevada state court to obtain a declaration that they do not "bear responsibility" for Dillman's conduct and that their relationship with Dillman and his companies does not "create[] a duty or impose[] liability" as to any of Dillman's "clients/investors/customers."[15]  The Boyer defendants removed the case and now move to dismiss it, arguing that this court lacks jurisdiction over them because their only ties to Nevada are isolated token purchases from the foundation, which are unrelated to the California contract dispute.  They also argue that the plaintiffs fail to adequately plead a request for declaratory relief because there is no ripe controversy between the parties.

---

[10] *Id.* at ¶ 36.

[11] *Id.*

[12] *Id.* at ¶ 38.

[13] *Id.*

[14] *Id.* at ¶ 39.

[15] *Id.* at ¶¶ 43–44.

**Discussion**

The Fourteenth Amendment limits a forum state's power "to bind a nonresident defendant to a judgment of its courts,"[16] so Federal Rule 12(b)(2) authorizes a court to dismiss a complaint for lack of personal jurisdiction. To determine its jurisdictional reach, a federal court must apply the law of the state in which it sits.[17] Because Nevada's long-arm statute reaches the constitutional ceiling,[18] the question here is whether jurisdiction "comports with the limits imposed by federal due process."[19] A court may exercise jurisdiction over a nonresident defendant only with sufficient "minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"[20]

The plaintiffs rely on two anchors to tie the Boyer defendants to this court's jurisdiction: (1) Boyer agreed to a forum-selection clause when he purchased tokens from the foundation, a Nevada limited liability company; and (2) Boyer's purchase of tokens from a Nevada company alone shows he has sufficient minimum contacts to justify jurisdiction. Boyer argues that the clause does not cover this lawsuit because it pertains only to claims related to his purchase of the tokens, not his separate contracts with Dillman. He adds that his Nevada contacts are infinitesimal at best because his token purchases did not create an ongoing obligation in Nevada.

---

[16] *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)).

[17] *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (citing Fed. R. Civ. P. 4(k)(1)(A)).

[18] Nev. Rev. Stat. § 14.065.

[19] *Walden*, 571 U.S. at 283 (quoting *Daimler AG*, 571 U.S. at 125).

[20] *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

**I.      The forum-selection clause does not apply to the plaintiffs' claim here.**

A defendant may consent to personal jurisdiction through a forum-selection clause.[21]

Federal law governs the scope and enforcement of forum-selection clauses.[22]  Clauses that

"cover[] disputes 'arising out of' a particular agreement apply only to disputes 'relating to the

interpretation and performance of the contract itself.'"[23]  But those that more broadly embrace

"disputes 'relating to' a particular agreement apply to any disputes that reference the agreement

or have some 'logical or causal connection' to the agreement."[24]

The plaintiffs argue that Boyer consented to this court's jurisdiction when he agreed to

two sets of "terms and conditions" associated with separate token purchases.  The first clause,

listed on NAC's website, covers "any and all claims between the [p]arties . . . related to or

arising from these Terms and Conditions."[25]  The second, which Boyer signed in connection with

two later purchases, contains an arbitration clause that similarly covers "[a]ny controversy or

claim arising out of or relating to this [a]greement," and contemplates that arbitration take place

in Clark County, Nevada.[26]  The plaintiffs fail to show that this case is swept up by either clause.

At the outset, I need not determine whether the arbitration mandate applies to this case or

whether it establishes that Boyer consented to this court's jurisdiction because, as the plaintiffs

concede, this dispute falls outside of the clause's ambit by its plain terms.[27]  While the plaintiffs

---

[21] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n. 14 (1985).

[22] *Manetti-Farro, Inc. v. Gucci Am. Inc.*, 858 F.2d 509, 513 (9th Cir. 1988).

[23] *Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1086 (9th Cir. 2018).

[24] *Id.*

[25] ECF No. 8-2 at 11.

[26] ECF No. 8-3 at 13.

[27] ECF No. 8 at 8 n.43 ("Although Plaintiffs' terms of both agreements reference arbitration of
disputes, arbitration is not required for resolution of Plaintiffs' single claim for declaratory relief,

5

argue that the arbitration clause's venue mandate is binding on Boyer, they also argue that

arbitration "is not required" for a judgment that defines the parameters of their liability to the

defendants.[28]  But the plaintiffs can't have their cake and eat it too.  So I must determine only

whether the plaintiffs' claims relate to or arise from Boyer's direct token purchase.

Although the forum-selection clause covers disputes both arising out of and related to the

terms and conditions of Boyer's 2018 token purchases, the plaintiffs fail to demonstrate that their

declaratory-relief request falls into either bucket.  As the plaintiffs make clear, they seek relief

solely to distance themselves from a dispute over four separate contracts that are not at issue

here.[29]  Importantly, under those agreements, which underlie the plaintiffs' lawsuit here, Boyer

was selling tokens to a third party, not purchasing more from the foundation.  The plaintiffs have

thus failed to show that Boyer's California lawsuit had anything to do with a defect in Boyer's

initial token purchase.

Simply put, the plaintiffs haven't demonstrated that there is any dispute "over [the] terms

and conditions" of Boyer's token purchase.  The fact that the lawsuits both concern the same

type of token does not mean that all disputes arise out of or relate to those tokens' initial

purchase.  Take, for example, the sale of a car—the first owner sells the car to a person who then

decides to resell it.  If the second sale falls through because the new purchaser doesn't pay up,

that dispute has nothing to do with the first, even if it is over the same car.  If the plaintiffs' claim

_____

determining the parties' relationship.").  While the Boyer defendants note this issue, they do not separately move to compel arbitration.

[28] *Id.*

[29] *E.g.*, ECF Nos. 1-1 at ¶¶ 36 ("Thus, unrelated to plaintiffs . . . Dillman entered several purchase agreements with Mr. Boyer to buy from Boyer's interests . . . ."), 43 (alleging that the plaintiffs are not liable for the contract dispute between the defendants because the "damages flow from [the Boyer defendants'] contracts with Dillman . . ."); 8 at 5.

1  here arose because Boyer purchased tokens directly from the foundation and the foundation

2  refused to grant Boyer access to the tokens, or it stopped him from trading in his tokens for

3  digital currency, that dispute would likely be covered by the clause.  But here, the plaintiffs'

4  declaratory-relief request is predicated solely on Boyer's resale of the tokens, leaving the

5  plaintiffs unable to demonstrate that the provision applies here.  So I find that the Boyer

6  defendants did not consent to this court's jurisdiction under the forum-selection clause.

**II.     The plaintiffs fail to meet their burden to demonstrate that this court has jurisdiction over the Boyer defendants.**

9           The parties do not dispute that this court lacks general personal jurisdiction over the

10  defendants, so I need only evaluate whether this court has specific jurisdiction over them.

11  Specific jurisdiction "focuses on the relationship among the defendant, the forum, and the

12  litigation."[30]  This means that "the plaintiff cannot be the only link between the defendant and

13  the forum,"[31] and "[t]he unilateral activity of those who claim some relationship with a

14  nonresident defendant cannot satisfy the requirement of contact with the forum State."[32]

15           Courts in the Ninth Circuit apply a three-prong test to resolve whether specific

16  jurisdiction exists.[33]  The plaintiff bears the burden of satisfying the first two by showing that

17  (1) the defendant "purposefully avail[ed] himself of the privileges of conducting activities in the

18  forum" and that (2) the claim "arises out of or relates to the defendants' forum-related

---

[30] *Walden*, 571 U.S. at 283–84 (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 775 (1984)) (internal quotation marks omitted).

[31] *Id.* at 285 (citing *Burger King Corp.*, 471 U.S. at 478).

[32] *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

[33] *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)).

activities."[34]  If he does, the burden shifts to the defendant to "present a compelling case" that

jurisdiction would be unreasonable.[35]  An insufficient showing at any prong requires dismissal.[36]

### A.    The Boyer defendants have not purposefully availed themselves of the forum.

The plaintiffs fail to allege that the Boyer defendants purposefully availed themselves of

any privileges of conducting business in Nevada or that their isolated token purchases gave rise

to the plaintiffs' claim.  Under a purposeful-availment analysis, the plaintiff must show that the

defendant "performed some type of affirmative conduct [that] allows or promotes the transaction

of business within the forum state."[37]  Merely contracting with the nonresident defendant is

insufficient to establish jurisdiction.[38]  Instead, the focus is on whether the defendant's "business

activities reach out beyond one state and create continuing relationships and obligations with

citizens of another state."[39]

---

[34] *Axiom Foods, Inc. v. Acerchem Int'l., Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (quoting *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)) (internal quotation marks omitted). Courts generally apply the purposeful-availment test to suits sounding in contract or negligence, *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 460 (9th Cir. 2007), and the purposeful-direction test to intentional torts.  *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 606 (9th Cir. 2018).  This case presents a singular request for a declaratory judgment over a separate breach of contract.  Because the plaintiffs "do[] not point to any conduct by" the Boyer defendants "that would be readily susceptible to a" purposeful direction analysis, I apply the purposeful-availment test to determine this jurisdictional question.  *See Schwarzenegger*, 374 F.3d at 803.

[35] *Schwarzenegger*, 374 F.3d at 802 (quoting *Burger King*, 471 U.S. at 477).

[36] *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995); *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (citing *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006)) ("[I]f the plaintiff fails at the first step, the jurisdictional inquiry ends and the case must be dismissed.").

[37] *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990).

[38] *Boschetto*, 539 F.3d at 1017 (citing *Burger King*, 471 U.S. at 478).

[39] *Travelers Health Ass'n v. Virginia, ex rel. State Corp. Comm'n*, 339 U.S. 643, 647 (1950).

The plaintiffs' misreading of the personal-jurisdiction jurisprudence is the source of their meritless assertion of jurisdiction. According to the plaintiffs, only one transaction in the forum is necessary to establish jurisdiction, so "[t]he mere fact that [the d]efendants executed" the earlier, unrelated purchase agreements "is evidence that they are subject to jurisdiction in Nevada."[40] But the law requires more than an attenuated purchase of digital currency from a Nevada company to establish jurisdiction. Instead, the plaintiffs must show that those purchases allowed Boyer to conduct further business in the forum[41] or that they "contemplated a long-term relationship between the parties and 'continuing and wide-reaching contacts with [the plaintiffs] in'" Nevada.[42] The plaintiffs fail to plead any facts that, taken as true, show that Boyer's token purchases were anything other than a "lone transaction for the sale of one item,"[43] leaving them unable to establish the first prong.

**B.    The plaintiffs' claim does not arise out of the Boyer defendants' Nevada activities.**

Even if the plaintiffs had satisfied the purposeful-availment prong, they have wholly failed to show that their request for relief arises from the Boyer defendants' Nevada conduct. To meet the second specific-jurisdiction prong, "the *suit* must 'aris[e] out of or relate[e] to the defendant's contacts with the *forum*."[44] This means that "there must be 'an affiliation between

---

[40] ECF No. 8 at 9.

[41] *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1988).

[42] *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1107 (9th Cir. 2020) (citation omitted).

[43] *Boschetto*, 539 F.3d at 1017.

[44] *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cnty.*, 137 S. Ct. 1773, 1780 (2017) (quoting *Daimler AG v. Bauman*, 571 U.S. at 126) (internal quotation marks omitted) (emphasis and alteration in original).

the forum and the underlying controversy, principally [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'"[45]  Courts in the Ninth Circuit apply "a 'but for' test to determine whether a particular claim arises out of forum-related activities and thereby satisfies the second requirement for specific jurisdiction."[46]

Far from demonstrating any facts to show that this declaratory-relief action would not have occurred but for the Boyer defendants' isolated purchases, the plaintiffs offer a single sentence stating that their "claim for declaratory relief derives and arises from the [d]efendants' activities involving the transaction with [the p]laintiffs relating back to the first prong of the test."[47]  This assertion falls short of demonstrating that the plaintiffs' lawsuit—which concerns four contracts between third parties—arises from the Boyer defendants' Nevada contacts.  The plaintiffs have thus failed to meet their burden to tie the Boyer defendants to this forum.

---

[45] *Id.* (citation omitted).

[46] *Ballard*, 65 F.3d at 1500 (citation omitted).

[47] ECF No. 8 at 9.

**Conclusion**

IT IS THEREFORE ORDERED that defendant Benjamin Boyer's motion to dismiss **[ECF No. 4] is GRANTED** for want of personal jurisdiction.  The Clerk of Court is directed to dismiss the claims against Benjamin Boyer, the Boyer Family Trust, and the Benjamin Boyer trust, and terminate these parties as defendants in this matter.

IT IS FURTHER ORDERED that the defendants' request for judicial notice **[ECF No. 5] is DENIED as moot.** [48]

_____
U.S. District Judge Jennifer A. Dorsey
March 17, 2021

---

[48] Because I find that the plaintiffs fail at the first two steps of the specific-jurisdiction analysis, I need not and do not consider whether jurisdiction is reasonable.  And because I find that the plaintiffs have failed to meet their burden, I need not consider Andrade's statements in other court documents to show a lack of jurisdiction, so I deny the defendants' request for judicial notice, ECF No. 5, as moot.