# EXHIBIT 1

# EXHIBIT 1

GARMAN TURNER GORDON LLP
ERIC R. OLSEN
Nevada Bar No. 3127
eolsen@gtg.legal
WALTER F. FICK
Nevada Bar No. 14193
Email: wfick@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Tel: (725) 777-3000
Fax: (725) 777-3112
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| MARCUS ANDRADE AND NAC FOUNDATION, LLC,<br><br>Plaintiff,<br><br>v.<br><br>JAPHETH DILLMAN; BLOCK BITS CAPITAL, LLC; BLOCK BITS CAPITAL, GP; BLOCK BITS AML HOLDINGS, LLC; BENJAMIN BOYER, INDIVIDUALLY AND AS TRUSTEE OF BOYER FAMILY TRUST AND BENJAMIN BOYER TRUST; and DOES I through XXX, inclusive,<br><br>Defendants. | Case No. 2:20-cv-01021-JAD-NJK<br><br>**DECLARATION OF MARCUS ANDRADE IN SUPPORT OF APPLICATION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS BLOCK BITS CAPITAL, GP, AND BLOCK BIT CAPITAL, LLC** |

I, Marcus Andrade, hereby declare and state as follows:

1.    I am the manager of Plaintiff NAC Foundation, LLC ("NAC"), the Plaintiff in this action and I make this declaration in support of NAC's APPLICATION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS BLOCK BITS CAPITAL, GP, AND BLOCK BIT CAPITAL, LLC.

2.    I am competent to testify regarding the following facts, as I have personal knowledge of them and/or have been provided information such that I believe the facts to be true.

3.      Defendant Dillman is an individual residing in San Francisco County, California. Dillman has no ownership in NAC, and has no agency relationship with Plaintiffs.[1]

4.      Block Bits GP is a general partnership, of which Dillman is a general partner, formed and existing under the laws of the state of Delaware but operating in California, and having its principal place of business in San Francisco, California. Dillman and his partner David Mata have exclusive control of this entity. Plaintiffs have no affiliation with Block Bits GP, and they have no agency relationship with it.

5.      Defendant Block Bits LLC is a limited liability company duly formed and existing under the laws of the state of Delaware but operating in California, and having its principal place of business in San Francisco, California. Dillman is a manager of Block Bits LLC. David Mata is also a manager. Plaintiffs have no affiliation with Block Bits LLC, and they have no agency relationship with it.

6.      Defendant BB AML Holdings is a limited liability company duly formed and existing under the laws of the state of Delaware but operating in California, and having its principal place of business in San Francisco, California. Dillman is a manager of this entity. Plaintiffs have no ownership in or affiliation with BB AML Holdings, and they have no agency relationship with it.

7.      NAC is an acronym for National Aten Coin. Aten Coin is a form of digital currency presided over by the NAC Foundation, an organization that supports the identification of based block chain technology and digital currencies. It  is the creator of the Aten Coin, the first-generation non-anonymous digital currency.

8.      NAC developed the next generation digital currency, one that contains safety features and a way to prevent unethical people and criminal elements known to law enforcement from using in the way they have exploited other forms of digital currency.

9.      AML Bitcoin is a form of digital currency created by NAC, and the successor to the Aten Coin digital currency. AML Bitcoin Tokens represent what later became the AML Bitcoin

---

[1] Despite diligent efforts of Plaintiffs' counsel, Dillman is evading service.

digital currency. The AML Bitcoin Token preceded the AML Bitcoin and did not have any specialized features that the AML Bitcoin currently possesses. AML Bitcoin Tokens effectively provided the right to pre-purchase AML Bitcoin in the form of tokens which could be converted in a 1:1 ratio for AML Bitcoins once the AMC Bitcoin project was finished. This fact was stated on NAC's website, in its purchase agreements, and in the Terms and Conditions that one was required to accept prior to gaining full access to the website. The Terms and Conditions for NAC were drafted and implemented by NAC prior to the ICO on October 6, 2017. (A true and accurate copy of the Terms and Conditions are attached hereto as **Exhibit 1-A**.).

10.    On April 12, 2020, AML Bitcoin development, incorporating anti-money laundering features, was completed. Existing AML Bitcoin Token holders are now able to convert their tokens to AML Bitcoins on a 1:1 ratio. Prior to the launch, on March 6, 2020, I announced that pending an audit, the launch of the AML Bitcoin would take place, and it did. This action relates to the purchase and sale of AML Bitcoin Tokens.

11.    I am the President and sole owner of NAC, the creator of the AML Bitcoin Token that became the AML Bitcoin. The offering of AML Bitcoin Tokens commenced in August 2017.

12.    An intermediary introduced me to Dillman in 2017. On or about July 7, 2017, Block Bits, GP was formed by Dillman and others. Dillman was interested in AML Bitcoin Tokens and, through the intermediary, he purchased AML Bitcoin Tokens from me in August 2017. On August 28, 2017, Block Bits GP entered, through Dillman, into a direct agreement with me to purchase some of my personal AML Bitcoin Tokens for $60,000.00. Block Bits GP bought 135,555.555 AML Bitcoins Tokens, which were transferred to it for $0.45 per coin. Both parties agreed to specific established terms and conditions stated in the written purchase agreement

13.    On or about August 28, 2017, Block Bits LLC, through an intermediary, entered into a direct purchase agreement with me to purchase some additional inventory of my personal AML Bitcoin Tokens. Specifically, Block Bits LLC purchased 287,555.555 AML Bitcoin Tokens for $129,400.00. Those AML Bitcoins Tokens were then transferred to Block Bits LLC for $0.45 per coin. Although we did not speak directly, both parties agreed to specific established terms and conditions stated in the written purchase agreement.

14.     During the subsequent AML Bitcoin Token initial public offering, Block Bits LLC purchased additional tokens for $1.25 per coin. Block Bits LLC's direct purchases and online purchases totaled 1,549,196.555 AML Bitcoin Tokens, for a total price of $1,693,400.00.

15.     From on or about January 12, 2018 to February 14, 2018, Dillman caused $1,564,000 to be wire transferred to an attorney trust account of NAC corporate counsel in Nevada. Protocol restrictions on the "DS Account" provided that NAC would not receive any funds for goods purchased until the appointed CPA confirmed with the attorney overseeing the trust account that all purchasers, like Bit Blocks LLC, first received what they purchased. As in all cases, the funds were received by corporate counsel in Las Vegas, David Salmon, who then ensured that Block Bits LLC received the AML Bitcoin Tokens purchased before NAC was paid.

16.     On January 14, 2018, Dillman e-mailed Andrade saying:

Block Bits is putting in an order for $50 million worth of AML Bitcoin. However, due to the large size of the wire an (sic) extra level of KYC ("Know Your Customer") scrutiny is being added to the banks. . . To show you what we are serious about the buy, we have gone ahead and sent you an initial wire of $850,000 yesterday (1/12/2018) (sic).

17.     Despite this "order" for $50 million worth of AML Bitcoin, however, Dillman and Block Bits LLC never purchased any additional AML Bitcoin Tokens beyond the $1,564,000 in wire transfer purchases made in January and February 2018.

18.     Like other digital currencies, AML Bitcoin Tokens are downloaded to the buyer's digital "wallet." Prior to any purchases being consummated, the published Terms and Conditions on NAC's website must be agreed to by the purchaser. No AML Bitcoin Token wallets can be downloaded without the buyer first accepting the Terms and Conditions of NAC.

19.     On February 9, 2018, Mr. Boyer, individually, purchased AML Bitcoin Tokens online for a total of $1,500.00. Mr. Boyer necessarily accepted the Terms and Conditions, or he would not have been able to download to his digital wallet and take possession of his AML Bitcoin Tokens.

20.     BB AML Holdings was formed in Delaware on January 11, 2018, as a private investment company. It offered $2,000,000.00 in interests to investors and solicited investors in

six states. This entity had no relationship to me or to NAC. According to an SEC Form D filing by that entity, between January 12, 2018 and March 1, 2018, Mr. Boyer and 24 others had invested $1,580,000.00 in BB AML Holdings, with another $420,000.00 of investment in the fund reportedly available. BB AML Holdings never entered any direct or online purchases with me or NAC.

21.    AML Bitcoin Tokens purchased by Block Bits LLC ended up in the possession of BB AML Holdings and Boyer Trusts, but neither NAC nor I had any knowledge that the AML Bitcoin Tokens acquired by Block Bits LLC would end up being held by BB AML Holdings, or any of its investors, including Mr. Boyer or the Boyer Trusts. That was never disclosed by the Defaulted Defendants or by Dillman. Only after the fact did Dillman and Defaulted Defendants inform NAC and me about the occurrence of transfers of AML Bitcoin Tokens they purchased, and they did so without ever mentioning Mr. Boyer or BB AML Holdings specifically. Moreover, neither I nor NAC had knowledge of the Defaulted Defendants' funding sources at the time of its initial purchases.

22.    On or about July 31, 2018 (according an internal Statement of Account of BB AML Holdings provided to me by Ben Boyer on about March 2, 2020) the Boyer Family Trust transferred directly to BB AML Holdings 275,186.2484 AML Bitcoins Tokens from an inventory it somehow acquired. NAC believes that Boyer Family Trust acquired this inventory from Defaulted Defendants, out of the purchases made by Block Bits LLC in 2017. Similar additional transfers appear to have been made on August 16, 2018 for 161,096.561 AML Bitcoin Tokens. NAC nor I were not acquainted with the Boyer Family Trust and I did not know about these third-party transactions at or near the time they reportedly occurred. In order to own the AML Bitcoin Token digital wallet, however, the Boyer Family Trust would necessarily have agreed to the Terms and Conditions set by NAC.

23.    NAC treated the 1,000 plus purchasers of AML Bitcoin Tokens during the AML Bitcoin Token offering the same. To download AML Bitcoins to a wallet, Defaulted Defendants agreed to adhere by the Terms and Conditions for purchasing AML Bitcoin Tokens. The Terms and Conditions included the following statements:

AML Bitcoin and/or AML Token have no underlying collateral; the AML Bitcoin and/or AML Bitcoin Token is merely an unsecured cyber currency or digital coin or in the case of the AML Bitcoin Token, a digital token for the exchange to an AML Bitcoin.

AML Bitcoin and/or AML Bitcoin Token will not be redeemed by BGCI or NAC and You are not relying upon NAC to be a source of liquidity for You or Your purchase of AML Bitcoin and/or AML Bitcoin Token.

Neither AML Bitcoin and/or AML Bitcoin Tokens nor any agreement related to Your purchase of AML Bitcoin and/or AML Bitcoin Tokens creates or constitutes a debt of NAC to You. Neither BGCI nor NAC is obligated to pay You any returns or repayment regarding Your purchase of AML Bitcoin and/or AML Bitcoin Tokens.

AML Bitcoin is a medium of exchange and not a pooled interest in any business entity or common enterprise or a business venture involving You and BGCI, NAC, ABTC or its affiliates or subsidiaries. . .

You have not purchased and have no intention of purchasing AML Bitcoin, AML Bitcoin Tokens. . .. and/or any other company or product offered by NAC for investment purposes and You expect no return on investment.

24.    On or about October 19, 2018, after NAC had concluded its offering of AML Bitcoin Tokens, Boyer, as trustee of the Boyer Family Trust, using Block Bits LLC as a broker, purchased 250,000 AML Bitcoin Tokens from me for $0.20 per AML Bitcoin Token, a total of $50,000.00. A week later, on or about October 26, 2018, after NAC had concluded its offering of AML Bitcoin Tokens, Boyer, as trustee of the Boyer Family Trust, using Block Bits LLC as a broker, purchased 500,000 AML Bitcoin Tokens from me, at $0.15 per Token, a total of $75,000.00. The total price for these two sales by was $125,000.00. Mr. Boyer and I did not communicate directly regarding these transactions. All communications were with Mr. Boyer's broker, Block Bits LLC. As with all transactions, the stated Terms and Conditions of NAC applied to these transactions as well.

25.    Neither Block Bits LLC, Block Bits GP, nor Dillman ever shared any of their client data with NAC or myself, and I was never aware of the transactions between those Defendants and their clients/investors.

26.    I have reviewed a 2019 complaint filed by Mr. Boyer in California, as well as the judgment that resulted from it. On October 24 and 25, 2018, Mr. Boyer apparently transferred

1,050,000 AML Bitcoin Tokens from the Boyer Family Trust to Dillman, and/or the Defaulted Defendants. According to the Statement of Accounts received from Mr. Boyer for both Boyer Trusts on that date, the AML Bitcoin Tokens they owned were held by Dillman and/or Block Bits LLC after October 2018.

27.     In November of 2018, NAC discovered via compliance calls with NAC's compliance attorney, Chris Ray ("Attorney Ray"), that Block Bits LLC and its representative might have made unapproved statements in connection with AML Bitcoin Tokens to Mr. Boyer and at least one other AML Bitcoin Token purchaser. NAC wished to correct any misstatements that Block Bits LLC might have made about the AML Bitcoin Token and reached out several times to Mr. Boyer. In the event Mr. Boyer had made the purchase from me based on such unapproved statements, even though Defaulted Defendants were not my or NAC's agent, I was prepared to reimburse Boyer and accept return of the AML Bitcoin tokens.[2]

28.     After the actions of Dillman later came to light, I learned that Block Bits LLC had expressly instructed Boyer to ignore the calls from me or anyone at NAC and not to communicate with NAC or myself.

29.     Neither I, nor NAC were aware of a series of agreements between Mr. Boyer and Dillman that followed about one month after the November call. As detailed in Mr. Boyer's California action, unrelated to Plaintiffs, on December 13, 2018, Dillman entered several purchase agreements with Mr. Boyer to buy from Boyer's interests in some 2,564,652 AML Bitcoin Tokens, for which with Dillman would be personally obligated to pay Mr. Boyer $2,989,652, for a blended price of $1.17 per AML Bitcoin Token. Dillman was to pay all amounts due by December 31, 2018. Mr. Boyer later extended that date. The four Asset Purchase Agreements dated December 13, 2018 included: 1) An agreement for Dillman to purchase 228,369 AML Bitcoin Tokens from the Boyer Trust for

---

[2] This was consistent with NAC's own policy, as stated in the FAQ section of its website, to issue an automatic refund is anyone ever told a buyer that the purchase of an  AML BitCoin Token related to: Pooled interests; Any type of return; Any type of capital gain; Any type of interest; Any type of ownership in the company; or That the coin had an underlying collateral. (A true and correct copy of that section is attached hereto as **Exhibit 1-B**.)

$228,369.00; 2) An agreement for Dillman to purchase from BB AML Holdings (in which Boyer Trusts were investors) 100,000 AML Bitcoin Tokens for $150,000; 3) An agreement for Dillman to purchase from Boyer Family Trust 1,486,283 AML Bitcoin Tokens for $1,486,283.00; and 4) An agreement for Dillman to purchase another 750,000 AML Bitcoin Tokens from BB AML Bitcoin Holdings for $1,125,000.00.

30.     According to the action filed by Mr. Boyer in the Superior Court for the County of San Francisco in 2019, after receiving the AML Bitcoin Tokens from Mr. Boyer, Dillman never paid any of the amounts due under the Asset Purchase Agreements.

31.     I only became generally aware that Block Bits LLC had "bought out" the AML Bitcoin Tokens Mr. Boyer purchased, via an e-mail received on or about December 26, 2018 from David Mata, a partner of Dillman's and manager of Block Bits LLC. Not knowing of the December 13th purchases by Dillman from Mr. Boyer, I had contacted Block Bits, LLC several times and stated that, though I had no legal obligation to do so, I would feel compelled to purchase back all the Block Bits, LLC brokered AML Bitcoin Tokens I sold directly to Boyer in October, at the same purchase price, if Dillman's statements had misled Mr. Boyer in any way. At that point, Mata told me that either Block Bits LLC or Dillman had already purchased from Mr. Boyer and the Boyer Trusts all AML Bitcoin Tokens they acquired, that neither myself or NAC should not expect to hear from Boyer, and that I should drop the issue. Later events confirmed that Boyer Trusts had, in fact, sold all AML Tokens they acquired.

32.     Mr. Boyer, as trustee of the Boyer Trusts, sued Dillman in California, April 10, 2019. The simple form Complaint filed in San Francisco County Superior Court as case number CGC-19-575158 asserts breach of contract claims for each of four agreements, on behalf of the Benjamin Boyer Trust and Boyer Family Trust. Dillman never appeared in that action to dispute any claims against him. On June 19, 2019, Mr. Boyer, as trustee for the Boyer Trusts obtained a judgment against Dillman in the amount of $3,078,787.06, plus pre-judgment interest and costs, as damages incurred for the value of the transferred AML Tokens for which Dillman failed to pay, in breach of the four Asset Purchase Agreements.

33.     Mr. Boyer later claimed that NAC and I were somehow responsible for these losses, even though the losses stem from Dillman's failure to pay Boyer Trusts for the AML Tokens they transferred to Dillman and/or Block Bits LLC. This assertion, which is a source of ongoing nuisance and cost, created a dispute and controversy between the parties requiring a declaration of the parties' rights that led to this action. Defaulted Defendants did not appear to defend any allegations and claim against them, and NAC and I hereby seek judgment as to those allegations and that claim.

34.     Because of the actions of Defaulted Defendants, Plaintiffs incurred substantial attorney fees and costs related to this action.

Executed this ⎯14th⎯ day of December 2020.


*Marcus Andrade*
MARCUS ANDRADE

4834-3200-1490, v. 1

Garman Turner
Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

9

# EXHIBIT 1-A



# Terms and Conditions

## TERMS AND CONDITIONS

**I**n using this website and/or registering for purchase and/or storage of AML Tokens and/or for an AML BitCoin Wallet or a wallet related to the purchase or storage of AML BitCoins and/or AML Tokens, You make the representations below and acknowledge that You have carefully read, that You understand, that You agree to the terms and conditions set forth below, and that they and Your representations below are a part of the contract and agreement between You and NAC Foundation, LLC (hereinafter "NAC"). You agree that these Terms and Conditions and the truth of Your representations are a condition to Your use of NAC Websites (including this one), all Your purchases, uses, sales, transfers, exchanges, transactions, and mining relating to the AML BitCoin, the AML Token, Your use of an AML BitCoin Wallet and Your use of an AML Token Wallet. Neither this document, nor any other document produced or signed by NAC is an offer or solicitation to buy coins or tokens.

A. Definitions. The following terms (listed alphabetically) are defined as follows:

1. "AML BitCoin" refers to the AML BitCoin digital currency.
2. "amlbitcoin.com" refers to the Website with the URL address of https://amlbitcoin.com, which is owned by NAC.
3. "AML BitCoin Wallet" refers to the digital wallet used for sending, receiving and mining AML BitCoins.

4. "amlbitcoinwallet.com" refers to the Website with the URL address of http://amlbitcoinwallet.com, which is owned by NAC.

5. "AML Compliant" refers to features or attributes of the AML BitCoin by which the AML BitCoin code and or combined with NAC's operating protocols and activities such as monitoring and reporting of activities concerning the purchase, use, sale, exchange and maintenance of the AML BitCoin, endeavor to be compliant with the AML Laws.

6. "AML Laws" means and refers to the laws, statutes, rules, regulations, and procedures of the United States, various States within the United States, and of jurisdictions of other nations in which AML BitCoin and/or AML Token is purchased, sold, exchanged, or used that govern, regulate, and relate to preventing money-laundering, terrorism, identity theft, financial crimes, and pertain to know-your-customer laws, and specifically (a) the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001, aka the USA PATRIOT Act; (b) International Money Laundering Abatement and Financial Anti-Terrorism Act of 2001, aka Title III, of the USA PATRIOT Act, and subtitles that deal with International Counter Money Laundering and Related Measures, Bank Secrecy Act Amendments and Related Improvements, and, Currency Crimes and Protection; (c) the Money Laundering Control Act of 1986; (d) provisions of the Fair and Accurate Credit Transactions Act of 2003, also known as FACT Act or FACTA, that pertain to the prevention of identity theft; (e) requirements related to economic and trade sanctions administered and enforced by the Office of Foreign Assets and Controls (OFAC) within the United States Department of Treasury; (f) the Bank Secrecy Act, aka BSA or the Currency and Foreign Transactions Reporting Act, which requires the reporting of certain transactions to the government; (g) laws pertaining to know-your-customer requirements; and (h) similar laws in other countries.

7. "AML Token" refers to a digital token which may be exchanged for an AML BitCoin.

8. "AML Token Wallet" refers to the digital wallet used for sending, receiving and mining AML Tokens.

9. "amltoken.com" refers to the Website with the URL address of https://amltoken.com, which is owned by NAC.

10. "BGCI" refers to Black Gold Coin International, Inc., a Wyoming corporation, with a principal place of business in Las Vegas, Nevada.

11. "NAC" refers to NAC Foundation, LLC, a limited liability company organized and existing under the laws of the State of Nevada, United States of America, with a principal place of business in Las Vegas, Nevada.

12. "NAC Websites" refers to AMLbitcoin.com, AMLbitcoinwallet.com, AMLtoken.com, and all other websites that may be owned by NAC from time to time. In the event a predecessor coin created by NAC (the Aten Black Gold" coin) is converted to an AML BitCoin, then NAC Websites also refers to Atencoin.com, being the Website with a former URL address of

https://www.atencoin.com and Atenwallet.com, being the Website with a former URL address of https://atenwallet.com.

13. "Parties" refers to You and NAC collectively.

14. "Party" refers to NAC or You, as the case may be.

15. "You" and "Your" each refers to you, the person accessing this website and accepting these terms and conditions.

B. You acknowledge, understand, represent, warrant and agree as follows:

1. These Terms and Conditions shall be retroactive to the date of Your original purchase and/or acquisition of AML BitCoin Tokens and/or AML BitCoins and Your execution of a Purchase and Sale Agreement in connection with Your purchase of AML Tokens and/or AML BitCoins.

2. You are at least 18 years of age and are of competent mind.

3. You are not located in a country subject to sanctions imposed by laws or regulations of the United States or any governmental agency, department or office of the United States (such as the Office of Foreign Assets Control within the U.S. Department of the Treasury), or executive orders of the President of the United States, or treaties to which the United States is a party, or otherwise imposed by other organizations, such as the United Nations, European Union, any European Union country, the United Kingdom's Department of Treasury, or any other sanctions list recognized and enforced by the United States, such as, without limitation and solely by way of example, the Democratic People's Republic of North Korea and its territories, Iran, and Iraq.

4. Your purchase of AML Tokens and AML BitCoins and use of the AML Token Wallet and AML BitCoin Wallet complies with applicable law and regulation in Your jurisdiction, including, but not limited to, (a) legal capacity to enter into contracts, (b) relating to purchasing, selling and using digital or cryptocurrencies such as the AML Tokens and AML BitCoins, and exchanges for such, and (d) any governmental or other consents required have been obtained.

5. Information You provided to NAC about Yourself, including, without limitation, passport, driver's license, address, social security number, email address, biometric data, bank account information in connection with verification procedures and Your use of NAC Websites, the AML Token Wallet and/or the AML BitCoin Wallet, is accurate. Should any such information be inaccurate or change, You will promptly deliver correct information to NAC.

6. In order to obtain an AML BitCoin Wallet and to purchase, sell, exchange, hold, mine, and use the AML BitCoins, You must complete, obtain, and comply with the procedures for and to obtain a certified digital identity profile. This process requires a biometric scan of one of more of Your face, iris, retina, and fingerprint.  While at this time, NAC intends to use and rely upon the Digital Identity Trust Network to administer and process the certified digital identity profile, in the future, NAC may rely upon an alternative vendor for the creation,

administration and processing of certified digital identity profiles by means of biometric scans.

7. If You are using this website and/or registering for an AML Token Wallet and/or an AML BitCoin Wallet on behalf of a legal entity, You represent and warrant that (a) such legal entity is duly organized and validly existing under the applicable laws of the jurisdiction of its organization; (b) and You are duly authorized by such legal entity to act on its behalf.

8. As to entities, only the authorized representative of the entity shall obtain an AML Token Wallet and/or the AML BitCoin Wallet and all addresses and credentials pertaining to the AML Token Wallet and the AML BitCoin Wallet and transactions in AML Tokens and AML BitCoins, including purchases, sales, exchanges, and use in commercial or consumer transactions shall refer to an address identifying the individual representative of the entity.

9. BGCI and NAC are two separate and distinct business entities.

10. You have no right to and will not share or participate in any way with BGCI's revenue, profit, or losses earned in connection with its activities concerning the AML BitCoin and/or AML Token.

11. AML BitCoin and/or AML Token have no underlying collateral; the AML BitCoin and/or AML Token is merely an unsecured cyber currency or digital coin or in the case of the AML Token, a digital token for the exchange to an AML BitCoin.

12. AML BitCoin and/or AML Token will not be redeemed by BGCI or NAC and You are not relying upon NAC to be a source of liquidity for You or Your purchase of AML BitCoin and/or AML Token.

13. Neither AML BitCoins and/or AML Tokens nor any agreement related to Your purchase of AML BitCoins and/or AML Tokens creates or constitutes a debt of NAC to You. Neither BGCI nor NAC is obligated to pay You any returns or repayment regarding Your purchase of AML BitCoins and/or AML Tokens.

14. AML BitCoin is a medium of exchange and not a pooled interest in any business entity or common enterprise or a business venture involving You and BGCI, NAC or its affiliates or subsidiaries.

15. You have not purchased and have no intention of purchasing AML BitCoins and/or AML Tokens for investment purposes and You expect no return on investment.

16. AML BitCoins and/or AML Tokens are not securities and are not subject to the securities laws of any governmental entity.

17. AML BitCoins and/or AML Tokens are intended to be and are solely an Internet-based exchange medium.

18. By purchasing, selling, exchanging, transferring, using or mining AML BitCoins and/or AML Tokens, and by using the AML BitCoin Wallet, AML Token Wallet, and/or an NAC Website, or obtaining and using technical information and technical support provided by NAC, You are not participating in and not becoming a member or investor in any pooled interest, business entity, common enterprise, or business venture with NAC or any of its or their affiliates. By

purchasing AML BitCoins or AML Tokens, You have no right to vote on any activity of BGCI, NAC, or any other affiliate or subsidiary of BGCI or NAC.

19. NAC and its affiliates can, without notice, purchase AML BitCoins and/or AML Tokens on the secondary market after the initial issuance, and may resell the AML BitCoins and/or AML Tokens that they purchased.

20. You shall take full responsibility for Your AML BitCoin Wallet and Your AML Token Wallet.

21. NAC will use its best efforts to create a digital currency (or cryptocurrency or cybercurrency) that is compliant with AML Laws.

22. Your purchase of AML BitCoins and/or AML Tokens is solely for the purpose of using AML BitCoins and/or AML Tokens for Your lawful commercial or personal activities, but not as an investment.

23. You have never, to Your knowledge, been involved in any terrorist or terrorist financing activity; and You shall never intentionally engage in activities that constitute terrorism or financing of terrorists.

24. You shall abide by and conform Your conduct to relevant laws in Your jurisdiction regarding the ownership, purchasing, selling, exchanging, transferring, using or mining AML BitCoins and/or AML Tokens, and use of the AML BitCoin Wallet, the AML Token Wallet and/or an NAC Website, including, but not limited to, reports to tax authorities.

25. You are not purchasing, selling, exchanging, transferring, using or mining AML BitCoins and/or AML Tokens, and/or using the AML BitCoin Wallet, the AML Token Wallet, and/or an NAC Website for the purpose of facilitating any illegal or unlawful activities, or in any way in connection with any illegal or unlawful activity.

26. In connection with the purchasing, selling, exchanging, transferring, using or mining AML BitCoins and/or AML Tokens, and/or using the AML BitCoin Wallet, the AML Token Wallet, and/or an NAC Website, You intend to and will make all reasonable efforts to comply with all laws and regulations of the United States governing currency transmission activity, all State laws governing such, and all laws governing such in Your jurisdiction.

27. The supply of AML BitCoin, AML Token and NAC services through the NAC Website are subject to United States and international export controls and economic sanctions requirements.

28. NAC will use its best efforts to monitor all the transactions (purchases, exchanges, sales, mining) of AML BitCoins s in an effort to detect suspicious activities that may violate AML Laws.

29. NAC intends to track AML BitCoin to identifiable persons and business entities and will file suspicious activity or similar reports with relevant governmental agencies in nations where it does business. In filing such reports NAC shall exercise reasonable care and act in good faith based on the information it has and that is provided to it. You agree that notwithstanding NAC's exercise of reasonable care and good faith, or otherwise act in conformity with the standards of applicable law, such reports may be erroneous or contain incomplete or inaccurate information. You acknowledge that generally such reports to governmental

agencies that are required to be made are privileged communications, as a result of which, NAC would not be subject to a claim for damages in the event that NAC makes an incorrect or incomplete report having exercised reasonable care and good faith.

30. Your AML BitCoin transactions and their associated IP locations of senders and receivers will be recorded and securely stored in a physical server located in United States of America. Your personal information submitted to an NAC Website shall be securely stored and backed-up in a physical server located in United States of America. Your AML BitCoin transactions and their associated IP locations of senders and receivers will be monitored and analyzed in United States of America with monitoring and detecting software that allows NAC to identify any suspicious activities. Any suspicious activities associated with Your AML BitCoin transactions together with personal information and IP locations of corresponding senders and receivers may, in NAC's sole judgment, be reported to relevant government entities in Your region and/or the Financial Crimes Enforcement Network (FinCEN at http://www.fincen.gov/) in United States of America. NAC's tracking and reporting to appropriate governmental authorities of suspicious activities, includes Your activity in the United States with respect to the AML BitCoin.

31. In the event NAC receives or possesses information that would lead to a reasonable and good faith suspicion, or a basis otherwise in conformity with applicable law, that a transaction in AML Tokens and/or AML BitCoins is violating or is about to violate money laundering, anti-terrorist financing, or anti-fraud laws of the United States or of any nation or that the use of AML BitCoins is or is about to be used to facilitate a violation of such laws or a financial crime, or is in violation of a validly issued court order or other valid governmental order, NAC may refuse to process, or may rescind, cancel or reverse, any purchase, sell, exchange, transfer, use or mine of AML BitCoins, and freeze Your AML BitCoin Wallet. In the event Your AML BitCoin Wallet is frozen and You have credible evidence, or evidence otherwise satisfying the standard of applicable law, establishing that You did not knowingly engage in terrorist or criminal activity or the financing of such, and in the event NAC is not ordered otherwise by a court, governmental or law enforcement agency or department, NAC will take all reasonable actions to unfreeze and reinstate Your AML BitCoin Wallet. (In this regard, You must contact Legal@amlbitcoin.com).

32. By purchasing, selling, exchanging, transferring, using or mining AML Tokens and/or AML BitCoins and by using the AML Token Wallet and/or AML BitCoin Wallet You are relinquishing rights of privacy relating to NAC's monitoring and reporting of transactions pertaining to You as provided in these Terms and Conditions. You shall have no right to a claim or cause of action or claim of damages against NAC relating to an invasion of privacy by NAC as a result of NAC's monitoring and reporting of transactions as provided in these Terms and Conditions.

33. You shall take all reasonable measures to not permit or allow access to any person or entity other than You to use Your AML Token Wallet, Your AML BitCoin Wallet and/or any NAC

Website. You will implement reasonable and appropriate measures designed to secure access to (a) any device associated with the email address associated with Your AML Token Wallet, Your AML BitCoin Wallet, NAC Websites, the AML Tokens and AML BitCoins, (b) private keys required to access any relevant AML Token and AML BitCoin address, and (c) Your username, password and any other login or identifying credentials for the NAC Websites, the AML Tokens, AML BitCoins, Your AML Token Wallet or Your AML BitCoin Wallet.

34. You shall not use a web crawler or similar technique to access NAC's Websites or to extract data, reverse engineer or disassemble any aspect of NAC's Websites, the AML Tokens, AML BitCoins, AML Token Wallet or the AML BitCoin Wallet in an effort to access any source code, underlying ideas and concepts, and algorithms. You shall not take any action that imposes an unreasonable or disproportionately large load on NAC's infrastructure, or detrimentally interfere with, intercept, or expropriate any system, data, or information. You shall not transmit or upload any material to an NAC Website that contains viruses, Trojan horses, worms, or any other harmful or deleterious program. You shall not otherwise attempt to gain unauthorized access to the NAC Websites, AML Tokens, AML Bitcoins, an AML Token Wallet and/or an AML BitCoin Wallet and/or any related computer systems or networks connected with NAC, through password mining or any other means.

35. In the event You suspect a security breach in any of the foregoing You will inform NAC immediately so it can take all required and possible measures to secure Your AML Token Wallet, Your AML BitCoin Wallet, the NAC Websites, the AML Tokens, AML BitCoins, and related systems as whole. In the event that You are no longer in possession of any device associated with Your AML Tokens and AML BitCoins or are not able to provide Your login or identifying credentials to NAC or the NAC Websites, or Your digital identity is unavailable, deleted or compromised, NAC may, in its sole discretion, grant access to Your AML BitCoin Wallet to any person providing additional credentials to NAC. NAC reserves the right to determine the additional credentials required, which may include, without limitation, a sworn, notarized statement of identity.

36. NAC will operate and maintain its computer systems and the NAC Websites in such a manner as a reasonably prudent person in the business of conducting transactions based on a sophisticated computer networking system, and NAC shall exercise due care and good faith, including employing technicians and personnel highly skilled in the operation of such highly sophisticated computer and software based technologies. NAC shall endeavor to employ and utilize the most sophisticated and safest methods of internet and computer security available sufficient to assure that at all times its computer network and NAC Websites provide a safe and secure environment for the conduct of the business anticipated by these Terms and Conditions.

37. In the event of an attack on and NAC Website or computer system, a virus or malicious code in NAC's computer system, notwithstanding NAC's compliance with paragraph 36 above, or in the event NAC is required to suspend, modify, discontinue all or a portion of its services, or

terminate its services by a court order or governmental order or direction, as a result of circumstances beyond NAC's control, NAC shall not be liable to You for any damage as a result of such suspension, modification, discontinuance, or termination.

38. It is possible that Your AML Token Wallet and/or Your AML BitCoin Wallet may be subject to attempted impersonation and or cyber-attack which could result in the material diminution, theft or transfer of Your AML Token Wallet and/or Your AML BitCoin Wallet. So long as NAC has complied with paragraph 36 above, and the circumstances leading to such impersonation or cyber-attack are beyond NAC's control, NAC shall not be liable for any damage caused to You as a result of the use of NAC's computer system or an NAC Website, including direct, indirect, or consequential damages, whether such damage is caused by a hack, data breach, malicious code, computer virus or criminal conduct.

39. Neither NAC, its subsidiaries, affiliates, or licensors and their shareholders, owners, partners, joint venturers, trustees, beneficiaries, directors, officers, employees, attorneys, consultants, and agents will, in regard to the AML Tokens, AML BitCoins, Your AML Token Wallet, Your AML BitCoin Wallet, or NAC Websites, be liable to You or anyone else for any damages of any kind, including, but not limited to, direct, consequential, incidental, special or indirect damages, including but not limited to loss of profits, trading losses or damages, that result from use or loss of use of the AML Tokens, AML BitCoins, Your AML Token Wallet, Your AML BitCoin Wallet, or NAC Websites, even if NAC, its subsidiaries, affiliates, licensors and their shareholders, owners, partners, joint venturers, trustees, beneficiaries, directors, officers, employees, attorneys, consultants, and agents has or have been advised of the possibility of such damages or losses, except as otherwise expressly provided in these Terms and Conditions.

40. NAC shall not be liable for any delay or failure to perform any obligation under these Terms and Conditions where the delay or failure results from any cause beyond NAC's reasonable control, including acts of God, labor disputes or other industrial disturbances, electrical, telecommunications, hardware, software or other utility failures, earthquake, storms or other elements of nature, blockages, embargoes, riots, acts or orders of government, acts of terrorism, or war, changes in blockchain technology (broadly construed), or any other force or conditions not within NAC's control.

41. In making Your purchase of AML BitCoins and/or AML Tokens You are and have relied solely upon Your own judgment, belief and knowledge as to the nature of the currency and the Cybercoin, cryptocurrency, or digital market and industry and You are not relying on any statements made by NAC, or any of its agents or representatives or on any of its advertising or marketing materials, or any representation or statement made on any NAC Website; and You shall not assert any claim(s) against NAC or any of its agents or representatives based on information on any NAC Website or any modification or change to any NAC Website.

42. You have a substantial and sophisticated level of understanding of the functionality, usage, and storage of cryptographic and digital coins and tokens, as well as blockchain-based software and/or technology.

43. The AML Token Wallet, AML BitCoin Wallet, AML Token and AML BitCoin are provided "as is". NAC, its subsidiaries, affiliates, licensors and their shareholders, owners, partners, joint venturers, trustees, beneficiaries, directors, officers, employees, attorneys, consultants, and agents make no warranties of any kind, whether express, implied, statutory or otherwise regarding the AML Token Wallet, AML BitCoin Wallet, AML Token and AML BitCoin, including any warranty that the AML Token Wallet, AML BitCoin Wallet, AML Token and AML BitCoin will be uninterrupted, error-free or free of harmful components, secure or not otherwise lost or damaged. Except to the extent prohibited by law, NAC, its subsidiaries, affiliates, or licensors and their shareholders, owners, partners, joint venturers, trustees, beneficiaries, directors, officers, employees, attorneys, consultants, and agents disclaim all warranties, including any implied warranties of merchantability, satisfactory quality, fitness for a particular purpose, non- infringement, or quiet enjoyment, and any warranties arising out of any course of dealing or usage of trade.

44. To the fullest extent provided by applicable law, You shall indemnify, defend, and hold harmless NAC, its subsidiaries, affiliates, licensors and their shareholders, owners, partners, joint venturers, trustees, beneficiaries, directors, officers, employees, attorneys, consultants, and agents from and against any and all claims, demands, causes of action, debts or liabilities, including reasonable attorneys' fees (collectively, "Damages") to the extent that any such Damages are based upon or arise out of (a) a misrepresentation by You made in connection with Your purchase of AML BitCoins and/or AML Tokens or use of any NAC Website, or (b) Your violation of any law, statute, rule, or regulation of a nation or subdivision thereof having jurisdiction over You.

45. You shall reimburse NAC its subsidiaries, affiliates, licensors and their shareholders, owners, partners, joint venturers, trustees, beneficiaries, directors, officers, employees, attorneys, consultants, and agents, as the case may be, for all reasonable legal fees and expenses incurred in processing and responding to a subpoena, legal order or other legal process relating to You.

46. The permission or privilege to use the amlbitcoin.com website does not necessarily include a right to use any other NAC Website nor the right to an AML Token Wallet and an AML BitCoin Wallet. In order to use the amlbitcoin.com website or to acquire an AML BitCoin Wallet, You must be registered, having gone through and submitted to the required verification procedures.

47. NAC retains all right, title and interest in all of its intellectual property, including inventions, discoveries, processes, marks, methods, compositions, formulae, techniques, information, source code, brand names, graphics, user interface design, text, logos, copyrights, moral rights, images, information and data pertaining to the NAC Websites, AML Token Wallets, AML BitCoin Wallets, AML Tokens, and AML BitCoins or that of NAC's subsidiaries and/or affiliates (hereinafter "NAC's IP") whether or not patentable, copyrightable or protectable in trademark, and any trademarks, copyrights or patents based thereon. You may not use any

of NAC's IP for any reason, except with its prior express written consent. You will not modify, publish, transmit, reverse engineer, participate in the transfer or sale, create derivative works, or in any way exploit any of NAC's IP, in whole or in part, found on the NAC Websites or associated products and services, or otherwise. NAC's IP is not for resale. Your use of the NAC's IP does not entitle You to make any unauthorized use of any NAC's IP, and in particular You will not delete or alter any proprietary rights or attribution notices in any NAC's IP. You will use NAC's IP solely for Your personal use, and will make no other use of NAC's IP without the express written permission of NAC and the copyright, trademark, tradename, and/or patent owner. You agree that You do not acquire any ownership rights in any NAC's IP. We do not grant You any licenses, express or implied, to the intellectual property of NAC except as expressly authorized by these Terms Conditions.

48. You have no claim of ownership or in any of NAC's IP, including, but not limited to, any NAC Website, the AML Tokens, AML BitCoins, AML Token Wallet, AML BitCoin Wallet, or any other of NAC's IP or that of NAC's affiliates, subsidiaries, and/or licensors, and you shall not assert, claim or file any allegation that you own any copyright, trademark, tradename, and/or patent in any NAC Website, the AML Tokens, AML BitCoins, AML Token Wallet, AML BitCoin Wallet, or any other of NAC's IP or that of NAC's affiliates, subsidiaries, and/or licensors. You shall never file any action, lawsuit or arbitration in any forum asserting a claim of infringement against NAC, its subsidiaries, affiliates, or licensors and their shareholders, owners, partners, joint venturers, trustees, beneficiaries, directors, officers, employees, attorneys, consultants, and agents, as to any of NAC's IP, including, but not limited to, any NAC Website, the AML Tokens, AML BitCoins, AML Token Wallet and AML BitCoin Wallet.

49. None of the Terms and Conditions herein shall be deemed waived unless a waiver is in writing and signed by NAC, and in no event, shall there be a waiver solely by reason of a failure to assert or delay in asserting a term or condition.

50. In the event any one or more of these Terms and Conditions, or part thereof, is declared to be void or otherwise unenforceable, the remainder of such term and condition and of these Terms and Conditions shall survive and be deemed modified or amended so as to fulfill the intent of these Terms and Conditions and comply with any applicable law or order of a court.

51. To give notice to NAC under these Terms and Conditions, You must contact NAC by email to Legal@amlbitcoin.com.

52. All communications to be made or given pursuant to these Terms and Conditions shall be in the English language.

53. **Ownership of AML Tokens and AML BitCoins by Non-Natural Persons; Non-Transferability and Non-Assignability** As stated above, in order to obtain an AML BitCoin Wallet and to purchase, sell, hold, exchange, and use AML BitCoins, You must obtain a certified digital identity profile, and this process requires a biometric scan of one or more of an individual's face, iris, retina, and fingerprint. Accordingly, only an individual can obtain an AML BitCoin Wallet. While the AML BitCoins and AML Tokens can be held in the name of an entity, such as a corporation,

limited liability company, partnership or trust, the owner of the AML BitCoin Wallet must be and can only be an individual associated with that entity. Accordingly, an AML BitCoin Wallet cannot be transferred or assigned, unless an individual associated with the transferee independently obtains a certified digital identity profile in accordance with the process that creates a biometric scan of one or more of such individual's face, iris, retina, and fingerprint and complies with all other procedures to obtain an AML BitCoin Wallet.

54. **Changes to these Terms and Conditions.** NAC reserves the right, at its sole discretion, to modify, change, alter or amend any of these Terms and Conditions from time to time and at any time. Notification of such changes, alterations, modifications or amendments, shall be made via the NAC Website(s) or via email to You (at the email address You provided previously). You shall be responsible for reviewing and shall be bound by such changes, alterations, modifications or amendments to these Terms and Conditions. Your continued use of the NAC Website after the posting or notice by email of such changes, alterations, modifications or amendments shall be deemed Your acceptance and agreement to such changes, alterations, modifications or amendments.

55. **Applicable Law, Jurisdiction and Venue.** These Terms and Conditions, including the representations, warranties, covenants, limitations on liability, and indemnities, contained therein as well as any other written or oral agreements between You and NAC, and any and all claims between the Parties, including their agents, representatives, employees, affiliated entities, trustees, conservators, successors and assigns, related to or arising from these Terms and Conditions, said agreements, whether in contract or tort, and seeking damages or equitable remedies, shall be governed, construed and enforced in accordance with the laws of the State of Nevada, USA and applicable federal law of the United States, without giving effect to Nevada's or the United States' conflicts of laws principles. You agree that only federal courts, state courts, and arbitration forums located in the State of Nevada, United States of America shall have jurisdiction to determine and adjudicate any such matters or disputes, and You agree that such courts shall have jurisdiction over You as well as Your agents, representatives, employees, affiliated entities, trustees, conservators, successors and assigns, and You, and on behalf of each of Your agents, representatives, employees, affiliated entities, trustees, conservators, successors and assigns, waive any objection that such courts or arbitration forums do not have personal jurisdiction over You and them. You agree that venue for the determination or adjudication of any and all matters in controversy or disputes between the Parties, and each of their agents, representatives, employees, affiliated entities, trustees, conservators, successors and assigns, shall be solely and exclusively in Clark County, Nevada, United States of America, and You agree that such venue is intended to be mandatory and not permissive. You agree, on behalf of Yourself and each of Your agents, representatives, employees, affiliated entities, trustees, conservators, successors and assigns, that You and they waive any objection that venue in Clark County, Nevada, United States of America is an inconvenient forum.

56. **Important Warning Concerning Activity in Prohibited Locations** Persons located in certain territories, currently including countries subject to sanctions imposed by laws or regulations of the United States or any governmental agency, department or office of the United States (such as the Office of Foreign Assets Control within the U.S. Department of the Treasury), or executive orders of the President of the United States, or treaties to which the United States is a party, or otherwise imposed by other organizations, such as the United Nations, European Union, any European Union country, the United Kingdom's Department of Treasury, or any other sanctions list recognized and enforced by the United States, such as, without limitation and solely by way of example, the Democratic People's Republic of North Korea and its territories, Iran, and Iraq, are not permitted to purchase, sell, exchange, transfer, use or mine AML BitCoins and/or AML Tokens, and/or use the AML BitCoin Wallet, AML Token Wallet and/or an NAC Website. This restriction applies to residents and citizens of other nations while located in a prohibited jurisdiction. The fact that the NAC Website may be accessible in a prohibited jurisdiction, or that the NAC Website allows the use of the official language of a prohibited jurisdiction, shall not be construed as a license to use purchase, sell, exchange, transfer, use or mine AML BitCoins and/or AML Tokens, and/or use the AML BitCoin Wallet, AML Token Wallet and/or an NAC Website in such prohibited jurisdiction.  Any attempt to circumvent this restriction, for example, by using a "vpn", proxy or similar service that masks or manipulates the identification of Your true location, or by otherwise providing false or misleading information regarding citizenship, location, place of residence, or by using the NAC Website through a third party or on behalf of a third party located in a prohibited jurisdiction is a breach of these Terms and Conditions. If NAC has reasonable grounds to suspect that You are located in any of the prohibited jurisdictions, NAC may, without notice, and in accordance with applicable laws, close Your account, deactivate Your AML BitCoin Wallet, and refuse to process, and may rescind, cancel or reverse, any purchase or sale of AML BitCoins and/or AML Tokens.

57. **Arbitration and Dispute Resolution; Class Action Waiver**

    1. Except as to claims for injunctive relief requiring immediate restraining orders, all disputes, controversies or claims between You and NAC, its subsidiaries, affiliates, or licensors and their shareholders, owners, partners, joint venturers, trustees, beneficiaries, directors, officers, employees, attorneys, consultants, and agents arising out of or relating to these Terms and Conditions, the purchase, sale or exchange of AML Tokens or AML BitCoins, the NAC Websites, Your relationship with NAC, its subsidiaries, affiliates, or licensors and their shareholders, owners, partners, joint venturers, trustees, beneficiaries, directors, officers, employees, attorneys, consultants, and agents, or as to any other matter between You and NAC, its subsidiaries, affiliates, or licensors and their shareholders, owners, partners, joint venturers, trustees, beneficiaries, directors, officers, employees, attorneys, consultants, and agents, including concerning the interpretation of these Terms and

Conditions, or any agreement between You and NAC, whether for breach of contract, for a tort, or otherwise, shall be resolved and adjudicated by binding arbitration before ADR Services, Inc. (if available in the venue for adjudication of disputes or before JAMS, Inc. if ADR Services, Inc. is not available in such venue, or if neither is available in the venue for adjudication, then before the American Arbitration Association) and shall be conducted in accordance with the commercial arbitration rules of the such arbitration forum, except as otherwise provided herein. The arbitration shall be conducted in Clark County, Nevada, United States of America. The arbitration shall be conducted by a single arbitrator. The arbitration shall be conducted in the English language and all documents filed, notices, claims responses, counter-claims, counter-responses, briefs, or other papers shall be in the English language. All evidentiary documents in a language other than English shall be translated into the English language and shall be translated by a person certified and authorized under the laws of the State of Nevada.  The arbitrator shall be selected in accordance with the rules of the selected arbitration organization.

2. The arbitration is to be expedited. The arbitration shall be commenced by a demand for arbitration.  If a party fails to respond to the demand to arbitrate within ten (10) business days, the aggrieved party may apply ex parte to the Court in Clark County, Nevada, United States of America for an order to arbitrate, unless the rules of the arbitration forum do not require such an order.  An arbitration award may be enforced by applying to a court in Clark County, Nevada, United States of America. The law the State of Nevada shall be applied in any arbitration proceedings, without regard to that jurisdiction's choice-of-law principles and rules. The parties shall not be entitled to discovery in the arbitration and the arbitrator shall have no authority to order any party to submit to discovery with the exception that the Arbitrator may request the parties or their agents to produce such documents as are pertinent and relevant to the dispute. The arbitrator shall have no authority to award punitive, consequential, special, or indirect damages.  The cost of the arbitration proceeding and any proceeding in court to confirm or to vacate any arbitration award, as applicable (including, without limitation, reasonable attorneys' fees and costs) shall be borne by the unsuccessful party, as determined by the arbitrator, and shall be awarded as part of the arbitrator's award.  The arbitration shall be binding.

3. In the event that the arbitration includes or would include the adjudication of facts, law or claims common to parties not bound by an arbitration provision such that adjudication in the arbitration may result in inconsistent and/or conflicting findings, rulings or orders, or if such adjudication is based on transactions or series of transactions that involve parties who would not be bound by this arbitration provision, the parties hereto agree that the dispute will be adjudicated in a court in the jurisdiction and venue provided elsewhere in these Terms and Conditions, unless such

parties agree to participate in the arbitration, so that all necessary parties can be joined to avoid inconsistent and/or conflicting findings, rulings or orders.

4. Prior to initiating an arbitration proceeding, the parties shall make a good faith attempt to resolve the dispute through mediation by providing written notice to the other party of a demand for mediation and the responding party shall have ten (10) business days to respond in writing. No party shall be entitled to recover any fees or costs in arbitration if they have failed to mediate in good faith.  The mediator will be selected from the same alternative dispute provider specified above, unless the parties agree in writing to a different mediator.

5. If the provisions for arbitration in these Terms and Conditions are, for any reason, invalidated or deemed unenforceable, then the dispute shall be adjudicated in a federal or state court located in Clark County, Nevada, USA. This includes any dispute concerning the AML Tokens, AML BitCoins, NAC Websites, these Terms and Conditions, any agreement between You and NAC, its subsidiaries, affiliates, or licensors and their shareholders, owners, partners, joint venturers, trustees, beneficiaries, directors, officers, employees, attorneys, consultants, and agents, or any other aspect of the relationship between You and NAC, its subsidiaries, affiliates, or licensors and their shareholders, owners, partners, joint venturers, trustees, beneficiaries, directors, officers, employees, attorneys, consultants, and agents. You agree that the forum selection clause contained herein is mandatory and not permissive and You agree not to object to adjudication in Clark County, Nevada on grounds of forum non-conveniens.

6. Waiver of Trial by Jury. THE PARTIES UNDERSTAND AND FULLY AGREE THAT BY AGREEING TO THESE TERMS AND CONDITIONS TO ARBITRATE THEY ARE GIVING UP THEIR CONSTITUTIONAL RIGHT TO HAVE A TRIAL BY JURY, AND ARE GIVING UP THEIR NORMAL RIGHTS OF APPEAL FOLLOWING THE RENDERING OF A DECISION, EXCEPT AS THE FEDERAL ARBITRATION ACT AND APPLICABLE FEDERAL LAW PROVIDE FOR JUDICIAL REVIEW OF ARBITRATION PROCEEDINGS.

7. You HEREBY AGREE to WAIVE YOUR RIGHT TO PARTICIPATE IN A CLASS ACTION LAWSUIT OR CLASS-WIDE ARBITRATION. Any dispute resolution proceedings will be conducted only on an individual basis and not in a class, consolidated or representative action. If for any reason a claim proceeds in court rather than in arbitration, we each waive any right to a jury trial. If a court or federal regulator with oversight over NAC determines that applicable law precludes enforcement of any of this section's limitations as to a particular claim for relief, then that claim (and only that claim) must be severed from the arbitration and may be brought in court, subject to Your and NAC's right to appeal the court's decision.

58. You acknowledge the following risks and You accept them:

1. Digital coins and tokens, such as AML Tokens and AML BitCoin, blockchain technology, and other associated and related technologies are new and relatively untested and to a degree are outside of NAC's exclusive control.  Moreover, in some jurisdictions the AML Token and AML BitCoin or other digital coins or cryptocurrencies may be considered to be a security, or in the future, may be determined to be a security. NAC makes no warranties or guarantees that the AML Token and AML BitCoin are not a security in all jurisdictions. Regulatory bodies around the world are in the process of forming their opinions as to the purchase, sale, and use of digital coins and cryptocurrencies and laws concerning them are being considered in various jurisdictions throughout the world; the process of developing such laws is currently fluid and the laws are not uniform.  Likewise, blockchain technologies have been the subject of scrutiny by various governments and regulatory bodies throughout the world.  Furthermore, exchanges which enable the exchange of digital coins and cryptocurrencies with other such digital coins or cryptocurrencies or the exchange of such for fiat money, if any, might be subject to regulatory oversight, and such exchanges are currently the subject of reviews by governments and regulatory bodies; and governments and regulatory bodies are currently enacting laws and regulations permitting, prohibiting and regulating such exchanges. Laws and regulations could be enacted that could impede or limit the ability to purchase, sell, exchange, transfer, use or mine AML BitCoins and/or AML Tokens, and/or use the AML BitCoin Wallet, the AML Token Wallet and/or an NAC Website, and accordingly, the value of the AML BitCoin or AML Token could be diminished as a result.  You shall bear the legal or financial consequences of AML Token and AML BitCoin being considered a security in Your respective jurisdiction. NAC makes no representation or warranty of any kind as to the legality of purchasing, selling, exchanging, transferring, using or mining AML BitCoins and/or AML Tokens, and/or using the AML BitCoin Wallet, AML Token Wallet and/or an NAC Website in Your jurisdiction, and by accepting these Terms and Conditions, You agree that You will not purchase, sell, exchange, transfer, use or mine AML BitCoins and/or AML Tokens, and use the AML BitCoin Wallet, AML Token Wallet and/or an NAC Website in a jurisdiction which prohibits same.

2. Hackers or other groups or organizations may attempt to interfere with Your AML Token Wallet, Your AML BitCoin Wallet, the NAC Websites or the availability of AML Tokens or AML BitCoins in any number of ways, including without limitation denial of service attacks, Sybil attacks, spoofing, smurfing, malware attacks, or consensus-based attacks.

3. There is a risk that the NAC Websites and AML Token and AML BitCoin may unintentionally include weaknesses or bugs in the source code interfering with the use of or causing the loss of AML Token and AML BitCoin.

4. Advances in cryptography, or technical advances such as the development of quantum computers, could present risks to cryptocurrencies, which could result in the theft or loss of or loss of use of AML Tokens, AML BitCoins, Your AML Token Wallet and/or Your AML BitCoin Wallet.

5. As with other decentralized cryptocurrencies, the blockchain is susceptible to mining attacks, including but not limited to double-spend attacks, majority mining power attacks, "selfish-mining" attacks, and race condition attacks. Any successful attacks present a risk to the expected proper execution and/or sequencing of digital coins. Despite the best efforts of NAC, the risk of unknown or novel mining attacks exists. Mining attacks, as described above, may also target other blockchain networks, with which the AML Token and AML BitCoin may interact with and consequently the AML Token and AML BitCoin may be impacted as a result thereof.

6. While there are currently online services available which enable the possibility of exchange of digital coins and cryptographic coins with other such coins or the exchange of digital coins and cryptographic coins for fiat money, and particularly the exchange of AML Tokens and AML BitCoins on such exchanges, NAC makes no warranties and/or guarantees that AML Token and AML BitCoin will be listed or made available for exchange with other digital coins and cryptographic coins and/or fiat money in the future, and no warranties or guarantees are given whatsoever with respect to the capacity (volume) of such potential exchanges or the demand for AML BitCoins or AML Tokens in the future. Accordingly, NAC does not give any warranties or guarantees regarding any exchange services providers. Furthermore, You may be exposed to fraud and/or failures concerning such exchanges.

7. The value of AML Token and AML BitCoin may fluctuate and You may suffer loss in value of the AML Tokens or AML BitCoins that You purchase and own.

8. AML Token and AML BitCoin are unlike bank accounts or accounts at some other financial institutions, which may be insured by such organizations as the Federal Deposit Insurance Corporation, and therefore are entirely uninsured. NAC does not offer any indemnity in case of any losses in relation to AML Token and AML BitCoin. You assume all risks regarding a loss of Your AML BitCoins or AML Tokens.

9. You acknowledge that, given that the transmission of AML Tokens and AML BitCoins is entirely dependent on the use of computers, computer software, and Internet connections, malfunctions, delays, failures, disruptions, errors, or distortions may be experienced, and You accept all risks associated therewith and agree that NAC shall have no liability for such malfunctions, delays, failures, disruptions, errors, or distortions.

## C. Safe Harbor Statement/Agreement

NAC Foundation, LLC ("NAC"), a limited liability company organized and existing under the laws of the State of Nevada with its principal place of business and infrastructure in Las Vegas, Nevada, processes information obtained through the registration and validation process for securing an AML Token Wallet and AML BitCoin Wallet, and through the amlbitcoin.com, amltoken.com.com and amlbitcoinwallet.com websites in the United States of America. By registering for an AML BitCoin Wallet and purchasing, selling, exchanging, transferring, using or mining AML BitCoins and/or AML Tokens, and by using the AML Token Wallet and/or AML BitCoin Wallet, a user consents to permit NAC to process and his or her information.

## KYC/AML

NAC prides itself on the integrity and transparency of its business. Resting on a privately-regulated public blockchain, NAC has introduced a personal legal identity-linked credential authentication protocol into the source code of AML BitCoin that permits tracing and tracking of the identities of senders and receivers of the coin when activity with the use of the AML BitCoin indicates suspicious activities in violation of AML laws. AML BitCoin transactions and their associated IP locations of senders and receivers will be monitored and analyzed in United States with monitoring and detecting software that allows NAC to identify suspicious activities. Records of such transactions will be maintained by NAC for six-years (or such other period of time required under applicable law). Suspicious activities associated with AML BitCoin transactions together with personal information and IP locations of corresponding senders and receivers may, in NAC's sole judgment, be reported to relevant government entities. In the event NAC receives or possesses information that would lead to a suspicion that a transaction in AML BitCoins is violating or is about to violate or facilitate a violation of money laundering, anti-terrorist financing, or anti-fraud laws a violation of a validly issued court order or other valid governmental order, NAC may refuse to process, or may rescind, cancel or reverse, any purchase, sell, exchange, transfer, use or mine with and of AML BitCoins and/or AML Tokens, and freeze the associated AML BitCoin Wallet.

The purchase, sale, exchange, transfer, use or mining of AML BitCoins and/or AML Tokens and/or use of the AML Token Wallet and/or AML BitCoin Wallet involves a degree of relinquishment privacy relating to NAC's monitoring and reporting of transactions as stated above.

To obtain an AML BitCoin Wallet and to purchase, sell, exchange, hold, mine and use AML Tokens and AML BitCoins, a user must complete, obtain, and comply with the procedures for and to obtain a certified digital identity profile, which includes a biometric scan of one of more of the face iris, retina, and fingerprint, and documents and information such as passport, driver's license, address, social security number, email address, and bank account information. While at this time, NAC intends to use and rely upon the Digital Identity Trust Network to administer and process the

certified digital identity profile, in the future, NAC may rely upon an alternative vendor for the creation, administration and processing of certified digital identity profiles by means of biometric scans.

Users located in certain territories, currently including countries subject to sanctions imposed by laws or regulations of the United States or any governmental agency, department or office of the United States (such as the Office of Foreign Assets Control within the U.S. Department of the Treasury), or executive orders of the President of the United States, or treaties to which the United States is a party, or otherwise imposed by other organizations, such as the United Nations, European Union, any European Union country, the United Kingdom's Department of Treasury, or any other sanctions list recognized and enforced by the United States, such as, without limitation and solely by way of example, the Democratic People's Republic of North Korea and its territories, Iran, and Iraq, are not permitted to purchase, sell, exchange, transfer, use or mine AML BitCoins and/or AML Tokens, and/or use the AML Token Wallet, AML BitCoin Wallet and/or an NAC Website. This restriction applies to residents and citizens of other nations while located in a prohibited jurisdiction. The fact that the NAC Website may be accessible in a prohibited jurisdiction, or that the NAC Website allows the use of the official language of a prohibited jurisdiction, shall not be construed as a license to use purchase, sell, exchange, transfer, use or mine AML BitCoins and/or AML Tokens, and/or use the AML BitCoin Wallet, AML Token Wallet and/or an NAC Website in such prohibited jurisdiction. If NAC suspects that a user is located in a prohibited jurisdiction, NAC may, without notice, and in accordance with applicable laws, close, suspend and/or deactivate an AML BitCoin Wallet, and/or refuse to process, rescind, and/or deactivate an AML BitCoin Wallet, and/or refuse to process, rescind, cancel or reverse, any purchase, sale, use, exchange and/or mine or any other transaction or use of and/or by and/or with AML BitCoins and/or AML Tokens.

Forward-Looking Statements: Statements, other than statements of historical facts, included in NAC's white paper, public statements, press releases, marketing, and/or advertising materials address activities, events or developments that the NAC anticipates will or may occur in the future. These forward-looking statements include such things as regulatory compliance, computer security, the anticipated use of AML BitCoin and/or AML Token or other similar matters. These statements are based on certain assumptions and analyses made by NAC in light of its experience and perception of historical trends, current conditions and expected future developments. However, the actual results of the plan for AML BitCoin Tokens and AML BitCoins might not conform with NAC's expectations due to a number of risks and uncertainties, many of which are beyond NAC's control, including, cybersecurity matters, changes in laws or regulations, secondary market conditions and other risks. Thus, all of the forward-looking statements made in NAC's white paper, public statements, press releases, marketing, and/or advertising materials are qualified by these cautionary statements. There can be no assurance that actual results will conform to NAC's.

### The Distribution of AML Tokens to AML Wallet Addresses

Once users upload AML Wallet Addresses to the Token Sale platform in their account profile page, users are signifying that their AML Wallet Address is correct and that purchased AML Tokens are to be sent to the AML Wallet Address listed. If the AML Wallet Address changes for any reason including AML Wallets being accidentally deleted, etc., it is the responsibility of users to delete the incorrect AML Wallet Address and add the correct AML Wallet Address to their Token Sale account profile page as soon as possible.

It is the responsibility of users to ensure that the correct AML Wallet Address is listed in their Token Sale account profile page.

When the NAC Foundation distributes AML Tokens from the Token Sale platform to a user's AML Wallet Address and if it turns out that the user deleted the wallet, created another wallet, and forgot to upload the new wallet address to the platform, or a different circumstance in which the incorrect AML Wallet Address was not listed in the platform, then the user's tokens will be lost and the NAC Foundation bears no responsibility.

The above is the reason that the NAC Foundation highly recommends that all users create a wallet backup. In the event that users accidentally delete their wallet or open up a new wallet and do not update the platform with a new AML Wallet Address, users can still recover the coins sent to their old AML Wallet Address, if the wallet backup was kept.

### Other Risks

The purchase of AML Tokens and AML BitCoins involves a high degree of speculation.

Digital coins and tokens, such as AML Tokens and AML BitCoin, blockchain technology, and other associated and related technologies are new and relatively untested and to a degree are outside of NAC's exclusive control. Moreover, in some jurisdictions the AML Token and AML BitCoin or other digital coins or cryptocurrencies may be considered to be a security, or in the future, may be determined to be a security. NAC makes no warranties or guarantees that the AML Token and AML BitCoin are not a security in all jurisdictions. Regulatory bodies around the world, are in the process of forming their opinions as to the purchase, sale, and use of digital coins and cryptocurrencies and laws concerning them are being considered in various jurisdictions throughout the world; the process of developing such laws is currently fluid and the laws are not uniform. Likewise, blockchain technologies have been the subject of scrutiny by various

governments and regulatory bodies throughout the world. Furthermore, exchanges which enable the exchange of digital coins or cryptocurrencies with other such digital coins or cryptocurrencies and/or the exchange of such for fiat money, if any, might be subject to regulatory oversight, and such exchanges are currently the subject of reviews by governments and regulatory bodies; and governments and regulatory bodies are currently enacting laws and regulations permitting, prohibiting and regulating such exchanges. Laws and regulations could be enacted that could impede or limit the ability to purchase, sell, exchange, transfer, use or mine AML BitCoins and/or AML Tokens, and/or use the AML BitCoin Wallet, AML Token Wallet and/or an NAC Website, and accordingly, the value of the AML BitCoin or AML Token could be diminished. NAC makes no representation or warranty of any kind as to the legality of purchasing, selling, exchanging, transferring, using or mining AML BitCoins and/or AML Tokens, and/or using the AML BitCoin Wallet, AML Token Wallet and/or an NAC Website in a particular user's jurisdiction.

Hackers or other groups or organizations may attempt to interfere with an AML Token Wallet, an AML BitCoin Wallet, an NAC Website or the availability of AML Tokens or AML BitCoins in any number of ways, including without limitation, by denial-of-service attacks, Sybil attacks, spoofing, smurfing, malware attacks, and/or consensus-based attacks.

There is a risk that an NAC Website and AML Token and AML BitCoin may unintentionally include weaknesses or bugs in the source code interfering with the use of or causing the loss of AML Token and AML BitCoin.

Advances in cryptography, or technical advances such as the development of quantum computers, could present risks to digital coins and cryptocurrencies, which could result in the theft or loss of or loss of use of AML Tokens, AML BitCoins, AML Token Wallet and/or an AML BitCoin Wallet.

As with other decentralized cryptocurrencies, the blockchain is susceptible to mining attacks, including but not limited to double-spend attacks, majority mining power attacks, "selfish-mining" attacks, and race condition attacks. Any successful attacks present a risk to the expected proper execution and/or sequencing of digital coins.  Despite the best efforts of NAC, the risk of unknown or novel mining attacks exists. Mining attacks, as described above, may also target other blockchain networks with which the AML Token and AML BitCoin may interact, and consequently AML Tokens and AML BitCoins may be impacted as a result thereof.

While there are currently online services available which enable the possibility of exchange of digital coins and cryptographic coins with other such coins or the exchange of digital coins and cryptographic coins for fiat money, and particularly the exchange of AML Tokens and AML BitCoins on such exchanges, NAC makes no warranties and/or guarantees that AML Token and AML BitCoin will be listed or made available for exchange with other digital coins and cryptographic coins and/or fiat money in the future. Further, no warranties or guarantees are given whatsoever with

respect to the capacity (volume) of such potential exchanges or the demand for AML BitCoins or AML Tokens in the future. Accordingly, NAC does not give any warranties or guarantees regarding any exchange services providers.  Furthermore, a user may be exposed to fraud and/or failures concerning such exchanges.

The value of AML Token and/or AML BitCoin may fluctuate and a loss may be suffered in value of the AML Token and/or AML BitCoin.

AML Token and AML BitCoin are unlike bank accounts or accounts at some other financial institutions, which may be insured by such organizations as the Federal Deposit Insurance Corporation, and therefore are entirely uninsured. NAC does not offer any indemnity in case of any losses in relation to AML Token and AML BitCoin. The owner of AML Tokens and AML Bitcoins assumes the risk of loss.

The transmission of AML Tokens and AML BitCoins is entirely dependent on the use of computers, computer software, and Internet connections, malfunctions, delays, failures, disruptions, errors, or distortions may be experienced. NAC shall have no liability for such malfunctions, delays, failures, disruptions, errors, or distortions.

## NAC FOUNDATION, LLC'S REFUND POLICY

Although we do not provide refunds, where there are extenuating circumstances, NAC may make an exception and provide a refund. Generally, however, where exceptions are made they will be in instances where cryptocurrency was deposited on the platform to purchase AML Tokens, but conversion of the cryptocurrency to the AML Tokens did not occur. Using Etherium as an example, NAC would refund the full amount of the ETH deposited. Or, if there was a conversion of the cryptocurrency to purchase AML, and a balance of crypto exists after conversion, NAC can refund the balance of cryptocurrency.  All refunds will be in US dollars at the rate of exchange of the cryptocurrency on the date of the deposit of the cryptocurrency.

Special consideration may be given to reimburse in digital currency when digital currency was converted to the AML Token. To make a special request, one must submit a notarized statement to NAC stating why a refund is requested and acknowledge that the request for the special consideration will be reviewed after the ICO is completed.

Refund requests are only accepted 45 days after the date that tokens were purchased, or currency deposits were made into accounts, if currency deposits were not converted to tokens.

© Copyright 2014-2018 NAC Foundation All rights reserved.

Corporate Office : 7495 Azure Dr. Suite 110, Las Vegas, NV 89130

Phone: +1 702-515-4038 – Email: info@amlbitcoin.com

White Paper    |    Terms of Use    |    Data Privacy P