EXHIBIT 3

EXHIBIT 3





## SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SAN FRANCISCO

# Document Scanning Lead Sheet

Apr-10-2019 10:49 am

Case Number: CGC-19-575158

Filing Date: Apr-10-2019 10:46

Filed by:  SANDRA SCHIRO

Image: 06760943

COMPLAINT

BENJAMIN BOYER VS. JAPETH DILLMAN

001C06760943

**Instructions:**
Please place this sheet on top of the document to be scanned.

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

Japheth Dillman

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Benjamin Boyer, as Trustee of the Benjamin Boyer Trust and as Trustee
of the Boyer Family Trust

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO!* Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (*www.sucorte.ca.gov*), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (*www.lawhelpcalifornia.org*), en el Centro de Ayuda de las Cortes de California, (*www.sucorte.ca.gov*) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

The name and address of the court is:
*(El nombre y dirección de la corte es):*

CASE NUMBER:
*(Número del Caso):*
**CGC-19-575158**

Superior Court of California, County of San Francisco
400 McAllister Street, San Francisco, CA 94102

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Jonathan A. Patchen, One Ferry Building, Suite 355, San Francisco, CA 94111; (415) 788-8200

DATE: **APR 10 2019**    **CLERK OF THE COURT**    Clerk, by _____ , Deputy
*(Fecha)*    *(Secretario)*    *(Adjunto)*

**SANDRA L. SCHIRO**

(For proof of service of this summons, use Proof of Service of Summons *(form POS-010)*.)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. [✓] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*

3. [ ] on behalf of *(specify):*

under: [ ] CCP 416.10 (corporation)    [ ] CCP 416.60 (minor)
[ ] CCP 416.20 (defunct corporation)    [ ] CCP 416.70 (conservatee)
[ ] CCP 416.40 (association or partnership)    [ ] CCP 416.90 (authorized person)

[ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

ONE LEGAL LLC

PLD-C-001

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Jonathan A. Patchen (SBN 237346)<br>Taylor & Patchen, LLP<br>One Ferry Building, Suite 355<br>San Francisco, CA 94111 | |

TELEPHONE NO.: (415)788-8200    FAX NO. (Optional): (415)788-8208
E-MAIL ADDRESS (Optional): jpatchen@taylorpatchen.com
ATTORNEY FOR (Name): Benjamin Boyer, Trustee of Benjamin Boyer Trust & Boyer Family Trust

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS: 400 McAllister Street
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME:

**F I L E D**
San Francisco County Superior Court

APR 10 2019

CLERK OF THE COURT
BY: Sandra Solis
Deputy Clerk

PLAINTIFF: Benjamin Boyer, as Trustee of the Benjamin Boyer Trust and as Trustee of the Boyer Family Trust

DEFENDANT: Japheth Dillman

☐ DOES 1 TO _____

**CONTRACT**

☑ COMPLAINT    ☐ AMENDED COMPLAINT (Number):

☐ CROSS-COMPLAINT    ☐ AMENDED CROSS-COMPLAINT (Number):

Jurisdiction (check all that apply):
☐ ACTION IS A LIMITED CIVIL CASE
Amount demanded    ☐ does not exceed $10,000
☐ exceeds $10,000 but does not exceed $25,000
☑ ACTION IS AN UNLIMITED CIVIL CASE (exceeds $25,000)
☐ ACTION IS RECLASSIFIED by this amended complaint or cross-complaint
☐ from limited to unlimited
☐ from unlimited to limited

CASE NUMBER:

**CGC-19-575158**

1. **Plaintiff\*** (name or names):
   Benjamin Boyer, as Trustee of the Benjamin Boyer Trust and as Trustee of the Boyer Family Trust
   alleges causes of action against **defendant\*** (name or names):
   Japheth Dillman
2. This pleading, including attachments and exhibits, consists of the following number of pages: 52
3. a. Each plaintiff named above is a competent adult
      ☐ except plaintiff (name):
         (1) ☐ a corporation qualified to do business in California
         (2) ☐ an unincorporated entity (describe):
         (3) ☐ other (specify):

   b. ☐ Plaintiff (name):
      a. ☐ has complied with the fictitious business name laws and is doing business under the fictitious name (specify):

      b. ☐ has complied with all licensing requirements as a licensed (specify):
   c. ☐ Information about additional plaintiffs who are not competent adults is shown in Attachment 3c.
4. a. Each defendant named above is a natural person
      ☐ except defendant (name):                    ☐ except defendant (name):
         (1) ☐ a business organization, form unknown    (1) ☐ a business organization, form unknown
         (2) ☐ a corporation                            (2) ☐ a corporation
         (3) ☐ an unincorporated entity (describe):     (3) ☐ an unincorporated entity (describe):

         (4) ☐ a public entity (describe):              (4) ☐ a public entity (describe):

         (5) ☐ other (specify):                         (5) ☐ other (specify):

\* If this form is used as a cross-complaint, plaintiff means cross-complainant and defendant means cross-defendant

Page 1 of 2

Form Approved for Optional Use
Judicial Council of California
PLD-C-001 [Rev. January 1, 2007]

**COMPLAINT—Contract**

Code of Civil Procedure, § 425.12

BY FAX
ONE LEGAL LLC


PLD-C-001

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Boyer v. Dillman | |

4.  *(Continued)*

    b. The true names of defendants sued as Does are unknown to plaintiff.

       (1) ☐ Doe defendants *(specify Doe numbers):* _____ were the agents or employees of the named defendants and acted within the scope of that agency or employment.

       (2) ☐ Doe defendants *(specify Doe numbers):* _____ are persons whose capacities are unknown to plaintiff.

    c. ☐ Information about additional defendants who are not natural persons is contained in Attachment 4c.

    d. ☐ Defendants who are joined under Code of Civil Procedure section 382 are *(names):*

5. ☐ Plaintiff is required to comply with a claims statute, **and**

    a. ☐ has complied with applicable claims statutes, *or*

    b. ☐ is excused from complying because *(specify):*

6. ☐ This action is subject to ☐ Civil Code section 1812.10 ☐ Civil Code section 2984.4.

7. This court is the proper court because

    a. ☐ a defendant entered into the contract here.

    b. ☑ a defendant lived here when the contract was entered into.

    c. ☑ a defendant lives here now.

    d. ☐ the contract was to be performed here.

    e. ☐ a defendant is a corporation or unincorporated association and its principal place of business is here.

    f. ☐ real property that is the subject of this action is located here.

    g. ☐ other *(specify):*

8. The following causes of action are attached and the statements above apply to each *(each complaint must have one or more causes of action attached):*

    ☑ Breach of Contract

    ☐ Common Counts

    ☐ Other *(specify):*

9. ☐ Other allegations:

10. **Plaintiff prays** for judgment for costs of suit; for such relief as is fair, just, and equitable; and for

    a. ☑ damages of: $ 3,078,787.06

    b. ☑ interest on the damages

       (1) ☐ according to proof

       (2) ☑ at the rate of *(specify):*   5   percent per year from *(date):* April 9, 2019

    c. ☐ attorney's fees

       (1) ☐ of: $

       (2) ☐ according to proof.

    d. ☐ other *(specify):*

11. ☐ The paragraphs of this pleading alleged on information and belief are as follows *(specify paragraph numbers):*

Date: April 9, 2019

Jonathan A. Patchen

_____
(TYPE OR PRINT NAME)

▶ _Jonathan A. Patchen / YH_
(SIGNATURE OF PLAINTIFF OR ATTORNEY)

*(If you wish to verify this pleading, affix a verification.)*

PLD-C-001(1)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Boyer v. Dillman | |

FIRST _____  **CAUSE OF ACTION—Breach of Contract**
<span>(number)</span>

ATTACHMENT TO  ☑ Complaint  ☐ Cross - Complaint

*(Use a separate cause of action form for each cause of action.)*

BC-1. Plaintiff *(name):*  Benjamin Boyer, Trustee of Benjamin Boyer Trust & Boyer Family Trust

alleges that on or about *(date):*  December 13, 2018

a ☑ written  ☐ oral  ☐ other *(specify):*

agreement was made between *(name parties to agreement):*
Benjamin Boyer, as Trustee of the Benjamin Boyer Trust, and Japheth Dillman

☐ A copy of the agreement is attached as Exhibit A, or

☑ The essential terms of the agreement  ☐ are stated in Attachment BC-1  ☑ are as follows *(specify):*

Under the Asset Purchase Agreement attached as Exhibit A, Defendant agreed to pay $228,369 to the Benjamin Boyer Trust as consideration for 228,369 AML Bitcoin tokens. Mr. Boyer delivered all 228,369 tokens to Defendant, but Defendant failed to render payment by the agreed-upon "Closing Date" of December 31, 2018. An addendum, attached as Ex. C, granted Defendant more time to pay the amount outstanding in exchange for additional consideration.

BC-2. On or about *(dates):*  April 8, 2019

defendant breached the agreement by  ☐ the acts specified in Attachment BC-2  ☑ the following acts *(specify):*

Defendant failed to transfer, as required under the agreement and addendum attached hereto, respectively, as Exhibits A and C, a payment amount of $243,684.78 to the Benjamin Boyer Trust's bank account by April 8, 2019.

BC-3. Plaintiff has performed all obligations to defendant except those obligations plaintiff was prevented or excused from performing.

BC-4. Plaintiff suffered damages legally (proximately) caused by defendant's breach of the agreement
☐ as stated in Attachment BC-4  ☑ as follows *(specify):*

Monetary damages in the amount of $243,684.78.

BC-5. ☐  Plaintiff is entitled to attorney fees by an agreement or a statute

☐ of $

☐ according to proof.

BC-6. ☐  Other:

Page ___3___

Page 1 of 1

**CAUSE OF ACTION—Breach of Contract**

PLD-C-001(1)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Boyer v. Dillman | |

<u>SECOND</u>      **CAUSE OF ACTION—Breach of Contract**
*(number)*

ATTACHMENT TO   ☑ Complaint   ☐ Cross - Complaint

*(Use a separate cause of action form for each cause of action.)*

BC-1. Plaintiff *(name):* Benjamin Boyer, Trustee of Benjamin Boyer Trust & Boyer Family Trust

alleges that on or about *(date):* December 13, 2018

a ☑ written   ☐ oral   ☐ other *(specify):*

agreement was made between *(name parties to agreement):*
Benjamin Boyer, as Trustee of the Benjamin Boyer Trust, and Japheth Dillman

☐ A copy of the agreement is attached as Exhibit A, or
☑ The essential terms of the agreement   ☐ are stated in Attachment BC-1   ☑ are as follows *(specify):*

Under the Asset Purchase Agreement attached as Exhibit B, Defendant agreed to pay $150,000 to the Benjamin Boyer Trust as consideration for 100,000 AML tokens. Mr. Boyer delivered all 100,000 AML tokens to Defendant, but Defendant failed to render payment by the agreed-upon "Closing Date" of December 31, 2018. An addendum, attached as Exhibit C, granted Defendant more time to pay the amount outstanding in exchange for additional consideration.

BC-2. On or about *(dates):* April 8, 2019
defendant breached the agreement by   ☐ the acts specified in Attachment BC-2   ☑ the following acts *(specify):*

Defendant failed to transfer, as required under the agreement and addendum attached hereto, respectively, as Exhibits B and C, a payment amount of $ 164,263.70 to the Benjamin Boyer Trust's bank account by April 8, 2019.

BC-3. Plaintiff has performed all obligations to defendant except those obligations plaintiff was prevented or excused from performing.

BC-4. Plaintiff suffered damages legally (proximately) caused by defendant's breach of the agreement
☐ as stated in Attachment BC-4   ☑ as follows *(specify):*
Monetary damages in the amount of $164,263.70

BC-5. ☐ Plaintiff is entitled to attorney fees by an agreement or a statute
☐ of $
☐ according to proof.

BC-6. ☐ Other:

Page _____ 4

Page 1 of 1

Form Approved for Optional Use
Judicial Council of California
PLD-C-001(1) [Rev. January 1, 2007]     **CAUSE OF ACTION—Breach of Contract**     Code of Civil Procedure, § 425.12
www.courtinfo.ca.gov



**PLD-C-001(1)**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Boyer v. Dillman | |

<u>THIRD</u>       **CAUSE OF ACTION—Breach of Contract**
*(number)*

ATTACHMENT TO   [✓] Complaint   [ ] Cross - Complaint
*(Use a separate cause of action form for each cause of action.)*

BC-1.  Plaintiff *(name):*  Benjamin Boyer, Trustee of Benjamin Boyer Trust & Boyer Family Trust

alleges that on or about *(date):*  December 13, 2018
a [✓] written  [ ] oral  [ ] other *(specify):*
agreement was made between *(name parties to agreement):*
Benjamin Boyer, as Trustee of the Boyer Family Trust, and Japheth Dillman
[ ] A copy of the agreement is attached as Exhibit A, or
[✓] The essential terms of the agreement  [ ] are stated in Attachment BC-1  [✓] are as follows *(specify):*

Under the Asset Purchase Agreement attached as Exhibit D, Defendant agreed to pay
$1,486,283 to the Boyer Family Trust as consideration for 1,486,283 AML tokens.  Mr. Boyer
delivered all 1,486,283 tokens to Defendant, but Defendant failed to render payment by the
agreed-upon "Closing Date" of December 31, 2018.  An addendum, attached as Ex. F, granted
Defendant more time to pay the amount outstanding in exchange for additional consideration.

BC-2.  On or about *(dates):*  April 8, 2019
defendant breached the agreement by  [ ] the acts specified in Attachment BC-2  [✓] the following acts
*(specify):*

Defendant failed to transfer, as required under the agreement and addendum attached hereto,
respectively, as Exhibits D and F, a payment amount of $1,518,485.84 to the Benjamin Boyer
Trust's bank account by April 8, 2019.

BC-3.  Plaintiff has performed all obligations to defendant except those obligations plaintiff was prevented or
excused from performing.

BC-4.  Plaintiff suffered damages legally (proximately) caused by defendant's breach of the agreement
[ ] as stated in Attachment BC-4  [✓] as follows *(specify):*
Monetary damages in the amount of $1,518,485.84.

BC-5.  [ ]  Plaintiff is entitled to attorney fees by an agreement or a statute
[ ] of $
[ ] according to proof.
BC-6.  [ ]  Other:

Page ____5____

Page 1 of 1

Form Approved for Optional Use
Judicial Council of California
PLD-C-001(1) [Rev. January 1, 2007]

**CAUSE OF ACTION—Breach of Contract**

Code of Civil Procedure, § 425.12
*www.courtinfo.ca.gov*

PLD-C-001(1)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Boyer v. Dillman | |

FOURTH _____ **CAUSE OF ACTION—Breach of Contract**
(number)

ATTACHMENT TO [✓] Complaint [ ] Cross - Complaint

*(Use a separate cause of action form for each cause of action.)*

BC-1. Plaintiff *(name):* Benjamin Boyer, Trustee of Benjamin Boyer Trust & Boyer Family Trust

alleges that on or about *(date):* December 13, 2018

a [✓] written [ ] oral [ ] other *(specify):*

agreement was made between *(name parties to agreement):*

Benjamin Boyer, as Trustee of the Boyer Family Trust, and Japheth Dillman

[ ] A copy of the agreement is attached as Exhibit A, or

[✓] The essential terms of the agreement [ ] are stated in Attachment BC-1 [✓] are as follows *(specify):*

Under the Asset Purchase Agreement attached as Exhibit E, Defendant agreed to pay $1,125,000 to the Boyer Family Trust as consideration for 750,000 AML tokens. Mr. Boyer delivered all 750,000 tokens to Defendant, but Defendant failed to render payment by the agreed-upon "Closing Date" of December 31, 2018. An addendum, attached as Ex. F, granted Defendant more time to pay the amount outstanding in exchange for additional consideration.

BC-2. On or about *(dates):* April 8, 2019

defendant breached the agreement by [ ] the acts specified in Attachment BC-2 [✓] the following acts *(specify):*

Defendant failed to transfer, as required under the agreement and addendum attached hereto, respectively, as Exhibits E and F, a payment amount of $1,152,352.74 to the Benjamin Boyer Trust's bank account by April 8, 2019.

BC-3. Plaintiff has performed all obligations to defendant except those obligations plaintiff was prevented or excused from performing.

BC-4. Plaintiff suffered damages legally (proximately) caused by defendant's breach of the agreement
[ ] as stated in Attachment BC-4 [✓] as follows *(specify):*

Monetary damages in the amount of $1,152,352.74.

BC-5. [ ] Plaintiff is entitled to attorney fees by an agreement or a statute
[ ] of $
[ ] according to proof.

BC-6. [ ] Other:

Page ____6____

Page 1 of 1

**CAUSE OF ACTION—Breach of Contract**

Code of Civil Procedure, § 425.12
www.courtinfo.ca.gov

# EXHIBIT A



## ASSET PURCHASE AGREEMENT

**THIS ASSET PURCHASE AGREEMENT** ("*Agreement*") is made and executed as of the 13ᵗʰ day of December 2018 ("*Effective Date*") by and among the Benjamin Boyer Trust ("*Seller*"), located at 16011 Grandview Avenue, Monte Sereno, CA 95030 and Japheth Dillman, an individual ("*Purchaser*") located at 3563 Pierce Street, San Francisco, CA 94123.

## RECITALS

A. SELLER is in the business of investing in various markets, currencies, stocks, and the like and owns certain AML Bitcoin tokens.

B. PURCHASER is an individual who desires to purchase AML Bitcoin tokens.

C. Seller desires to sell to Purchaser, and Purchaser desires to purchase from Seller, the assets of Seller, as more fully described herein.

**NOW, THEREFORE,** in consideration of, and in reliance upon, the mutual covenants, agreements, representations and warranties herein contained, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto, intending to be legally bound, do hereby agree as follows:

1. Sale and Purchase of Assets; Assumed Liabilities.

    (a)  Assets to be Acquired. Seller agrees to sell, convey, transfer, assign and deliver to Purchaser, and Purchaser agrees to purchase, acquire and accept from Seller, certain assets of the Business set forth as follows (collectively, the "*Purchased Assets*"):

        (i)  "*AML Token Inventory*", which shall mean [228,369] AML tokens in possession of the Seller

    (b)  Excluded Assets. There are no excluded assets contemplated by the Parties.

    (c)  Assumed Liabilities. Purchaser will not assume any liabilities of Seller. Purchaser does not assume or agree to be responsible for any debts, obligations, liabilities or expenses of Seller whatsoever.

2. Purchase Price; Payment.

    (a)  The purchase price ("*Purchase Price*") for the Purchased Assets and other rights acquired herein shall be $228,369 and is based upon and agreed value between the Purchaser and Seller of $1.00 per token.

    (b)  The Purchase Price shall be delivered to Seller at Closing via wire transfer to the Seller's bank:

        Benjamin Boyer Trust
        TO: PRIVATE BANK SVB SJ.
        3003 TASMAN DRIVE, SANTA CLARA, CA 95054
        ROUTING & TRANSIT #: 121145145
        SWIFT CODE: SVBKUS6S
        FOR CREDIT OF:
        CREDIT ACCOUNT #: 1000035553

3. Liabilities of Seller. This Agreement provides for Purchaser to acquire the Purchased Assets from Seller. Further, it is the intent of the parties that Purchaser shall not assume nor become liable for, directly or indirectly, and Seller does not intend to sell, assign, or otherwise transfer, convey or create any liability (by agreement or by operation of law) in Purchaser with respect to any liability or obligation that Seller now has, which Seller may have at the Closing Date, or which may thereafter accrue, other than the Assumed Liabilities. Seller shall perform, observe, pay or otherwise discharge any and all liabilities and obligations which arose, accrued or relate to any period prior to the Closing, in particular, but not limited to, the payment of any taxes. Seller agrees to indemnify, defend and hold



harmless Purchaser from and against any and all liabilities and obligations that Seller now has, which Seller may have at the Closing Date or which may hereafter accrue except for the Assumed Liabilities.

4. <u>Closing</u>. The closing of this transaction (the "Closing") shall occur on or before December _____, 2018 (the "*Closing Date*"), or at such other date as may be mutually agreed upon by Seller and Purchaser. The Closing will be held remotely via the exchange of signature pages and transfer of funds, or in such manner or location as the Seller and Purchaser shall mutually agree. The Closing shall be deemed effective as of 5:00 p.m. Pacific Standard Time on the Closing Date.

5. <u>Conditions to Purchaser's Obligations.</u> Unless waived in writing by Purchaser in its sole discretion, all obligations of Purchaser under this Agreement are subject to the following conditions:

      (a)    **Representations, Warranties and Covenants**. All representations and warranties of Seller contained in this Agreement and in all documents delivered pursuant hereto or in connection with the transactions contemplated hereby shall be true and accurate as of the date when made and shall be deemed to be made again at and as of the time of the Closing and shall then be true and accurate in all respects. Seller shall have performed and complied with all covenants, agreements and conditions required by this Agreement to be performed or complied with by them prior to or on the Closing Date.

      (b)    **No Adverse Proceedings**. No material suit, action or other proceeding against any of Seller or its respective shareholders, directors or officers related to this Agreement or the Purchased Assets shall be pending or threatened before any court or governmental agency seeking to restrain or prohibit the consummation of the transactions contemplated by this Agreement.

6. <u>Conditions to Seller's Obligations</u>. Unless waived in writing by Seller, all obligations of Seller under this Agreement are subject to the fulfillment, prior to or at the Closing, of each of the following conditions:

      (a)    **Representations, Warranties and Covenants**. All representations and warranties of Purchaser contained in this Agreement and in all documents delivered pursuant hereto or in connection with the transactions contemplated hereby shall be true and accurate as of the date when made and shall be deemed to be made again at and as of the time of the Closing and shall then be true and accurate in all respects. Purchaser shall have in all material respects performed each obligation and complied with each covenant required by this Agreement to be performed or complied with by it on or prior to the Closing Date.

7. <u>Obligations of Seller</u>. At the Closing, Seller shall deliver to Purchaser the Purchased Assets free and clear of all liens, security interests and encumbrances.

8. <u>Obligations of Purchaser</u>. At the Closing, Purchaser shall pay the Purchase Price to Seller by wire transfer in immediately available funds pursuant to the wire transfer instructions set forth in Section 2(b).

9. <u>Representations and Warranties of Seller</u>. As a specific inducement for Purchaser to enter into this Agreement, Seller hereby represents and warrants to Purchaser as follows:

      (a)    **Organization**. The Seller is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Delaware. The Seller has the power and lawful authority to enter into and perform the provisions of this Agreement and all agreements and documents to be delivered by it in connection herewith.

      (b)    **Authorization**. The execution, delivery and performance of this Agreement, and all agreements and documents to be delivered by the Seller in connection herewith, have been, or will on the Closing Date have been, duly authorized by the respective members and managers of the Seller; no further entity authorization will be necessary for the performance of the Seller respective obligations hereunder or thereunder; and this Agreement and all agreements and documents to be delivered by the Seller in connection herewith, constitute valid and binding legal obligations the Seller, enforceable in accordance with their terms.



    (c)   **Title.** Seller has, or on the Closing Date will have, good and marketable title to all of the Purchased Assets, free and clear of all liens, pledges, security interests or other encumbrances of any nature whatsoever, whether fixed or contingent, and whether due or to become due. Title and all risk of loss with respect to the Purchased Assets shall remain exclusively with Seller until the Closing.

    (d)   **Broker.** No broker or finder has acted for Seller in connection with this Agreement or the transactions contemplated hereby, and no broker or finder is entitled to any brokerage or finder's fee or other commission in respect thereof, based in any way on agreements, arrangements or understandings made by or on behalf of Seller.

    (e)   **Litigation.** There are no claims, actions, suits, demands or other proceedings or investigations, either administrative or judicial, pending or, to the knowledge of Seller, threatened against Seller.

10. <u>Representations and Warranties of Purchaser</u>. Purchaser represents and warrants to Seller as follows:

    (a)   **Authority.** Purchaser has full power and lawful authority to enter into and perform the provisions of this Agreement and all agreements and documents to be delivered by Purchaser in connection herewith.

    (b)   **Binding Agreement.** This Agreement and all agreements and documents to be delivered by Purchaser in connection herewith, constitute valid and binding legal obligations of Purchaser, enforceable in accordance with their terms.

    (c)   **Broker.** No broker or finder has acted for Purchaser in connection with this Agreement or the transactions contemplated hereby, and no broker or finder is entitled to any brokerage or finder's fee or other commission in respect thereof based in any way on agreements, arrangements or understandings made by or on behalf of Purchaser.

    (c)   **Sufficient Funds.** Purchaser has, as of the Effective Date and as of the Closing Date sufficient funds to pay the Purchase Price.

    (e)   **Litigation.** There are no claims, actions, suits, demands or other proceedings or investigations, either administrative or judicial, pending or, to the knowledge of Purchaser, threatened against Purchaser at this time.

11. <u>Indemnification; Limitations</u>.

    (a)   **Indemnification by Seller.** Notwithstanding the payment of the Purchase Price and the delivery of instruments of conveyance, from and after the Closing Date, Seller will indemnify, defend and save and hold the Purchaser and its officers, directors, shareholders, employees, affiliates, successors and assigns harmless from and against any and all damages, losses, costs, claims, liabilities, causes of action and expenses (including reasonable attorneys' fees) (collectively, the "*Damages*") arising out of or resulting from, and will pay to Purchaser on demand the full amount of any sum that Purchaser may pay or become obligated to pay on account of: (i) any inaccuracy of any representation or the breach of any warranty made by Seller hereunder; (ii) any failure of Seller to duly perform or observe any term, provision, covenant, agreement or condition under this Agreement, and all agreements delivered in connection with this Agreement, on the part of Seller to be performed or observed; and (iii) any Excluded Liabilities..

    (b)   **Indemnification by Purchaser.** Purchaser will indemnify, defend and save and hold the Seller and its employees, affiliates, successors and assigns harmless from and against any and all Damages arising out of or resulting from, and will pay to Seller on demand the full amount of any sum that Seller may pay or become obligated to pay on account of: (i) any inaccuracy of any representation or the breach of any warranty made by Purchaser hereunder; (ii) any failure of Purchaser to duly perform or observe any term, provision, covenant, agreement or condition under this Agreement,



including payment of the Assumed Liabilities, and all agreements delivered in connection with this Agreement, on the part of Purchaser to be performed or observed; and (iii) any liability arising out of Purchaser's operation of the Business subsequent to Closing.

(c)  **Absence of Investigation.** No investigation made heretofore by or on behalf of any Party shall limit or affect in any way the representations, warranties, covenants, agreements and indemnities of the other party hereunder, each of which shall survive any such investigation.

(d)  **Limitations on Indemnification.** The maximum amount of damages for which either party (the "*Indemnifying Party*") shall be liable to the other party (the "*Indemnified Party*") for claims made pursuant to this Section shall be the Purchase Price; *provided, however*, Damages for which the Indemnified Party is seeking indemnification from the Indemnifying Party that are the direct result of a third party claim or action shall not be subject to the cap set forth herein.

(e)  **Exceptions.** Notwithstanding anything to the contrary in this Agreement, claims for indemnification based on allegations of actual fraud shall not be subject to the limitations set forth in this Section.

(f)  **Insurance.** The amount of any Damages for which indemnification is provided under this Section shall be net of any insurance proceeds received by the Indemnified Party as an offset of such damages (net of any costs incurred in connection with the collection thereof, including deductibles, legal and administrative costs and costs of investigation).

(g)  **No Waiver.** The closing of the transactions contemplated by this Agreement shall not constitute a waiver by any party of its rights to indemnification hereunder, regardless of whether the party claiming the right to indemnification has knowledge of the breach, violation or failure of condition constituting the basis of the claim at or before the date hereof, and regardless of whether such breach, violation, or failure is deemed to be material.

12. Survival of Representations, Warranties, Agreements and Covenants. All representations and warranties made by Seller and Purchaser hereunder in connection with the transactions contemplated hereby shall survive the Closing and the delivery of any instrument of transfer and conveyance until the first anniversary of the Effective Date and shall terminate. The agreement and covenants of the parties set forth in this Agreement shall survive the Closing and continue until all obligations set forth therein shall have been performed and satisfied or until such agreements and covenants shall have terminated in accordance with their terms.

13. Fees and Expenses. Each of the parties hereto shall pay its own expenses incident to the preparation of this Agreement and the consummation of the transactions contemplated hereby, including, but not limited to, the fees and expenses of attorneys and accountants representing such parties in connection herewith.

14. Payments and Prorations. All sales, use and transfer taxes, if any, payable on the Purchased Assets transferred to Purchaser shall be paid by Seller.

15. Non-Disclosure and Non-Disparagement

(a) Non-Disclosure

1.  The Seller will (i) use reasonable efforts to maintain the confidentiality of the information and materials, whether oral, written or in any form whatsoever, of the Purchaser or other that may be reasonably understood, from legends, the nature of such information itself and/or the circumstances of such information's disclosure, to be confidential and/or proprietary thereto or to third parties to which either of them owes a duty of nondisclosure (collectively, "Confidential Information"); (ii) take reasonable action in connection therewith, including without limitation at least the action that each takes to protect the confidentiality of its comparable proprietary assets; (iii) to the extent within their respective possession and/or control, upon termination of this Agreement for any reason, immediately return to the provider thereof all Confidential Information not licensed or authorized to be used or enjoyed after termination or expiration hereof, and (iv) with respect to any person to which disclosure is contemplated, require such person to execute an agreement providing for the treatment of Confidential Information set forth in clauses (i) through (iii). The foregoing shall not require



separate written agreements with employees and agents already subject to written agreements substantially conforming to the requirements of this Section nor with legal counsel, certified public accountants, or other professional advisers under a professional obligation to maintain the confidences of clients. The Seller will not disclose any Confidential Information obtained with respect to the Purchaser or with respect to this Agreement, without the express written consent of Purchaser.

2. The Purchaser will (i) use reasonable efforts to maintain the confidentiality of the information and materials, whether oral, written or in any form whatsoever, of the Seller or other that may be reasonably understood, from legends, the nature of such information itself and/or the circumstances of such information's disclosure, to be confidential and/or proprietary thereto or to third parties to which either of them owes a duty of nondisclosure (collectively, "Confidential Information"); (ii) take reasonable action in connection therewith, including without limitation at least the action that each takes to protect the confidentiality of its comparable proprietary assets; (iii) to the extent within their respective possession and/or control, upon termination of this Agreement for any reason, immediately return to the provider thereof all Confidential Information not licensed or authorized to be used or enjoyed after termination or expiration hereof, and (iv) with respect to any person to which disclosure is contemplated, require such person to execute an agreement providing for the treatment of Confidential Information set forth in clauses (i) through (iii). The foregoing shall not require separate written agreements with employees and agents already subject to written agreements substantially conforming to the requirements of this Section nor with legal counsel, certified public accountants, or other professional advisers under a professional obligation to maintain the confidences of clients. The Purchaser will not disclose any Confidential Information obtained with respect to the Seller or with respect to this Agreement, without the express written consent of Seller.

3. Notwithstanding the foregoing, the obligation of a person to protect the confidentiality of any information or materials shall terminate as to any information or materials which: (i) are, or become, public knowledge through no act or failure to act of such person; (ii) are publicly disclosed by the proprietor thereof; (iii) are lawfully obtained without obligations of confidentiality by such person from a third party after reasonable inquiry regarding the authority of such third party to possess and divulge the same; (iv) are independently developed by such person from sources or through persons that such person can demonstrate had no access to Confidential Information; or (v) are lawfully known by such person at the time of disclosure other than by reason of discussions with or disclosures by the Seller or Purchaser (as appropriate).

(b) Non-Disparagement. From and after the Effective Date / Closing Date of this Agreement, Seller agrees not to make any statement that is intended to become public, or that should reasonably be expected to become public, and that criticizes, ridicules, disparages or is otherwise derogatory of the Purchaser or parties affiliated with the Purchaser. From and after the Effective Date / Closing Date of this Agreement, Purchaser agrees not to make any statement that is intended to become public, or that should reasonably be expected to become public, and that criticizes, ridicules, disparages or is otherwise derogatory of the Seller or parties affiliated with the Seller.

For purposes of this Section, "disparage" shall mean any negative statement, whether written or oral, about Purchaser or parties affiliated with the Purchaser. With respect to Purchaser, "affiliated with" means Block Bits Capital LLC, its managers, officers, members, and owners. With respect to Seller, "affiliated with" means the Seller, its managers, officers, members, and beneficial owners.

If Seller violates this provision, Purchaser will be entitled to compensation of $500,000 as well as attorney's fees and costs related to any efforts Purchaser is required to make to rectify such disparaging conduct.

The parties agree and acknowledge that this Section 15 is a material term of this Agreement, the absence of which would have resulted in the Company refusing to enter into this Agreement.



The obligations of the Parties under this Section 15 shall continue and survive the Closing and shall remain binding for a period of two (2) years from the Effective Date.

16. Notices. Any notice required or permitted to be given under this Agreement shall be in writing and shall be sufficiently delivered if sent by registered or certified mail, return receipt requested, postage prepaid, addressed as follows:

    (a)   If to any of the Seller to:

            Benjamin Boyer
            16011 Grandview Ave
            Monte Sereno, CA 95030

            With a copy to:

            Michael Heath
            Gunderson Dettmer
            660 Venice Boulevard
            Venice, CA 90291

    (b)   If to Purchaser, to:

            Japheth Dillman
             3563 Pierce Street
             San Francisco, CA 94123

With a copy to:

            Shailendra Maheshwari, Esq.
            1200 17th Street, NW
            Washington, DC 20006

17. Binding Effect. This Agreement shall be binding upon and shall inure to the benefit of and be enforceable by the respective parties hereto, their personal representatives, successors and assigns; provided, however, that none of the parties may assign its rights or obligations under this Agreement without the other parties' prior written consent.

18. Governing Law; Jurisdiction and Venue. This Agreement shall be deemed to have been entered into and to be performed in the State of California and shall be governed and construed and enforced in accordance with the laws of such state. Jurisdiction and venue for any action or claim arising hereunder shall lie exclusively in the Federal Courts of the Northern District of California, and each party irrevocably consents to the personal and subject matter jurisdiction of that court.

19. Entire Agreement; No Oral Modification. This Agreement contains the entire understanding of the parties with respect to the subject matter hereof and supersedes all prior oral and written understandings relating thereto. No modification or termination of this Agreement, nor any waiver of any provision hereof shall be valid or effective unless in writing and signed by the party or parties sought to be charged therewith. No waiver of any breach or condition of this Agreement shall be deemed to be a waiver of any other or subsequent breach or condition, whether of like or different nature.

20. Enforcement. Seller acknowledges and agrees that the Purchased Assets are unique, that damages for any failure of Seller to transfer and convey said Purchased Assets to Purchaser pursuant to this Agreement would be an inadequate remedy, and that Purchaser shall be entitled to enforcement of this Agreement by judgment for specific performance, as well as for damages as identified, but not limited to, previous sections of the Agreement.

21. Section Headings. The section headings set forth herein are included for convenience of reference only and shall not affect the meaning or construction of any provision of this Agreement.

22. No Third Party Beneficiaries. Nothing in this Agreement is intended nor will it be construed to give any person other than the parties hereto and their respective successors and permitted assigns, any right, remedy or claim under or in respect of this Agreement or any provisions hereof.

23. Severability. Any term or provision of this Agreement which is invalid or unenforceable shall be ineffective to the extent of such invalidity or unenforceability without rendering invalid or unenforceable the remaining terms and provisions of this Agreement.

24. Counterparts. This Agreement may be executed in any number of counterparts, including by facsimile or electronic signature included in an Adobe PDF file, each of which shall, for all purposes, be deemed an original, but all of which shall constitute one and the same instrument.

*[signature page follows]*

7

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the dates set forth below their respective signatures.

SELLER:                                      PURCHASER:

Benjamin Boyer Trust                         Japheth Dillman

By:                                          By:
Name: Benjamin Boyer                         Name: Japheth Dillman
Title:  Member                               Title:

8

## EXHIBIT B

## ASSET PURCHASE AGREEMENT

**THIS ASSET PURCHASE AGREEMENT** (*"Agreement"*) is made and executed as of the 13 ᵗʰ day of December, 2018 (*"Effective Date"*) by and among the members of **Block Bits AML Holdings LLC** (*"AML Holdings"* or *"Seller"*), located at 3563 Pierce Street, San Francisco, CA 94123 and Japheth Dillman, an individual (*"Purchaser"*).

## RECITALS

A. SELLER is in the business of investing in various markets, currencies, stocks, and the like and is made up of various member parties, including, for the purposes of this Agreement, the Benjamin Boyer Trust, who have deposited funds into AML Holdings.

B. PURCHASER is an individual and is the managing member of AML Holdings.

C. Seller desires to sell to Purchaser, and Purchaser desires to purchase from Seller, the assets of Seller, as more fully described herein.

**NOW, THEREFORE**, in consideration of, and in reliance upon, the mutual covenants, agreements, representations and warranties herein contained, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto, intending to be legally bound, do hereby agree as follows:

1. Sale and Purchase of Assets; Assumed Liabilities.

    (a)   Assets to be Acquired. Seller agrees to sell, convey, transfer, assign and deliver to Purchaser, and Purchaser agrees to purchase, acquire and accept from Seller, certain assets of the Business set forth as follows (collectively, the *"Purchased Assets"*):

        (i)   *"AML Token Inventory"*, which shall mean [100,000] AML tokens in possession of the Seller

    (b)   Excluded Assets. There are no excluded assets contemplated by the Parties.

    (c)   Assumed Liabilities. Purchaser will not assume any liabilities of Seller. Purchaser does not assume or agree to be responsible for any debts, obligations, liabilities or expenses of Seller whatsoever.

2. Purchase Price; Payment.

    (a)   The purchase price (*"Purchase Price"*) for the Purchased Assets and other rights acquired herein shall be $150,000 and is based upon and agreed value between the Purchaser and Seller of $1.50 per token.

    (b)   The Purchase Price shall be delivered to Seller at Closing via wire transfer to the Seller's bank:

        Benjamin Boyer Trust
        TO: PRIVATE BANK SVB SJ
        3003 TASMAN DRIVE, SANTA CLARA, CA 95054
        ROUTING & TRANSIT #: 121145145
        SWIFT CODE: SVBKUS6S
        FOR CREDIT OF:
        CREDIT ACCOUNT #: 1000035553

3. Liabilities of Seller. This Agreement provides for Purchaser to acquire the Purchased Assets from Seller. Further, it is the intent of the parties that Purchaser shall not assume nor become liable for, directly or indirectly, and Seller does not intend to sell, assign, or otherwise transfer, convey or create any liability (by agreement or by operation of law) in Purchaser with respect to any liability or obligation that Seller now has, which Seller may have at the Closing Date, or which may thereafter accrue, other than the Assumed Liabilities. Seller shall perform, observe, pay



or otherwise discharge any and all liabilities and obligations which arose, accrued or relate to any period prior to the Closing, in particular, but not limited to, the payment of any taxes. Seller agrees to indemnify, defend and hold harmless Purchaser from and against any and all liabilities and obligations that Seller now has, which Seller may have at the Closing Date or which may hereafter accrue except for the Assumed Liabilities.

4. Closing. The closing of this transaction (the "Closing") shall occur on or before December _____, 2018 (the "*Closing Date*"), or at such other date as may be mutually agreed upon by Seller and Purchaser. The Closing will be held remotely via the exchange of signature pages and transfer of funds, or in such manner or location as the Seller and Purchaser shall mutually agree. The Closing shall be deemed effective as of 5:00 p.m. Pacific Standard Time on the Closing Date.

5. Conditions to Purchaser's Obligations. Unless waived in writing by Purchaser in its sole discretion, all obligations of Purchaser under this Agreement are subject to the following conditions:

    (a)    **Representations, Warranties and Covenants**. All representations and warranties of Seller contained in this Agreement and in all documents delivered pursuant hereto or in connection with the transactions contemplated hereby shall be true and accurate as of the date when made and shall be deemed to be made again at and as of the time of the Closing and shall then be true and accurate in all respects. Seller shall have performed and complied with all covenants, agreements and conditions required by this Agreement to be performed or complied with by them prior to or on the Closing Date.

    (b)    **No Adverse Proceedings**. No material suit, action or other proceeding against any of Seller or its respective shareholders, directors or officers related to this Agreement or the Purchased Assets shall be pending or threatened before any court or governmental agency seeking to restrain or prohibit the consummation of the transactions contemplated by this Agreement.

6. Conditions to Seller's Obligations. Unless waived in writing by Seller, all obligations of Seller under this Agreement are subject to the fulfillment, prior to or at the Closing, of each of the following conditions:

    (a)    **Representations, Warranties and Covenants**. All representations and warranties of Purchaser contained in this Agreement and in all documents delivered pursuant hereto or in connection with the transactions contemplated hereby shall be true and accurate as of the date when made and shall be deemed to be made again at and as of the time of the Closing and shall then be true and accurate in all respects. Purchaser shall have in all material respects performed each obligation and complied with each covenant required by this Agreement to be performed or complied with by it on or prior to the Closing Date.

7. Obligations of Seller. At the Closing, Seller shall deliver to Purchaser the Purchased Assets free and clear of all liens, security interests and encumbrances.

8. Obligations of Purchaser. At the Closing, Purchaser shall pay the Purchase Price to Seller by wire transfer in immediately available funds pursuant to the wire transfer instructions set forth in Section 2(b).

9. Representations and Warranties of Seller. As a specific inducement for Purchaser to enter into this Agreement, Seller hereby represents and warrants to Purchaser as follows:

    (a)    **Organization**. The Seller is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Delaware. The Seller has the power and lawful authority to enter into and perform the provisions of this Agreement and all agreements and documents to be delivered by it in connection herewith.

    (b)    **Authorization**. The execution, delivery and performance of this Agreement, and all agreements and documents to be delivered by the Seller in connection herewith, have been, or will on the Closing Date have been, duly authorized by the respective members and managers of the Seller; no further entity authorization will be necessary for the performance of the Seller respective obligations hereunder or thereunder; and this Agreement and all agreements and documents to be delivered by



the Seller in connection herewith, constitute valid and binding legal obligations the Seller, enforceable in accordance with their terms.

(c) **Title**. Seller has, or on the Closing Date will have, good and marketable title to all of the Purchased Assets, free and clear of all liens, pledges, security interests or other encumbrances of any nature whatsoever, whether fixed or contingent, and whether due or to become due. Title and all risk of loss with respect to the Purchased Assets shall remain exclusively with Seller until the Closing.

(d) **Broker**. No broker or finder has acted for Seller in connection with this Agreement or the transactions contemplated hereby, and no broker or finder is entitled to any brokerage or finder's fee or other commission in respect thereof, based in any way on agreements, arrangements or understandings made by or on behalf of Seller.

(e) **Litigation**. There are no claims, actions, suits, demands or other proceedings or investigations, either administrative or judicial, pending or, to the knowledge of Seller, threatened against Seller.

10. <u>Representations and Warranties of Purchaser</u>. Purchaser represents and warrants to Seller as follows:

(a) **Authority**. Purchaser has full power and lawful authority to enter into and perform the provisions of this Agreement and all agreements and documents to be delivered by Purchaser in connection herewith.

(b) **Binding Agreement**. This Agreement and all agreements and documents to be delivered by Purchaser in connection herewith, constitute valid and binding legal obligations of Purchaser, enforceable in accordance with their terms.

(c) **Broker**. No broker or finder has acted for Purchaser in connection with this Agreement or the transactions contemplated hereby, and no broker or finder is entitled to any brokerage or finder's fee or other commission in respect thereof based in any way on agreements, arrangements or understandings made by or on behalf of Purchaser.

(c) **Sufficient Funds**. Purchaser has, as of the Effective Date and as of the Closing Date sufficient funds to pay the Purchase Price.

(e) **Litigation**. There are no claims, actions, suits, demands or other proceedings or investigations, either administrative or judicial, pending or, to the knowledge of Purchaser, threatened against Purchaser at this time.

11. <u>Indemnification; Limitations</u>.

(a) **Indemnification by Seller**. Notwithstanding the payment of the Purchase Price and the delivery of instruments of conveyance, from and after the Closing Date, Seller will indemnify, defend and save and hold the Purchaser and its officers, directors, shareholders, employees, affiliates, successors and assigns harmless from and against any and all damages, losses, costs, claims, liabilities, causes of action and expenses (including reasonable attorneys' fees) (collectively, the "*Damages*") arising out of or resulting from, and will pay to Purchaser on demand the full amount of any sum that Purchaser may pay or become obligated to pay on account of: (i) any inaccuracy of any representation or the breach of any warranty made by Seller hereunder; (ii) any failure of Seller to duly perform or observe any term, provision, covenant, agreement or condition under this Agreement, and all agreements delivered in connection with this Agreement, on the part of Seller to be performed or observed; and (iii) any Excluded Liabilities..

(b) **Indemnification by Purchaser**. Purchaser will indemnify, defend and save and hold the Seller and its employees, affiliates, successors and assigns harmless from and against any and all Damages arising out of or resulting from, and will pay to Seller on demand the full amount of any sum that Seller may pay or become obligated to pay on account of: (i) any inaccuracy of any representation or

3



the breach of any warranty made by Purchaser hereunder; (ii) any failure of Purchaser to duly perform or observe any term, provision, covenant, agreement or condition under this Agreement, including payment of the Assumed Liabilities, and all agreements delivered in connection with this Agreement, on the part of Purchaser to be performed or observed; and (iii) any liability arising out of Purchaser's operation of the Business subsequent to Closing.

(c)    **Absence of Investigation.** No investigation made heretofore by or on behalf of any Party shall limit or affect in any way the representations, warranties, covenants, agreements and indemnities of the other party hereunder, each of which shall survive any such investigation.

(d)    **Limitations on Indemnification.** The maximum amount of damages for which either party (the "*Indemnifying Party*") shall be liable to the other party (the "*Indemnified Party*") for claims made pursuant to this Section shall be the Purchase Price; *provided, however,* Damages for which the Indemnified Party is seeking indemnification from the Indemnifying Party that are the direct result of a third party claim or action shall not be subject to the cap set forth herein.

(e)    **Exceptions.** Notwithstanding anything to the contrary in this Agreement, claims for indemnification based on allegations of actual fraud shall not be subject to the limitations set forth in this Section.

(f)    **Insurance.** The amount of any Damages for which indemnification is provided under this Section shall be net of any insurance proceeds received by the Indemnified Party as an offset of such damages (net of any costs incurred in connection with the collection thereof, including deductibles, legal and administrative costs and costs of investigation).

(g)    **No Waiver.** The closing of the transactions contemplated by this Agreement shall not constitute a waiver by any party of its rights to indemnification hereunder, regardless of whether the party claiming the right to indemnification has knowledge of the breach, violation or failure of condition constituting the basis of the claim at or before the date hereof, and regardless of whether such breach, violation, or failure is deemed to be material.

12. <u>Survival of Representations, Warranties, Agreements and Covenants</u>. All representations and warranties made by Seller and Purchaser hereunder in connection with the transactions contemplated hereby shall survive the Closing and the delivery of any instrument of transfer and conveyance until the first anniversary of the Effective Date and shall terminate. The agreement and covenants of the parties set forth in this Agreement shall survive the Closing and continue until all obligations set forth therein shall have been performed and satisfied or until such agreements and covenants shall have terminated in accordance with their terms.

13. <u>Fees and Expenses</u>. Each of the parties hereto shall pay its own expenses incident to the preparation of this Agreement and the consummation of the transactions contemplated hereby, including, but not limited to, the fees and expenses of attorneys and accountants representing such parties in connection herewith.

14. <u>Payments and Prorations</u>. All sales, use and transfer taxes, if any, payable on the Purchased Assets transferred to Purchaser shall be paid by Seller.

15. <u>Non-Disclosure and Non-Disparagement</u>

(a) Non-Disclosure

1.    The Seller will (i) use reasonable efforts to maintain the confidentiality of the information and materials, whether oral, written or in any form whatsoever, of the Purchaser or other that may be reasonably understood, from legends, the nature of such information itself and/or the circumstances of such information's disclosure, to be confidential and/or proprietary thereto or to third parties to which either of them owes a duty of nondisclosure (collectively, "Confidential Information"); (ii) take reasonable action in connection therewith, including without limitation at least the action that each takes to protect the confidentiality of its comparable proprietary assets; (iii) to the extent within their respective possession and/or control, upon termination of this Agreement for any reason, immediately return to the provider thereof all Confidential Information not licensed or authorized to be used or enjoyed after termination or expiration hereof, and (iv) with respect to any person to which disclosure

4



is contemplated, require such person to execute an agreement providing for the treatment of Confidential Information set forth in clauses (i) through (iii). The foregoing shall not require separate written agreements with employees and agents already subject to written agreements substantially conforming to the requirements of this Section nor with legal counsel, certified public accountants, or other professional advisers under a professional obligation to maintain the confidences of clients. The Seller will not disclose any Confidential Information obtained with respect to the Purchaser or with respect to this Agreement, without the express written consent of Purchaser.

2.  The Purchaser will (i) use reasonable efforts to maintain the confidentiality of the information and materials, whether oral, written or in any form whatsoever, of the Seller or other that may be reasonably understood, from legends, the nature of such information itself and/or the circumstances of such information's disclosure, to be confidential and/or proprietary thereto or to third parties to which either of them owes a duty of nondisclosure (collectively, "Confidential Information"); (ii) take reasonable action in connection therewith, including without limitation at least the action that each takes to protect the confidentiality of its comparable proprietary assets; (iii) to the extent within their respective possession and/or control, upon termination of this Agreement for any reason, immediately return to the provider thereof all Confidential Information not licensed or authorized to be used or enjoyed after termination or expiration hereof, and (iv) with respect to any person to which disclosure is contemplated, require such person to execute an agreement providing for the treatment of Confidential Information set forth in clauses (i) through (iii). The foregoing shall not require separate written agreements with employees and agents already subject to written agreements substantially conforming to the requirements of this Section nor with legal counsel, certified public accountants, or other professional advisers under a professional obligation to maintain the confidences of clients. The Purchaser will not disclose any Confidential Information obtained with respect to the Seller or with respect to this Agreement, without the express written consent of Seller.

3.  Notwithstanding the foregoing, the obligation of a person to protect the confidentiality of any information or materials shall terminate as to any information or materials which: (i) are, or become, public knowledge through no act or failure to act of such person; (ii) are publicly disclosed by the proprietor thereof; (iii) are lawfully obtained without obligations of confidentiality by such person from a third party after reasonable inquiry regarding the authority of such third party to possess and divulge the same; (iv) are independently developed by such person from sources or through persons that such person can demonstrate had no access to Confidential Information; or (v) are lawfully known by such person at the time of disclosure other than by reason of discussions with or disclosures by the Seller or Purchaser (as appropriate).

(b)  Non-Disparagement. From and after the Effective Date / Closing Date of this Agreement, Seller agrees not to make any statement that is intended to become public, or that should reasonably be expected to become public, and that criticizes, ridicules, disparages or is otherwise derogatory of the Purchaser or parties affiliated with the Purchaser. From and after the Effective Date / Closing Date of this Agreement, Purchaser agrees not to make any statement that is intended to become public, or that should reasonably be expected to become public, and that criticizes, ridicules, disparages or is otherwise derogatory of the Seller or parties affiliated with the Seller.

For purposes of this Section, "disparage" shall mean any negative statement, whether written or oral, about Purchaser or parties affiliated with the Purchaser. With respect to Purchaser, "affiliated with" means Block Bits Capital LLC, its managers, officers, members, and owners. With respect to Seller, "affiliated with" means the Seller, its managers, officers, members, and beneficial owners.

If Seller violates this provision, Purchaser will be entitled to compensation of $500,000 as well as attorney's fees and costs related to any efforts Purchaser is required to make to rectify such disparaging conduct.

The parties agree and acknowledge that this Section 15 is a material term of this Agreement, the absence of which would have resulted in the Company refusing to enter into this Agreement.

5

The obligations of the Parties under this Section 15 shall continue and survive the Closing and shall remain binding for a period of two (2) years from the Effective Date.

16. Notices. Any notice required or permitted to be given under this Agreement shall be in writing and shall be sufficiently delivered if sent by registered or certified mail, return receipt requested, postage prepaid, addressed as follows:

    (a)   If to any of the Seller to:

        Benjamin Boyer
        16011 Grandview Ave
        Monte Sereno, CA 95030

        With a copy to:

        Michael Heath
        Gunderson Dettmer
        660 Venice Boulevard
        Venice, CA 90291

    (b)   If to Purchaser, to:

        Japheth Dillman
        3563 Pierce Street
        San Francisco, CA 94123

    With a copy to:

        Shailendra Maheshwari, Esq.
        1200 17th Street, NW
        Washington, DC 20006

17. Binding Effect. This Agreement shall be binding upon and shall inure to the benefit of and be enforceable by the respective parties hereto, their personal representatives, successors and assigns; provided, however, that none of the parties may assign its rights or obligations under this Agreement without the other parties' prior written consent.

18. Governing Law; Jurisdiction and Venue. This Agreement shall be deemed to have been entered into and to be performed in the State of California and shall be governed and construed and enforced in accordance with the laws of such state. Jurisdiction and venue for any action or claim arising hereunder shall lie exclusively in the Federal Courts of the Northern District of California, and each party irrevocably consents to the personal and subject matter jurisdiction of that court.

19. Entire Agreement; No Oral Modification. This Agreement contains the entire understanding of the parties with respect to the subject matter hereof and supersedes all prior oral and written understandings relating thereto. No modification or termination of this Agreement, nor any waiver of any provision hereof shall be valid or effective unless in writing and signed by the party or parties sought to be charged therewith. No waiver of any breach or condition of this Agreement shall be deemed to be a waiver of any other or subsequent breach or condition, whether of like or different nature.

20. Enforcement. Seller acknowledges and agrees that the Purchased Assets are unique, that damages for any failure of Seller to transfer and convey said Purchased Assets to Purchaser pursuant to this Agreement would be an inadequate remedy, and that Purchaser shall be entitled to enforcement of this Agreement by judgment for specific performance, as well as for damages as identified, but not limited to, previous sections of the Agreement.

21. Section Headings. The section headings set forth herein are included for convenience of reference only and shall not affect the meaning or construction of any provision of this Agreement.



22. <u>No Third Party Beneficiaries</u>. Nothing in this Agreement is intended nor will it be construed to give any person other than the parties hereto and their respective successors and permitted assigns, any right, remedy or claim under or in respect of this Agreement or any provisions hereof.

23. <u>Severability</u>. Any term or provision of this Agreement which is invalid or unenforceable shall be ineffective to the extent of such invalidity or unenforceability without rendering invalid or unenforceable the remaining terms and provisions of this Agreement.

24. <u>Counterparts</u>. This Agreement may be executed in any number of counterparts, including by facsimile or electronic signature included in an Adobe PDF file, each of which shall, for all purposes, be deemed an original, but all of which shall constitute one and the same instrument.

*[signature page follows]*

7

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the dates set forth below their respective signatures.

SELLER:                                          PURCHASER:

Block Bits AML Holding LLC                       Japheth Dillman    Japheth Dillman

By:                                              By:
Name: Benjamin Boyer                             Name: Japheth Dillman
Title: Member                                    Title:

8

# EXHIBIT C

DocuSign Envelope ID: DF128457-4CAC-49A9-8691-F183BE68FACB

## ADDENDUM TO BENJAMIN BOYER TRUST'S AML BITCOIN ASSET PURCHASE AGREEMENTS

This addendum ("Addendum") is made this 1/9/2019 of January, 2019, by and between the Benjamin Boyer Trust (the "Seller"), located at 16011 Grandview Avenue, Monte Serrano, CA 95030 and Japheth Dillman, an individual ("Purchaser") located at 3563 Pierce Street, San Francisco, CA 94123.  Seller and Purchaser are sometimes referred to herein collectively as the "Parties," and individually as a "Party."

## RECITALS

A.     On December 13, 2018, Seller and Purchaser executed two asset purchase agreements (the "Asset Purchase Agreements"), whereby Seller agreed to sell, and Purchaser agreed to purchase from Seller, a total of 328,369 AML Bitcoin tokens.

B.     Under the terms of the Asset Purchase Agreements, Purchaser had until December 31, 2018, (the "Closing Date") to transfer a total purchase price of $378,369 to Seller's bank account for the purchase of Seller's 326,369 AML Bitcoin tokens; Seller also had until the Closing Date to deliver the 328,369 AML Bitcoin tokens to Purchaser.

C.     Seller delivered the 328,369 AML Bitcoin tokens due under the Asset Purchase Agreements to Purchaser before the Closing Date; Purchaser failed to transfer the purchase price of  $378,369 to Seller's bank account by the Closing Date.

D.     As of the date of this Addendum, Purchaser has yet to transfer the purchase price of $378,369 to Seller's bank account.

NOW, THEREFORE, for good and valuable consideration, Seller and Purchaser each hereby agree as follows:

1.

ADDENDUM TO BENJAMIN BOYER TRUST'S AML BITCOIN ASSET PURCHASE AGREEMENTS
CONFIDENTIAL

DocuSign Envelope ID: DF128457-4CAC-49A9-8691-F183BE68FACB

1.    Closing Date Extension. Seller agrees to extend the Closing Date from December 31, 2018, up to, and including, January 14, 2019.  In exchange, Purchaser agrees to the following:

        a.    Daily Interest Payment: Purchaser agrees to pay daily interest, at a rate of five (5) percent per annum, on the outstanding purchase price of $378,369, for each day Seller extends the Closing Date between December 31, 2018, and January 14, 2019;

        b.    Legal Fees: Purchaser also agrees to pay Seller $250 per day (for Purchaser's legal fees) for each day Seller extends the Closing Date between December 31, 2018, and January 14, 2019.

2.    Effectiveness of the Addendum. This Addendum shall become effective, without conditions, on the Effective Date of this Agreement.

3.    Cooperation. The Parties to this Addendum agree that each Party shall cooperate fully in the execution of any and all other documents and in the completion of any additional actions that may be necessary or appropriate to give full force and effect to this Addendum.

4.    Successor, Assigns and Beneficiaries. This Addendum is intended to bind and inure to the benefit of and to be enforceable by all Parties, and each Party's respective successors, assigns, heirs, executors, and administrators. The Parties do not intend to convey any benefits of this Addendum to any third-party.

5.    Counterparts. This Addendum may be executed in multiple counterparts by the different Parties hereto, and all of said counterparts, taken together, shall constitute one

ADDENDUM TO BENJAMIN BOYER TRUST'S AML BITCOIN ASSET PURCHASE
AGREEMENTS
CONFIDENTIAL

DocuSign Envelope ID: DF128457-4CAC-49A9-8691-F183BE68FACB

and the same Addendum. Facsimile and PDF signatures shall be the equivalent of original signatures, and counterpart signatures can be delivered by hand delivery, facsimile, or as attachments to an email transmission.

      6.     <u>Modification</u>. This Addendum cannot be altered, amended, modified or otherwise changed in any respect whatsoever except by a writing duly executed by each of the Parties to this Addendum.

      7.     <u>No Construction Against Drafting Party</u>. The Parties agree that this Addendum was jointly negotiated and jointly drafted by the Parties and their respective attorneys, and that it shall not be interpreted or construed in favor of, or against any Party on the ground that said Party's attorney drafted this Agreement.

      8.     <u>Choice of Law</u>. This Addendum is entered into pursuant to, and shall be construed, interpreted, governed, and enforced in accordance with, the laws of the State of California.

      9.     <u>Effective Date</u>. The Effective Date of this Addendum shall be the date on which the last Party signs, dates, and delivers the Addendum to the other Parties.

<em>(Signature page follows)</em>

3.

ADDENDUM TO BENJAMIN BOYER TRUST'S AML BITCOIN ASSET PURCHASE<br>AGREEMENTS<br>CONFIDENTIAL

DocuSign Envelope ID: DF128457-4CAC-49A9-8691-F183BE68FACB

IN WITNESS WHEREOF, the undersigned have executed this Addendum.

BENJAMIN BOYER TRUST                    JAPHETH DILLMAN, an Individual

By: _Benjamin Boyer_____        _Japheth Dillman_____

Its: __Trustee_____

Dated: January _1/8/2019_, 2019         Dated: January _1/9/2019_, 2019

4.

ADDENDUM TO BENJAMIN BOYER TRUST'S AML BITCOIN ASSET PURCHASE
AGREEMENTS
CONFIDENTIAL

# EXHIBIT D

## ASSET PURCHASE AGREEMENT

**THIS ASSET PURCHASE AGREEMENT** (*"Agreement"*) is made and executed as of the 13 ᵗʰ day of December 2018 (*"Effective Date"*) by and among the members of the Boyer Family Trust (*"Seller"*), and Japheth Dillman, an individual (*"Purchaser"*) located at 3563 Pierce Street, San Francisco, CA 94123.

## RECITALS

A. SELLER is in the business of investing in various markets, currencies, stocks, and the like and is made up of various member parties and owns certain AML Bitcoin tokens.

B. PURCHASER is an individual who desires to purchase AML Bitcoin tokens.

C. Seller desires to sell to Purchaser, and Purchaser desires to purchase from Seller, the assets of Seller, as more fully described herein.

**NOW, THEREFORE,** in consideration of, and in reliance upon, the mutual covenants, agreements, representations and warranties herein contained, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto, intending to be legally bound, do hereby agree as follows:

1. Sale and Purchase of Assets; Assumed Liabilities.

    (a)  Assets to be Acquired. Seller agrees to sell, convey, transfer, assign and deliver to Purchaser, and Purchaser agrees to purchase, acquire and accept from Seller, certain assets of the Business set forth as follows (collectively, the *"Purchased Assets"*):

        (i)  *"AML Token Inventory"*, which shall mean [1,486,283] AML tokens in possession of the Seller

    (b)  Excluded Assets. There are no excluded assets contemplated by the Parties.

    (c)  Assumed Liabilities. Purchaser will not assume any liabilities of Seller. Purchaser does not assume or agree to be responsible for any debts, obligations, liabilities or expenses of Seller whatsoever.

2. Purchase Price; Payment.

    (a)  The purchase price (*"Purchase Price"*) for the Purchased Assets and other rights acquired herein shall be $1,486,283 and is based upon and agreed value between the Purchaser and Seller of $1.00 per token.

    (b)  The Purchase Price shall be delivered to Seller at Closing via wire transfer to the Seller's bank:
Boyer Family Trust
TO: PRIVATE BANK SVB SJ
3003 TASMAN DRIVE, SANTA CLARA, CA 95054
ROUTING & TRANSIT #: 121145145
SWIFT CODE: SVBKUS6S
FOR CREDIT OF:
CREDIT ACCOUNT #: 1000021046

3. Liabilities of Seller. This Agreement provides for Purchaser to acquire the Purchased Assets from Seller. Further, it is the intent of the parties that Purchaser shall not assume nor become liable for, directly or indirectly, and Seller does not intend to sell, assign, or otherwise transfer, convey or create any liability (by agreement or by operation of law) in Purchaser with respect to any liability or obligation that Seller now has, which Seller may have at the Closing Date, or which may thereafter accrue, other than the Assumed Liabilities. Seller shall perform, observe, pay or otherwise discharge any and all liabilities and obligations which arose, accrued or relate to any period prior to the Closing, in particular, but not limited to, the payment of any taxes. Seller agrees to indemnify, defend and hold harmless Purchaser from and against any and all liabilities and obligations that Seller now has, which Seller may have at the Closing Date or which may hereafter accrue except for the Assumed Liabilities.

4. <u>Closing</u>. The closing of this transaction (the "Closing") shall occur on or before December ____, 2018 (the "*Closing Date*"), or at such other date as may be mutually agreed upon by Seller and Purchaser. The Closing will be held remotely via the exchange of signature pages and transfer of funds, or in such manner or location as the Seller and Purchaser shall mutually agree. The Closing shall be deemed effective as of 5:00 p.m. Pacific Standard Time on the Closing Date.

5. <u>Conditions to Purchaser's Obligations.</u> Unless waived in writing by Purchaser in its sole discretion, all obligations of Purchaser under this Agreement are subject to the following conditions:

      (a)    **Representations, Warranties and Covenants**. All representations and warranties of Seller contained in this Agreement and in all documents delivered pursuant hereto or in connection with the transactions contemplated hereby shall be true and accurate as of the date when made and shall be deemed to be made again at and as of the time of the Closing and shall then be true and accurate in all respects. Seller shall have performed and complied with all covenants, agreements and conditions required by this Agreement to be performed or complied with by them prior to or on the Closing Date.

      (b)    **No Adverse Proceedings**. No material suit, action or other proceeding against any of Seller or its respective shareholders, directors or officers related to this Agreement or the Purchased Assets shall be pending or threatened before any court or governmental agency seeking to restrain or prohibit the consummation of the transactions contemplated by this Agreement.

6. <u>Conditions to Seller's Obligations</u>. Unless waived in writing by Seller, all obligations of Seller under this Agreement are subject to the fulfillment, prior to or at the Closing, of each of the following conditions:

      (a)    **Representations, Warranties and Covenants**. All representations and warranties of Purchaser contained in this Agreement and in all documents delivered pursuant hereto or in connection with the transactions contemplated hereby shall be true and accurate as of the date when made and shall be deemed to be made again at and as of the time of the Closing and shall then be true and accurate in all respects. Purchaser shall have in all material respects performed each obligation and complied with each covenant required by this Agreement to be performed or complied with by it on or prior to the Closing Date.

7. <u>Obligations of Seller</u>. At the Closing, Seller shall deliver to Purchaser the Purchased Assets free and clear of all liens, security interests and encumbrances.

8. <u>Obligations of Purchaser</u>. At the Closing, Purchaser shall pay the Purchase Price to Seller by wire transfer in immediately available funds pursuant to the wire transfer instructions set forth in Section 2(b).

9. <u>Representations and Warranties of Seller</u>. As a specific inducement for Purchaser to enter into this Agreement, Seller hereby represents and warrants to Purchaser as follows:

      (a)    **Organization**. The Seller is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Delaware. The Seller has the power and lawful authority to enter into and perform the provisions of this Agreement and all agreements and documents to be delivered by it in connection herewith.

      (b)    **Authorization**. The execution, delivery and performance of this Agreement, and all agreements and documents to be delivered by the Seller in connection herewith, have been, or will on the Closing Date have been, duly authorized by the respective members and managers of the Seller; no further entity authorization will be necessary for the performance of the Seller respective obligations hereunder or thereunder; and this Agreement and all agreements and documents to be delivered by the Seller in connection herewith, constitute valid and binding legal obligations the Seller, enforceable in accordance with their terms.



(c) **Title**. Seller has, or on the Closing Date will have, good and marketable title to all of the Purchased Assets, free and clear of all liens, pledges, security interests or other encumbrances of any nature whatsoever, whether fixed or contingent, and whether due or to become due. Title and all risk of loss with respect to the Purchased Assets shall remain exclusively with Seller until the Closing.

(d) **Broker**. No broker or finder has acted for Seller in connection with this Agreement or the transactions contemplated hereby, and no broker or finder is entitled to any brokerage or finder's fee or other commission in respect thereof, based in any way on agreements, arrangements or understandings made by or on behalf of Seller.

(e) **Litigation**. There are no claims, actions, suits, demands or other proceedings or investigations, either administrative or judicial, pending or, to the knowledge of Seller, threatened against Seller.

10. <u>Representations and Warranties of Purchaser</u>. Purchaser represents and warrants to Seller as follows:

(a) **Authority**. Purchaser has full power and lawful authority to enter into and perform the provisions of this Agreement and all agreements and documents to be delivered by Purchaser in connection herewith.

(b) **Binding Agreement**. This Agreement and all agreements and documents to be delivered by Purchaser in connection herewith, constitute valid and binding legal obligations of Purchaser, enforceable in accordance with their terms.

(c) **Broker**. No broker or finder has acted for Purchaser in connection with this Agreement or the transactions contemplated hereby, and no broker or finder is entitled to any brokerage or finder's fee or other commission in respect thereof based in any way on agreements, arrangements or understandings made by or on behalf of Purchaser.

(c) **Sufficient Funds**. Purchaser has, as of the Effective Date and as of the Closing Date sufficient funds to pay the Purchase Price.

(e) **Litigation**. There are no claims, actions, suits, demands or other proceedings or investigations, either administrative or judicial, pending or, to the knowledge of Purchaser, threatened against Purchaser at this time.

11. <u>Indemnification; Limitations</u>.

(a) **Indemnification by Seller**. Notwithstanding the payment of the Purchase Price and the delivery of instruments of conveyance, from and after the Closing Date, Seller will indemnify, defend and save and hold the Purchaser and its officers, directors, shareholders, employees, affiliates, successors and assigns harmless from and against any and all damages, losses, costs, claims, liabilities, causes of action and expenses (including reasonable attorneys' fees) (collectively, the *"Damages"*) arising out of or resulting from, and will pay to Purchaser on demand the full amount of any sum that Purchaser may pay or become obligated to pay on account of: (i) any inaccuracy of any representation or the breach of any warranty made by Seller hereunder; (ii) any failure of Seller to duly perform or observe any term, provision, covenant, agreement or condition under this Agreement, and all agreements delivered in connection with this Agreement, on the part of Seller to be performed or observed; and (iii) any Excluded Liabilities..

(b) **Indemnification by Purchaser**. Purchaser will indemnify, defend and save and hold the Seller and its employees, affiliates, successors and assigns harmless from and against any and all Damages arising out of or resulting from, and will pay to Seller on demand the full amount of any sum that Seller may pay or become obligated to pay on account of: (i) any inaccuracy of any representation or the breach of any warranty made by Purchaser hereunder; (ii) any failure of Purchaser to duly perform or observe any term, provision, covenant, agreement or condition under this Agreement, including payment of the Assumed Liabilities, and all agreements delivered in connection with this

Agreement, on the part of Purchaser to be performed or observed; and (iii) any liability arising out of Purchaser's operation of the Business subsequent to Closing.

(c) **Absence of Investigation**. No investigation made heretofore by or on behalf of any Party shall limit or affect in any way the representations, warranties, covenants, agreements and indemnities of the other party hereunder, each of which shall survive any such investigation.

(d) **Limitations on Indemnification**. The maximum amount of damages for which either party (the "*Indemnifying Party*") shall be liable to the other party (the "*Indemnified Party*") for claims made pursuant to this Section shall be the Purchase Price; *provided*, *however*, Damages for which the Indemnified Party is seeking indemnification from the Indemnifying Party that are the direct result of a third party claim or action shall not be subject to the cap set forth herein.

(e) **Exceptions**. Notwithstanding anything to the contrary in this Agreement, claims for indemnification based on allegations of actual fraud shall not be subject to the limitations set forth in this Section.

(f) **Insurance**. The amount of any Damages for which indemnification is provided under this Section shall be net of any insurance proceeds received by the Indemnified Party as an offset of such damages (net of any costs incurred in connection with the collection thereof, including deductibles, legal and administrative costs and costs of investigation).

(g) **No Waiver**. The closing of the transactions contemplated by this Agreement shall not constitute a waiver by any party of its rights to indemnification hereunder, regardless of whether the party claiming the right to indemnification has knowledge of the breach, violation or failure of condition constituting the basis of the claim at or before the date hereof, and regardless of whether such breach, violation, or failure is deemed to be material.

12. <u>Survival of Representations, Warranties, Agreements and Covenants</u>. All representations and warranties made by Seller and Purchaser hereunder in connection with the transactions contemplated hereby shall survive the Closing and the delivery of any instrument of transfer and conveyance until the first anniversary of the Effective Date and shall terminate. The agreement and covenants of the parties set forth in this Agreement shall survive the Closing and continue until all obligations set forth therein shall have been performed and satisfied or until such agreements and covenants shall have terminated in accordance with their terms.

13. <u>Fees and Expenses</u>. Each of the parties hereto shall pay its own expenses incident to the preparation of this Agreement and the consummation of the transactions contemplated hereby, including, but not limited to, the fees and expenses of attorneys and accountants representing such parties in connection herewith.

14. <u>Payments and Prorations</u>. All sales, use and transfer taxes, if any, payable on the Purchased Assets transferred to Purchaser shall be paid by Seller.

15. <u>Non-Disclosure and Non-Disparagement</u>

(a) Non-Disclosure

1. The Seller will (i) use reasonable efforts to maintain the confidentiality of the information and materials, whether oral, written or in any form whatsoever, of the Purchaser or other that may be reasonably understood, from legends, the nature of such information itself and/or the circumstances of such information's disclosure, to be confidential and/or proprietary thereto or to third parties to which either of them owes a duty of nondisclosure (collectively, "Confidential Information"); (ii) take reasonable action in connection therewith, including without limitation at least the action that each takes to protect the confidentiality of its comparable proprietary assets; (iii) to the extent within their respective possession and/or control, upon termination of this Agreement for any reason, immediately return to the provider thereof all Confidential Information not licensed or authorized to be used or enjoyed after termination or expiration hereof, and (iv) with respect to any person to which disclosure is contemplated, require such person to execute an agreement providing for the treatment of Confidential Information set forth in clauses (i) through (iii). The foregoing shall not require separate written agreements with employees and agents already subject to written agreements

4



substantially conforming to the requirements of this Section nor with legal counsel, certified public accountants, or other professional advisers under a professional obligation to maintain the confidences of clients. The Seller will not disclose any Confidential Information obtained with respect to the Purchaser or with respect to this Agreement, without the express written consent of Purchaser.

2.  The Purchaser will (i) use reasonable efforts to maintain the confidentiality of the information and materials, whether oral, written or in any form whatsoever, of the Seller or other that may be reasonably understood, from legends, the nature of such information itself and/or the circumstances of such information's disclosure, to be confidential and/or proprietary thereto or to third parties to which either of them owes a duty of nondisclosure (collectively, "Confidential Information"); (ii) take reasonable action in connection therewith, including without limitation at least the action that each takes to protect the confidentiality of its comparable proprietary assets; (iii) to the extent within their respective possession and/or control, upon termination of this Agreement for any reason, immediately return to the provider thereof all Confidential Information not licensed or authorized to be used or enjoyed after termination or expiration hereof, and (iv) with respect to any person to which disclosure is contemplated, require such person to execute an agreement providing for the treatment of Confidential Information set forth in clauses (i) through (iii). The foregoing shall not require separate written agreements with employees and agents already subject to written agreements substantially conforming to the requirements of this Section nor with legal counsel, certified public accountants, or other professional advisers under a professional obligation to maintain the confidences of clients. The Purchaser will not disclose any Confidential Information obtained with respect to the Seller or with respect to this Agreement, without the express written consent of Seller.

3.  Notwithstanding the foregoing, the obligation of a person to protect the confidentiality of any information or materials shall terminate as to any information or materials which: (i) are, or become, public knowledge through no act or failure to act of such person; (ii) are publicly disclosed by the proprietor thereof; (iii) are lawfully obtained without obligations of confidentiality by such person from a third party after reasonable inquiry regarding the authority of such third party to possess and divulge the same; (iv) are independently developed by such person from sources or through persons that such person can demonstrate had no access to Confidential Information; or (v) are lawfully known by such person at the time of disclosure other than by reason of discussions with or disclosures by the Seller or Purchaser (as appropriate).

(b)    Non-Disparagement. From and after the Effective Date / Closing Date of this Agreement, Seller agrees not to make any statement that is intended to become public, or that should reasonably be expected to become public, and that criticizes, ridicules, disparages or is otherwise derogatory of the Purchaser or parties affiliated with the Purchaser. From and after the Effective Date / Closing Date of this Agreement, Purchaser agrees not to make any statement that is intended to become public, or that should reasonably be expected to become public, and that criticizes, ridicules, disparages or is otherwise derogatory of the Seller or parties affiliated with the Seller.

For purposes of this Section, "disparage" shall mean any negative statement, whether written or oral, about Purchaser or parties affiliated with the Purchaser. With respect to Purchaser, "affiliated with" means Block Bits Capital LLC, its managers, officers, members, and owners. With respect to Seller, "affiliated with" means the Seller, its managers, officers, members, and beneficial owners.

If Seller violates this provision, Purchaser will be entitled to compensation of $500,000 as well as attorney's fees and costs related to any efforts Purchaser is required to make to rectify such disparaging conduct.

The parties agree and acknowledge that this Section 15 is a material term of this Agreement, the absence of which would have resulted in the Company refusing to enter into this Agreement.

The obligations of the Parties under this Section 15 shall continue and survive the Closing and shall remain binding for a period of two (2) years from the Effective Date.

5

16. Notices. Any notice required or permitted to be given under this Agreement shall be in writing and shall be sufficiently delivered if sent by registered or certified mail, return receipt requested, postage prepaid, addressed as follows:

    (a)   If to any of the Seller to:

              Benjamin Boyer
              16011 Grandview Ave
              Monte Sereno, CA 95030

              With a copy to:

              Michael Heath
              Gunderson Dettmer
              660 Venice Boulevard
              Venice, CA 90291

    (b)   If to Purchaser, to:

              Japheth Dillman
              3563 Pierce Street
              San Francisco, CA 94123

With a copy to:

              Shailendra Maheshwari, Esq.
              1200 17th Street, NW
              Washington, DC 20006

17. Binding Effect. This Agreement shall be binding upon and shall inure to the benefit of and be enforceable by the respective parties hereto, their personal representatives, successors and assigns; provided, however, that none of the parties may assign its rights or obligations under this Agreement without the other parties' prior written consent.

18. Governing Law; Jurisdiction and Venue. This Agreement shall be deemed to have been entered into and to be performed in the State of California and shall be governed and construed and enforced in accordance with the laws of such state. Jurisdiction and venue for any action or claim arising hereunder shall lie exclusively in the Federal Courts of the Northern District of California, and each party irrevocably consents to the personal and subject matter jurisdiction of that court.

19. Entire Agreement; No Oral Modification. This Agreement contains the entire understanding of the parties with respect to the subject matter hereof and supersedes all prior oral and written understandings relating thereto. No modification or termination of this Agreement, nor any waiver of any provision hereof shall be valid or effective unless in writing and signed by the party or parties sought to be charged therewith. No waiver of any breach or condition of this Agreement shall be deemed to be a waiver of any other or subsequent breach or condition, whether of like or different nature.

20. Enforcement. Seller acknowledges and agrees that the Purchased Assets are unique, that damages for any failure of Seller to transfer and convey said Purchased Assets to Purchaser pursuant to this Agreement would be an inadequate remedy, and that Purchaser shall be entitled to enforcement of this Agreement by judgment for specific performance, as well as for damages as identified, but not limited to, previous sections of the Agreement.

21. Section Headings. The section headings set forth herein are included for convenience of reference only and shall not affect the meaning or construction of any provision of this Agreement.

22. No Third Party Beneficiaries. Nothing in this Agreement is intended nor will it be construed to give any person other than the parties hereto and their respective successors and permitted assigns, any right, remedy or claim under or in respect of this Agreement or any provisions hereof.

23. <u>Severability</u>. Any term or provision of this Agreement which is invalid or unenforceable shall be ineffective to the extent of such invalidity or unenforceability without rendering invalid or unenforceable the remaining terms and provisions of this Agreement.

24. <u>Counterparts</u>. This Agreement may be executed in any number of counterparts, including by facsimile or electronic signature included in an Adobe PDF file, each of which shall, for all purposes, be deemed an original, but all of which shall constitute one and the same instrument.

*[signature page follows]*

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the dates set forth below their respective signatures.

SELLER:                                    PURCHASER:

Boyer Family Trust                         Japheth Dillman

By: _____                By: _____

Name: Benjamin Boyer                       Name: Japheth Dillman

Title:  Member                             Title:

8

# EXHIBIT E

## ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT ("*Agreement*") is made and executed as of the 13 th day of December, 2018 ("*Effective Date*") by and among the members of **Block Bits AML Holdings LLC** ("*AML Holdings*" or "*Seller*"), located at 3563 Pierce Street, San Francisco, CA 94123 and Japheth Dillman, an individual ("*Purchaser*").

## RECITALS

A. SELLER is in the business of investing in various markets, currencies, stocks, and the like and is made up of various member parties, including, for the purposes of this Agreement, the Boyer Family Trust, who have deposited funds into AML Holdings.

B. PURCHASER is an individual and is the managing member of AML Holdings.

C. Seller desires to sell to Purchaser, and Purchaser desires to purchase from Seller, the assets of Seller, as more fully described herein.

NOW, THEREFORE, in consideration of, and in reliance upon, the mutual covenants, agreements, representations and warranties herein contained, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto, intending to be legally bound, do hereby agree as follows:

1. Sale and Purchase of Assets; Assumed Liabilities.

    (a)  Assets to be Acquired. Seller agrees to sell, convey, transfer, assign and deliver to Purchaser, and Purchaser agrees to purchase, acquire and accept from Seller, certain assets of the Business set forth as follows (collectively, the "*Purchased Assets*"):

        (i)  "*AML Token Inventory*", which shall mean [750,000] AML tokens in possession of the Seller

    (b)  Excluded Assets. There are no excluded assets contemplated by the Parties.

    (c)  Assumed Liabilities. Purchaser will not assume any liabilities of Seller. Purchaser does not assume or agree to be responsible for any debts, obligations, liabilities or expenses of Seller whatsoever.

2. Purchase Price; Payment.

    (a)  The purchase price ("*Purchase Price*") for the Purchased Assets and other rights acquired herein shall be $1,125,000 and is based upon and agreed value between the Purchaser and Seller of $1.50 per token.

    (b)  The Purchase Price shall be delivered to Seller at Closing via wire transfer to the Seller's bank :
Boyer Family Trust
TO: PRIVATE BANK SVB SJ
3003 TASMAN DRIVE, SANTA CLARA, CA 95054
ROUTING & TRANSIT #: 121145145
SWIFT CODE: SVBKUS6S
FOR CREDIT OF:
CREDIT ACCOUNT #: 1000021046

3. Liabilities of Seller. This Agreement provides for Purchaser to acquire the Purchased Assets from Seller. Further, it is the intent of the parties that Purchaser shall not assume nor become liable for, directly or indirectly, and Seller does not intend to sell, assign, or otherwise transfer, convey or create any liability (by agreement or by operation of law) in Purchaser with respect to any liability or obligation that Seller now has, which Seller may have at the Closing Date, or which may thereafter accrue, other than the Assumed Liabilities. Seller shall perform, observe, pay or otherwise discharge any and all liabilities and obligations which arose, accrued or relate to any period prior to the



Closing, in particular, but not limited to, the payment of any taxes. Seller agrees to indemnify, defend and hold harmless Purchaser from and against any and all liabilities and obligations that Seller now has, which Seller may have at the Closing Date or which may hereafter accrue except for the Assumed Liabilities.

4. Closing. The closing of this transaction (the "Closing") shall occur on or before December ____, 2018 (the "*Closing Date*"), or at such other date as may be mutually agreed upon by Seller and Purchaser. The Closing will be held remotely via the exchange of signature pages and transfer of funds, or in such manner or location as the Seller and Purchaser shall mutually agree. The Closing shall be deemed effective as of 5:00 p.m. Pacific Standard Time on the Closing Date.

5. Conditions to Purchaser's Obligations. Unless waived in writing by Purchaser in its sole discretion, all obligations of Purchaser under this Agreement are subject to the following conditions:

      (a)    **Representations, Warranties and Covenants.** All representations and warranties of Seller contained in this Agreement and in all documents delivered pursuant hereto or in connection with the transactions contemplated hereby shall be true and accurate as of the date when made and shall be deemed to be made again at and as of the time of the Closing and shall then be true and accurate in all respects. Seller shall have performed and complied with all covenants, agreements and conditions required by this Agreement to be performed or complied with by them prior to or on the Closing Date.

      (b)    **No Adverse Proceedings.** No material suit, action or other proceeding against any of Seller or its respective shareholders, directors or officers related to this Agreement or the Purchased Assets shall be pending or threatened before any court or governmental agency seeking to restrain or prohibit the consummation of the transactions contemplated by this Agreement.

6. Conditions to Seller's Obligations. Unless waived in writing by Seller, all obligations of Seller under this Agreement are subject to the fulfillment, prior to or at the Closing, of each of the following conditions:

      (a)    **Representations, Warranties and Covenants.** All representations and warranties of Purchaser contained in this Agreement and in all documents delivered pursuant hereto or in connection with the transactions contemplated hereby shall be true and accurate as of the date when made and shall be deemed to be made again at and as of the time of the Closing and shall then be true and accurate in all respects. Purchaser shall have in all material respects performed each obligation and complied with each covenant required by this Agreement to be performed or complied with by it on or prior to the Closing Date.

7. Obligations of Seller. At the Closing, Seller shall deliver to Purchaser the Purchased Assets free and clear of all liens, security interests and encumbrances.

8. Obligations of Purchaser. At the Closing, Purchaser shall pay the Purchase Price to Seller by wire transfer in immediately available funds pursuant to the wire transfer instructions set forth in Section 2(b).

9. Representations and Warranties of Seller. As a specific inducement for Purchaser to enter into this Agreement, Seller hereby represents and warrants to Purchaser as follows:

      (a)    **Organization.** The Seller is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Delaware. The Seller has the power and lawful authority to enter into and perform the provisions of this Agreement and all agreements and documents to be delivered by it in connection herewith.

      (b)    **Authorization.** The execution, delivery and performance of this Agreement, and all agreements and documents to be delivered by the Seller in connection herewith, have been, or will on the Closing Date have been, duly authorized by the respective members and managers of the Seller; no further entity authorization will be necessary for the performance of the Seller respective obligations hereunder or thereunder; and this Agreement and all agreements and documents to be delivered by



the Seller in connection herewith, constitute valid and binding legal obligations the Seller, enforceable in accordance with their terms.

(c) **Title.** Seller has, or on the Closing Date will have, good and marketable title to all of the Purchased Assets, free and clear of all liens, pledges, security interests or other encumbrances of any nature whatsoever, whether fixed or contingent, and whether due or to become due. Title and all risk of loss with respect to the Purchased Assets shall remain exclusively with Seller until the Closing.

(d) **Broker.** No broker or finder has acted for Seller in connection with this Agreement or the transactions contemplated hereby, and no broker or finder is entitled to any brokerage or finder's fee or other commission in respect thereof, based in any way on agreements, arrangements or understandings made by or on behalf of Seller.

(e) **Litigation.** There are no claims, actions, suits, demands or other proceedings or investigations, either administrative or judicial, pending or, to the knowledge of Seller, threatened against Seller.

10. <u>Representations and Warranties of Purchaser</u>. Purchaser represents and warrants to Seller as follows:

(a) **Authority.** Purchaser has full power and lawful authority to enter into and perform the provisions of this Agreement and all agreements and documents to be delivered by Purchaser in connection herewith.

(b) **Binding Agreement.** This Agreement and all agreements and documents to be delivered by Purchaser in connection herewith, constitute valid and binding legal obligations of Purchaser, enforceable in accordance with their terms.

(c) **Broker.** No broker or finder has acted for Purchaser in connection with this Agreement or the transactions contemplated hereby, and no broker or finder is entitled to any brokerage or finder's fee or other commission in respect thereof based in any way on agreements, arrangements or understandings made by or on behalf of Purchaser.

(c) **Sufficient Funds.** Purchaser has, as of the Effective Date and as of the Closing Date sufficient funds to pay the Purchase Price.

(e) **Litigation.** There are no claims, actions, suits, demands or other proceedings or investigations, either administrative or judicial, pending or, to the knowledge of Purchaser, threatened against Purchaser at this time.

11. <u>Indemnification; Limitations</u>.

(a) **Indemnification by Seller.** Notwithstanding the payment of the Purchase Price and the delivery of instruments of conveyance, from and after the Closing Date, Seller will indemnify, defend and save and hold the Purchaser and its officers, directors, shareholders, employees, affiliates, successors and assigns harmless from and against any and all damages, losses, costs, claims, liabilities, causes of action and expenses (including reasonable attorneys' fees) (collectively, the "*Damages*") arising out of or resulting from, and will pay to Purchaser on demand the full amount of any sum that Purchaser may pay or become obligated to pay on account of: (i) any inaccuracy of any representation or the breach of any warranty made by Seller hereunder; (ii) any failure of Seller to duly perform or observe any term, provision, covenant, agreement or condition under this Agreement, and all agreements delivered in connection with this Agreement, on the part of Seller to be performed or observed; and (iii) any Excluded Liabilities..

(b) **Indemnification by Purchaser.** Purchaser will indemnify, defend and save and hold the Seller and its employees, affiliates, successors and assigns harmless from and against any and all Damages arising out of or resulting from, and will pay to Seller on demand the full amount of any sum that Seller may pay or become obligated to pay on account of: (i) any inaccuracy of any representation or

3



the breach of any warranty made by Purchaser hereunder; (ii) any failure of Purchaser to duly perform or observe any term, provision, covenant, agreement or condition under this Agreement, including payment of the Assumed Liabilities, and all agreements delivered in connection with this Agreement, on the part of Purchaser to be performed or observed; and (iii) any liability arising out of Purchaser's operation of the Business subsequent to Closing.

(c) **Absence of Investigation**. No investigation made heretofore by or on behalf of any Party shall limit or affect in any way the representations, warranties, covenants, agreements and indemnities of the other party hereunder, each of which shall survive any such investigation.

(d) **Limitations on Indemnification**. The maximum amount of damages for which either party (the "*Indemnifying Party*") shall be liable to the other party (the "*Indemnified Party*") for claims made pursuant to this Section shall be the Purchase Price; *provided, however*, Damages for which the Indemnified Party is seeking indemnification from the Indemnifying Party that are the direct result of a third party claim or action shall not be subject to the cap set forth herein.

(e) **Exceptions**. Notwithstanding anything to the contrary in this Agreement, claims for indemnification based on allegations of actual fraud shall not be subject to the limitations set forth in this Section.

(f) **Insurance**. The amount of any Damages for which indemnification is provided under this Section shall be net of any insurance proceeds received by the Indemnified Party as an offset of such damages (net of any costs incurred in connection with the collection thereof, including deductibles, legal and administrative costs and costs of investigation).

(g) **No Waiver**. The closing of the transactions contemplated by this Agreement shall not constitute a waiver by any party of its rights to indemnification hereunder, regardless of whether the party claiming the right to indemnification has knowledge of the breach, violation or failure of condition constituting the basis of the claim at or before the date hereof, and regardless of whether such breach, violation, or failure is deemed to be material.

12. <u>Survival of Representations, Warranties, Agreements and Covenants</u>. All representations and warranties made by Seller and Purchaser hereunder in connection with the transactions contemplated hereby shall survive the Closing and the delivery of any instrument of transfer and conveyance until the first anniversary of the Effective Date and shall terminate. The agreement and covenants of the parties set forth in this Agreement shall survive the Closing and continue until all obligations set forth therein shall have been performed and satisfied or until such agreements and covenants shall have terminated in accordance with their terms.

13. <u>Fees and Expenses</u>. Each of the parties hereto shall pay its own expenses incident to the preparation of this Agreement and the consummation of the transactions contemplated hereby, including, but not limited to, the fees and expenses of attorneys and accountants representing such parties in connection herewith.

14. <u>Payments and Prorations</u>. All sales, use and transfer taxes, if any, payable on the Purchased Assets transferred to Purchaser shall be paid by Seller.

15. <u>Non-Disclosure and Non-Disparagement</u>

(a) Non-Disclosure

1. The Seller will (i) use reasonable efforts to maintain the confidentiality of the information and materials, whether oral, written or in any form whatsoever, of the Purchaser or other that may be reasonably understood, from legends, the nature of such information itself and/or the circumstances of such information's disclosure, to be confidential and/or proprietary thereto or to third parties to which either of them owes a duty of nondisclosure (collectively, "Confidential Information"); (ii) take reasonable action in connection therewith, including without limitation at least the action that each takes to protect the confidentiality of its comparable proprietary assets; (iii) to the extent within their respective possession and/or control, upon termination of this Agreement for any reason, immediately return to the provider thereof all Confidential Information not licensed or authorized to be used or enjoyed after termination or expiration hereof, and (iv) with respect to any person to which disclosure



is contemplated, require such person to execute an agreement providing for the treatment of Confidential Information set forth in clauses (i) through (iii). The foregoing shall not require separate written agreements with employees and agents already subject to written agreements substantially conforming to the requirements of this Section nor with legal counsel, certified public accountants, or other professional advisers under a professional obligation to maintain the confidences of clients. The Seller will not disclose any Confidential Information obtained with respect to the Purchaser or with respect to this Agreement, without the express written consent of Purchaser.

2.  The Purchaser will (i) use reasonable efforts to maintain the confidentiality of the information and materials, whether oral, written or in any form whatsoever, of the Seller or other that may be reasonably understood, from legends, the nature of such information itself and/or the circumstances of such information's disclosure, to be confidential and/or proprietary thereto or to third parties to which either of them owes a duty of nondisclosure (collectively, "Confidential Information"); (ii) take reasonable action in connection therewith, including without limitation at least the action that each takes to protect the confidentiality of its comparable proprietary assets; (iii) to the extent within their respective possession and/or control, upon termination of this Agreement for any reason, immediately return to the provider thereof all Confidential Information not licensed or authorized to be used or enjoyed after termination or expiration hereof, and (iv) with respect to any person to which disclosure is contemplated, require such person to execute an agreement providing for the treatment of Confidential Information set forth in clauses (i) through (iii). The foregoing shall not require separate written agreements with employees and agents already subject to written agreements substantially conforming to the requirements of this Section nor with legal counsel, certified public accountants, or other professional advisers under a professional obligation to maintain the confidences of clients. The Purchaser will not disclose any Confidential Information obtained with respect to the Seller or with respect to this Agreement, without the express written consent of Seller.

3.  Notwithstanding the foregoing, the obligation of a person to protect the confidentiality of any information or materials shall terminate as to any information or materials which: (i) are, or become, public knowledge through no act or failure to act of such person; (ii) are publicly disclosed by the proprietor thereof; (iii) are lawfully obtained without obligations of confidentiality by such person from a third party after reasonable inquiry regarding the authority of such third party to possess and divulge the same; (iv) are independently developed by such person from sources or through persons that such person can demonstrate had no access to Confidential Information; or (v) are lawfully known by such person at the time of disclosure other than by reason of discussions with or disclosures by the Seller or Purchaser (as appropriate).

(b)  Non-Disparagement. From and after the Effective Date / Closing Date of this Agreement, Seller agrees not to make any statement that is intended to become public, or that should reasonably be expected to become public, and that criticizes, ridicules, disparages or is otherwise derogatory of the Purchaser or parties affiliated with the Purchaser. From and after the Effective Date / Closing Date of this Agreement, Purchaser agrees not to make any statement that is intended to become public, or that should reasonably be expected to become public, and that criticizes, ridicules, disparages or is otherwise derogatory of the Seller or parties affiliated with the Seller.

For purposes of this Section, "disparage" shall mean any negative statement, whether written or oral, about Purchaser or parties affiliated with the Purchaser. With respect to Purchaser, "affiliated with" means Block Bits Capital LLC, its managers, officers, members, and owners. With respect to Seller, "affiliated with" means the Seller, its managers, officers, members, and beneficial owners.

If Seller violates this provision, Purchaser will be entitled to compensation of $500,000 as well as attorney's fees and costs related to any efforts Purchaser is required to make to rectify such disparaging conduct.

The parties agree and acknowledge that this Section 15 is a material term of this Agreement, the absence of which would have resulted in the Company refusing to enter into this Agreement.



The obligations of the Parties under this Section 15 shall continue and survive the Closing and shall remain binding for a period of two (2) years from the Effective Date.

16. <u>Notices</u>. Any notice required or permitted to be given under this Agreement shall be in writing and shall be sufficiently delivered if sent by registered or certified mail, return receipt requested, postage prepaid, addressed as follows:

(a)    <u>If to any of the Seller to:</u>

Benjamin Boyer
16011 Grandview Ave
Monte Sereno, CA 95030

<u>With a copy to:</u>

Michael Heath
Gunderson Dettmer
660 Venice Boulevard
Venice, CA 90291

(b)    <u>If to Purchaser, to:</u>

Japheth Dillman
3563 Pierce Street
San Francisco, CA 94123

<u>With a copy to:</u>

Shailendra Maheshwari, Esq.
1200 17th Street, NW
Washington, DC 20006

17. <u>Binding Effect</u>. This Agreement shall be binding upon and shall inure to the benefit of and be enforceable by the respective parties hereto, their personal representatives, successors and assigns; provided, however, that none of the parties may assign its rights or obligations under this Agreement without the other parties' prior written consent.

18. <u>Governing Law; Jurisdiction and Venue</u>. This Agreement shall be deemed to have been entered into and to be performed in the State of California and shall be governed and construed and enforced in accordance with the laws of such state. Jurisdiction and venue for any action or claim arising hereunder shall lie exclusively in the Federal Courts of the Northern District of California, and each party irrevocably consents to the personal and subject matter jurisdiction of that court.

19. <u>Entire Agreement; No Oral Modification</u>. This Agreement contains the entire understanding of the parties with respect to the subject matter hereof and supersedes all prior oral and written understandings relating thereto. No modification or termination of this Agreement, nor any waiver of any provision hereof shall be valid or effective unless in writing and signed by the party or parties sought to be charged therewith. No waiver of any breach or condition of this Agreement shall be deemed to be a waiver of any other or subsequent breach or condition, whether of like or different nature.

20. <u>Enforcement</u>. Seller acknowledges and agrees that the Purchased Assets are unique, that damages for any failure of Seller to transfer and convey said Purchased Assets to Purchaser pursuant to this Agreement would be an inadequate remedy, and that Purchaser shall be entitled to enforcement of this Agreement by judgment for specific performance, as well as for damages as identified, but not limited to, previous sections of the Agreement.

21. <u>Section Headings</u>. The section headings set forth herein are included for convenience of reference only and shall not affect the meaning or construction of any provision of this Agreement.

22. No Third Party Beneficiaries. Nothing in this Agreement is intended nor will it be construed to give any person other than the parties hereto and their respective successors and permitted assigns, any right, remedy or claim under or in respect of this Agreement or any provisions hereof.

23. Severability. Any term or provision of this Agreement which is invalid or unenforceable shall be ineffective to the extent of such invalidity or unenforceability without rendering invalid or unenforceable the remaining terms and provisions of this Agreement.

24. Counterparts. This Agreement may be executed in any number of counterparts, including by facsimile or electronic signature included in an Adobe PDF file, each of which shall, for all purposes, be deemed an original, but all of which shall constitute one and the same instrument.

*[signature page follows]*

7

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the dates set forth below their respective signatures.

SELLER:                                              PURCHASER:

Block Bits AML Holding LLC                           **Japheth Dillman**

By: _____                        By: _____
Name: Benjamin Boyer                                 Name: Japheth Dillman
Title:  Member                                       Title:

8

# EXHIBIT F



DocuSign Envelope ID: DF128457-4CAC-49A9-8691-F183BE68FACB

## ADDENDUM TO BOYER FAMILY TRUST'S AML BITCOIN ASSET PURCHASE AGREEMENTS

This addendum ("Addendum") is made this $\underset{\text{1/9/2019}}{\_\_\_\_}$ day of January, 2019, by and between the Boyer Family Trust (the "Seller"), and Japheth Dillman, an individual ("Purchaser") located at 3563 Pierce Street, San Francisco, CA 94123.  Seller and Purchaser are sometimes referred to herein collectively as the "Parties," and individually as a "Party."

### RECITALS

A.    On December 13, 2018, Seller and Purchaser executed two asset purchase agreements (the "Asset Purchase Agreements"), whereby Seller agreed to sell, and Purchaser agreed to purchase from Seller, a total of 2,236,283 AML Bitcoin tokens.

B.    Under the terms of the Asset Purchase Agreements, Purchaser had until December 31, 2018, (the "Closing Date") to transfer a total purchase price of $2,611,283 to Seller's bank account for the purchase of Seller's 2,236,283 AML Bitcoin tokens; Seller also had until the Closing Date to deliver the 2,236,283 AML Bitcoin tokens to Purchaser.

C.    Seller delivered the 2,236,283 AML Bitcoin tokens due under the Asset Purchase Agreements to Purchaser before the Closing Date; Purchaser failed to transfer the purchase price of $2,611,283 to Seller's bank account by the Closing Date.

D.    As of the date of this Addendum, Purchaser has yet to transfer the purchase price of $2,611,283 to Seller's bank account.

NOW, THEREFORE, for good and valuable consideration, Seller and Purchaser each hereby agree as follows:

1.

ADDENDUM TO BOYER FAMILY TRUST'S AML BITCOIN ASSET PURCHASE
AGREEMENTS
CONFIDENTIAL

DocuSign Envelope ID: DF128457-4CAC-49A9-8691-F183BE68FACB

1.    Closing Date Extension.  Seller agrees to extend the Closing Date from December 31, 2018, up to, and including, January 14, 2019.  In exchange, Purchaser agrees to the following:

> a.  Daily Interest Payment: Purchaser agrees to pay daily interest, at a rate of five (5) percent per annum, on the outstanding purchase price of $2,611,283, for each day Seller extends the Closing Date between December 31, 2018, and January 14, 2019;

> b.  Legal Fees: Purchaser also agrees to pay Seller $250 per day (for Purchaser's legal fees) for each day Seller extends the Closing Date between December 31, 2018, and January 14, 2019.

2.    Effectiveness of the Addendum.  This Addendum shall become effective, without conditions, on the Effective Date of this Agreement.

3.    Cooperation.  The Parties to this Addendum agree that each Party shall cooperate fully in the execution of any and all other documents and in the completion of any additional actions that may be necessary or appropriate to give full force and effect to this Addendum.

4.    Successor, Assigns and Beneficiaries.  This Addendum is intended to bind and inure to the benefit of and to be enforceable by all Parties, and each Party's respective successors, assigns, heirs, executors, and administrators.  The Parties do not intend to convey any benefits of this Addendum to any third-party.

5.    Counterparts.  This Addendum may be executed in multiple counterparts by the different Parties hereto, and all of said counterparts, taken together, shall constitute one

2.

ADDENDUM TO BOYER FAMILY TRUST'S AML BITCOIN ASSET PURCHASE
AGREEMENTS
CONFIDENTIAL

DocuSign Envelope ID: DF128457-4CAC-49A9-8691-F183BE68FACB

and the same Addendum. Facsimile and PDF signatures shall be the equivalent of original signatures, and counterpart signatures can be delivered by hand delivery, facsimile, or as attachments to an email transmission.

6. <u>Modification</u>. This Addendum cannot be altered, amended, modified or otherwise changed in any respect whatsoever except by a writing duly executed by each of the Parties to this Addendum.

7. <u>No Construction Against Drafting Party</u>. The Parties agree that this Addendum was jointly negotiated and jointly drafted by the Parties and their respective attorneys, and that it shall not be interpreted or construed in favor of, or against any Party on the ground that said Party's attorney drafted this Agreement.

8. <u>Choice of Law</u>. This Addendum is entered into pursuant to, and shall be construed, interpreted, governed, and enforced in accordance with, the laws of the State of California.

9. <u>Effective Date</u>. The Effective Date of this Addendum shall be the date on which the last Party signs, dates, and delivers the Addendum to the other Parties.

*(Signature page follows)*

ADDENDUM TO BOYER FAMILY TRUST'S AML BITCOIN ASSET PURCHASE
AGREEMENTS
CONFIDENTIAL

DocuSign Envelope ID: DF128457-4CAC-49A9-8691-F183BE68FACB

IN WITNESS WHEREOF, the undersigned have executed this Addendum.

BOYER FAMILY TRUST                    JAPHETH DILLMAN, an Individual

By: *Benjamin Boyer*                   *Japheth Dillman*
    BD5BF158A0CC480...                      993031365D064B4...
    Trustee
Its: _____

Dated: January _1/8/2019_, 2019         Dated: January _1/9/2019_, 2019

4.

ADDENDUM TO BOYER FAMILY TRUST'S AML BITCOIN ASSET PURCHASE
AGREEMENTS
CONFIDENTIAL

**CM-010**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Jonathan A. Patchen (SBN 237346)<br>Taylor & Patchen, LLP<br>One Ferry Building, Suite 355<br>San Francisco, CA 94111<br>TELEPHONE NO.: (415)788-8200     FAX NO.: (415)788-8208<br>ATTORNEY FOR *(Name):* Benjamin Boyer, Trustee of Benjamin Boyer Trust & Boy | FOR COURT USE ONLY<br><br>**FILED**<br>*San Francisco County Superior Court*<br><br>APR 10 2019<br><br>CLERK OF THE COURT<br>BY: Sandra Solis<br>Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  San Francisco
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS: 400 McAllister Street
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME:

CASE NAME:
Boyer v. Dillman

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER:<br>**CGC-19-575158** |
|---|---|---|
| ✓ Unlimited ☐ Limited<br>(Amount    (Amount<br>demanded    demanded is<br>exceeds $25,000)   $25,000 or less) | ☐ Counter   ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation |
|---|---|---|
| ☐ Auto (22) | ☐ Breach of contract/warranty (06) | **(Cal. Rules of Court, rules 3.400–3.403)** |
| ☐ Uninsured motorist (46) | ☐ Rule 3.740 collections (09) | ☐ Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property** | ☐ Other collections (09) | ☐ Construction defect (10) |
| **Damage/Wrongful Death) Tort** | ☐ Insurance coverage (18) | ☐ Mass tort (40) |
| ☐ Asbestos (04) | ✓ Other contract (37) | ☐ Securities litigation (28) |
| ☐ Product liability (24) | **Real Property** | ☐ Environmental/Toxic tort (30) |
| ☐ Medical malpractice (45) | ☐ Eminent domain/Inverse | ☐ Insurance coverage claims arising from the |
| ☐ Other PI/PD/WD (23) | condemnation (14) | above listed provisionally complex case |
| **Non-PI/PD/WD (Other) Tort** | ☐ Wrongful eviction (33) | types (41) |
| ☐ Business tort/unfair business practice (07) | ☐ Other real property (26) | **Enforcement of Judgment** |
| ☐ Civil rights (08) | **Unlawful Detainer** | ☐ Enforcement of judgment (20) |
| ☐ Defamation (13) | ☐ Commercial (31) | **Miscellaneous Civil Complaint** |
| ☐ Fraud (16) | ☐ Residential (32) | ☐ RICO (27) |
| ☐ Intellectual property (19) | ☐ Drugs (38) | ☐ Other complaint *(not specified above)* (42) |
| ☐ Professional negligence (25) | **Judicial Review** | **Miscellaneous Civil Petition** |
| ☐ Other non-PI/PD/WD tort (35) | ☐ Asset forfeiture (05) | ☐ Partnership and corporate governance (21) |
| **Employment** | ☐ Petition re: arbitration award (11) | ☐ Other petition *(not specified above)* (43) |
| ☐ Wrongful termination (36) | ☐ Writ of mandate (02) | |
| ☐ Other employment (15) | ☐ Other judicial review (39) | |

2. This case ☐ is   ✓ is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties      d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel   e. ☐ Coordination with related actions pending in one or more courts
       issues that will be time-consuming to resolve           in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence         f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ✓ monetary   b. ☐ nonmonetary; declaratory or injunctive relief   c. ☐ punitive
4. Number of causes of action *(specify):* four
5. This case ☐ is   ✓ is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 4/9/2019
Jonathan A. Patchen                                    ▶ Jonathan A. Patchen / YX
_____                                  _____
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |






CM-010

# INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)—Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute
**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non- domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non- harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition