UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Marcus Andrade and NAC Foundation, LLC, | Case No.: 2:20-cv-01021-JAD-NJK |
| Plaintiffs | |
| v. | **Order Granting Motions** <br> **for Default Judgment** |
| Japheth Dillman, et al., | [ECF Nos. 30, 49] |
| Defendants | |

When defendant Japheth Dillman and some companies that he manages failed to pay for bitcoin tokens that defendant Benjamin Boyer sold and transferred to them, Boyer sued them in California to recover what he was owed. Neither Dillman nor his companies appeared in that case, and Boyer obtained a default judgment for more than $3 million against them. Enter Marcus Andrade and his company, NAC Foundation, LLC—the plaintiffs in this action, and the creators of the digital currency underlying Boyer's California judgment. After Boyer claimed that Andrade and NAC should be on the hook for the judgment, Andrade filed this action for declarations that the plaintiffs' relationship with the Dillman defendants does not make them liable to the Dillman Defendants' clients, particularly Boyer.[1]

Boyer successfully moved to dismiss the claims against him,[2] leaving only those against Japheth Dillman; Block Bits AML Holdings, LLC; Block Bits Capital, GP; and Block Bits Capital, LLC, all of whom failed to appear and have had defaults entered against them.[3]

---

[1] ECF No. 1-1.

[2] ECF No. 44.

[3] *See* ECF No. 28 (Clerk's default against Block Bits Capital GP and Block Bits Capital LLC), 38 (Clerk's default against Block Bits AML Holdings, LLC), and 43 (Clerk's default against Dillman).

Andrade and NAC now move for default judgment against these defaulting defendants.[4]

Because the plaintiffs have demonstrated that the *Eitel v. McCool*[5] factors support the entry of default judgment against these defendants, I grant the motions in part and close this case.

### Facts established by default[6]

Before launching its digital currency—AML Bitcoin—NAC Foundation began offering AML Bitcoin tokens, which gave the token holder a right to convert the tokens into AML Bitcoin once the currency became available.[7] Boyer, individually and as a trustee of the Benjamin Boyer Trust and the Boyer Family Trust, acquired and traded hundreds of thousands of those tokens—once directly from the foundation's website[8] and several times using Block Bits, LLC as his broker.[9] Shortly thereafter, Boyer transferred large sums of those AML Bitcoin tokens to Dillman and his Block Bits entities and entered into several purchase agreements with them to sell the Dillman Defendants more of his tokens.[10] Andrade and NAC have no legal relationship to, or interest in, any of the Block Bits entities.[11] The plaintiffs are not parties to the

---

[4] ECF Nos. 30, 49. Boyer filed an opposition before he was dismissed, arguing that a default judgment would be piecemeal and premature while he actively defended the suit. ECF No. 34. His dismissal mooted those concerns.

[5] *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

[6] *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (per curiam); Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). This is an action for declaratory relief, not damages.

[7] ECF No. 1-1 at ¶¶ 13–14.

[8] *Id.* at ¶ 24.

[9] *E.g.*, *id.* at ¶¶ 25, 28, 30.

[10] *Id*. at ¶¶ 32, 35–37.

[11] *See* ECF No. 49-1 at ¶ 4 (declaration of Marcus Andrade attesting to no relationship with Block Bits GP), ¶ 5 (no relationship with Block Bits LLC), ¶¶ 6, 20 (no relationship with BB AML Holdings).

purchase agreements[12] and only learned of them about two weeks after they were entered.[13] The Dillman Defendants did not share their client information with Andrade or NAC,[14] and all communications about Boyer's tokens were with Boyer's broker, Block Bits, LLC.[15] The dealings between plaintiffs and the Dillman Defendants are governed by NAC's Terms and Conditions, which were in effect at all times relevant to this action.[16]

Boyer sued Dillman for breach of contract in the Superior Court for the County of San Francisco, California, in 2019, claiming that Dillman never paid him the amounts due under those purchase agreements.[17] Dillman defaulted, and Boyer obtained a default judgment against him in the principal amount of $3,078,787.06.[18] Boyer has "threatened to sue" the plaintiffs and "communicated to Mr. Andrade and NAC that they bore fault [for] Dillman's actions" and the judgment against Dillman.[19] NAC and Andrade deny any such responsibility and filed this action, seeking two declarations:

(1) As to Boyer—declaring invalid any claims that Andrade or NAC bears responsibility for the injuries and damages caused by Dillman and his related entities,[20] and

(2) As to the Dillman Defendants—declaring "that nothing in any contract or business relationship between those [d]efendants and either NAC or Mr. Andrade creates a duty or imposes liability on [p]laintiffs with respect to any

---

[12] ECF No. 1-1 at ¶¶ 35–36.
[13] *Id*. at ¶ 37; ECF No. 49-1 at ¶¶ 29, 31.
[14] ECF No. 49-1 at ¶ 25.
[15] *Id*. at ¶ 24.
[16] ECF No. 30-1 at ¶ 9, ECF No. 30-2.
[17] *See, e.g.*, ECF No. 49-3.
[18] ECF No. 1-1 at ¶ 38; ECF No. 49-4.
[19] ECF No. 1-1 at ¶ 39.
[20] *Id*. at ¶ 43.

3

clients/investors/customers of those Defendants, including but not limited to Mr. Boyer or the Boyer Trusts."[21]

Because the action against Boyer was dismissed,[22] I consider only whether the requested declaratory judgment against the Dillman Defendants is warranted.

## Discussion

Federal Rule of Civil Procedure 55(b)(2) permits a plaintiff to obtain default judgment from the court if the clerk previously entered default based on a defendant's failure to defend.[23] The court has discretion to enter a default judgment,[24] guided by the seven factors outlined by the Ninth Circuit in *Eitel v. McCool*:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.[25]

Because default has already been entered in this case, the court must take all of the factual allegations in the complaint as true. "[N]ecessary facts not contained in the pleadings, and claims [that] are legally insufficient, are not established by default,"[26] and the court may consider a plaintiff's additional proof of facts in order to ensure that a default judgment is appropriate.[27]

---

[21] *Id*. at ¶ 44.
[22] ECF No. 44.
[23] See Fed R. Civ. P. 55(b)(2).
[24] *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).
[25] *Eitel*, 782 F.2d at 1471–72.
[26] *Cripps v. Life Ins. Co.*, 980 F.2d 1261, 1267 (9th Cir. 1992).
[27] *See* Fed. R. Civ. P. 55(b)(2).

### A. The complaint's sufficiency and the merits of the plaintiffs' claim

I start with the most significant of the *Eitel* factors here—the second and third factors— which focus on whether the plaintiffs have stated a meritorious claim.[28] Andrade and NAC assert a single declaratory-relief claim against the Dillman Defendants, seeking a declaration that nothing in their dealings makes the plaintiffs liable to Dillman clients.[29] In Nevada, declaratory relief is available if "(1) a justiciable controversy exists between persons with adverse interests, (2) the party seeking declaratory relief has a legally protectable interest in the controversy, and (3) the issue is ripe for judicial determination."[30] The Nevada Supreme Court has recognized that an early determination of whether liability under a contract exists is an appropriate use of a declaratory suit.[31] And NRS 30.040(1) authorizes "[a]ny person . . . whose rights, status or other legal relations are affected by a . . . contract" to "have determined any question of construction or validity arising under the . . . contract . . . and obtain a declaration of rights, status or other legal relations thereunder."[32]

The plaintiffs have established through their complaint's well-pled allegations and supplemental evidence that declaratory relief is merited. A justiciable controversy exists between them and the Dillman Defendants. Based on Boyer's assertions that the plaintiffs bear responsibility for the California judgment against Dillman, there remains the risk that these

---

[28] *See Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978).

[29] ECF No. 1-1 at ¶ 44.

[30] *County of Clark v. Upchurch*, 961 P.2d 754, 756 (Nev. 1998) (citing *Knittle v. Progressive Cas. Ins. Co.*, 908 P.2d 724, 725 (Nev. 1996)).

[31] *See, e.g., El Capitan Club v. Fireman's Fund Ins. Co.*, 506 P.2d 426, 429 (Nev. 1973). This action was removed from Nevada State Court based on diversity jurisdiction. *See* ECF No. 1 at 2.

[32] Nev. Rev. Stat. § 30.040(1).

defendants will seek to shift liability to them.[33]  And Andrade and NAC disclaim any such responsibility.

      The plaintiffs also have a legally protectable interest in the controversy because the possibility of a lawsuit by the Dillman Defendants is a legal cloud that creates insecurity and fear, and stabilizing such rights is one of the purposes of a declaratory suit.[34]  Andrade and NAC have demonstrated that nothing in any contract between themselves and the Dillman Defendants makes Andrade or NAC liable to any Dillman Defendant client, investor, or customer.  The plaintiffs have established through their well-pled allegations and Mr. Andrade's affidavit that these parties' legal relationship was limited and mainly controlled by the document entitled "Terms and Conditions," which is attached to that affidavit and contains no terms that render Andrade or NAC so liable.[35]  They have also detailed the universe of their communications with the Dillman Defendants, and those communications similarly do not give rise to any such duty on the part of Andrade or NAC.[36]  And they have established that they are not agents of any Dillman Defendant and have no ownership interest in the Block Bits entities.[37]  So they have shown a legal right to a declaration that neither Andrade nor NAC is under a contractual obligation or other duty to the Dillman Defendants to bear liability for their actions or inaction.

      This issue is also ripe for judicial determination.  The requested default judgment will end the controversy between the plaintiffs and the Dillman Defendants and potentially preclude

---

[33] ECF No. 1-1 at ¶ 39; ECF No. 49-1 at ¶ 33.

[34] *See Kress v. Corey*, 189 P.2d 352, 364 (Nev. 1948) (noting that under the Uniform Declaratory Judgments Act, "courts may now function to vindicate challenged rights, clarify and stabilize unsettled legal relations and remove legal clouds [that] create insecurity and fear").

[35] ECF No. 49-1 at pp. 12–32.

[36] *See generally* ECF No. 49-1.

[37] *Id*. at ¶¶ 3–6, 27.

an action by the Dillman Defendants seeking to shift liability for the Boyer judgment to the plaintiffs. Although this likely would not end the controversy between the plaintiffs and Boyer because Boyer is no longer a party to this suit, that shortcoming is not an obstacle to default judgment against the Dillman Defendants, and the inability of this court to exercise jurisdiction over Boyer precludes full resolution here. So I find that the second and third *Eitel* factors are satisfied here and weigh in favor of granting default judgment against the Dillman Defendants.

> **B.  Prejudice to the plaintiff, defendants' excusable neglect, and possibility of dispute over material facts**

The first, fifth, and sixth *Eitel* factors consider whether the plaintiffs will suffer prejudice if a default judgment is not entered, whether disputes regarding material facts could arise, and whether the Dillman Defendants' default may have resulted from excusable neglect. The Dillman Defendants' failure to defend against this lawsuit does not appear to be based on excusable neglect. All three Block Bits entities were served through two different corporate agents nearly a year ago.[38] The substantial efforts to personally serve Dillman himself all failed, so he was ultimately served by publication.[39] As the plaintiffs demonstrated in their motion for alternative service, their "investigation show[ed] that Mr. Dillman appears to be in hiding from multiple creditors, as he has recently had default judgments totaling around $3.5 million entered against him in two San Francisco Superior Court cases, and sheriffs in California have failed to locate and execute against Mr. Dillman."[40] Numerous private investigators were unable to track him down, despite speaking to his ex-wife and conducting extensive surveillance at numerous

---

[38] ECF Nos. 23, 24, 35 (affidavits of service).
[39] ECF No. 39.
[40] ECF No. 29 at 2.

addresses associated with him.[41] Plaintiffs' counsel also reached out to the lawyers that represented Dillman in prior cases, with no response.[42] With all of these methods of notice to Dillman, it is highly unlikely that his failure to respond on behalf of himself or any of this three companies was the product of excusable neglect.

Based on the documents that the plaintiffs have provided and the Dillman Defendants' refusal to acknowledge this litigation, it is also unlikely that they could raise an issue of material fact. And absent entry of default judgment, the plaintiffs will suffer prejudice because they will have no other means to litigate this claim against these defendants. So, these three *Eitel* factors favor granting default judgment.

**C.     The sum of money at stake and policy considerations**

Under the fourth *Eitel* factor, the court considers the amount of money at stake in relation to the seriousness of the defendant's conduct.[43] Because this is a declaratory-relief case, not a damages one, this factor is neutral. And although, under the final *Eitel* factor, default judgments are generally disfavored because "[c]ases should be decided upon their merits whenever reasonably possible,"[44] the Dillman Defendants' failure to appear in this litigation precludes adjudication on the merits. This factor usually weighs against entry of default judgment, but it

---

[41] *Id*. at 6–8.

[42] *Id*. at 8.

[43] *See NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 617 (9th Cir. 2016) (upholding district court's examination of damages, which involved a determination of whether plaintiff "only seeks contractual damages directly proportional to [defendant's] breach of the contracts" (internal quotation marks and citation omitted)); *see also Twentieth Century Fox Film Corp. v. Streeter*, 438 F. Supp. 2d 1065, 1071 (D. Ariz. 2006) ("[Courts consider] the amount of money at stake in relation to the seriousness of [defendant's] conduct.").

[44] *Eitel*, 782 F.2d at 1472 (citing *Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985)).

does not preclude me from entering one and is outweighed by the other factors here. Under these circumstances, default judgment is warranted.[45]

### D. Request for attorneys' fees

Plaintiffs also ask for an award of attorneys' fees against the Dillman Defendants. The request is made in a single paragraph within one of their motions for default judgment[46] and further supported by counsel's affidavit.[47] But attorneys' fees are generally not recoverable in Nevada "absent authority under a statute, rule, or contract,"[48] and plaintiffs have not demonstrated their legal right to recover attorneys' fees here. Plus, Local Rule 54-14 requires a motion for fees to include, among other things, "[a] reasonable itemization and description of the work performed," and that itemization is missing from plaintiffs' submission.[49] So the request for an award of attorneys' fees and costs is denied without prejudice.

### Conclusion

IT IS THEREFORE ORDERED that the plaintiffs' motions for default judgment **[ECF Nos. 30, 49] are GRANTED in part**. The Clerk of the Court is directed to **ENTER DEFAULT JUDGMENT** in favor of Plaintiffs Marcus Andrade and NAC Foundation, LLC, and against

---

[45] I do not adopt the plaintiffs' proposed order granting these motions, ECF No. 49-5, because many of its numerous proposed findings and conclusions about Boyer greatly exceed the scope of facts needed to adjudicate the claim against the Dillman Defendants.

[46] ECF No. 49 at 13.

[47] ECF No. 49-2.

[48] *Liu v. Christopher Homes, LLC*, 321 P.3d 875, 878 (Nev. 2014) (quoting *Albios v. Horizon Communities, Inc.*, 132 P.3d 1022, 1028 (Nev. 2006)).

[49] L.R. 54-14(a)(1). The rule warns that the failure to provide required information may be deemed consent to deny the motion. L.R. 54-14(c).

Defendants Japheth Dillman; Block Bits Capital, LLC; Block Bits Capital, GP; and Block Bits AML Holdings, LLC, **declaring that**:

> No contract or business relationship between NAC Foundation, LLC or Marcus Andrade on one hand, and Japheth Dillman; Block Bits Capital, LLC; Block Bits Capital, GP; or Block Bits AML Holdings, LLC ("the Dillman Defendants") on the other hand, creates a duty or imposes liability on NAC Foundation, LLC or Marcus Andrade for the Dillman Defendants' obligations.

and **CLOSE THIS CASE**.

_____
U.S. District Judge Jennifer A. Dorsey
September 24, 2021